IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELISABETH T. KIDDER | ) |
| Plaintiff, | ) |
| v. | ) No. 05-CV-01094 (RBW) |
| FEDERAL BUREAU OF INVESTIGATION et al., | ) |
| Defendants. | ) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

1. I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 257

1

employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. If called as a witness, I could competently testify to the facts set forth herein

3.  Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA request of plaintiff Elisabeth Kidder which seeks access to records pertaining to Ahmed Abu Ali.

4.  The purpose of this declaration is to provide the Court and plaintiff with an explanation of the FBI's initial response to plaintiff's FOIA request, and to respond to plaintiff's motion for summary

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

judgement.

## CHRONOLOGY OF PLAINTIFF'S FOIA REQUEST

5.      By a FOIA Request Form (undated), plaintiff submitted a FOIA request addressed to FBIHQ for all records concerning a third-party individual named Ahmed Abu Ali. Plaintiff requested a waiver of all duplication fees; however, she advised she was willing to pay fees up to a maximum of $20. See Exhibit A to Plaintiff's Motion for Summary Judgment.

6.      By letter dated January 25, 2005, FBIHQ returned plaintiff's request to her, providing instructions and the Privacy Waiver and Certification of Identity form for requesting records on a third-party individual. This letter explained that without such a waiver, disclosure of law enforcement records or information about another person is considered an unwarranted invasion of personal privacy, and that such records, if they exist, are exempt from disclosure pursuant to Exemptions (b)(6) and/or (b)(7)(C) of the FOIA. Plaintiff was advised of her right to file an administrative appeal. See Exhibit B to Plaintiff's Motion for Summary Judgment.

7.      By letter dated February 2, 2005, addressed to the United States Department of Justice, Office of Information [and] Privacy ("USDOJ/OIP"), plaintiff appealed the denial of her request for access to records on Ahmed Abu Ali. See Exhibit C to Plaintiff's Motion for Summary Judgment.

8.      By letter dated February 18, 2005, DOJ/OIP acknowledged plaintiff's administrative appeal, assigned it appeal number 05-1008 and denied plaintiff's request for expedited processing of her request. See Exhibit D to Plaintiff's Motion for Summary Judgment.

## POLICY OF DENYING THE EXISTENCE OF RECORDS PURSUANT TO EXEMPTIONS (b)(6) AND (b)(7)(C)

9.  The Privacy Act, 5 U.S.C. § 552a(b), states that:

    "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ."

This section is followed by a list of twelve specific conditions permitting disclosure. Of the twelve conditions, only the second has relevance to this case. This second condition permits disclosure of such a record if it "would be required under section 552 of this title [the FOIA]." 5 U.S.C. § 552a(b)(2).

10. Under 5 U.S.C. § 552(b)(6), the FOIA exempts from disclosure:

    "Personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

11. Under 5 U.S.C. § 552(b)(7)(C), the FOIA also exempts:

    Records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

12. When a FOIA requester seeks information about a third party for which no privacy waiver or proof of death is provided, the FBI generally neither confirms nor denies the existence of responsive records. Refusing to provide records due to lack of privacy waiver or proof of death would essentially affirm that the individual is mentioned in FBI records. The mere mention of an individual's name in an FBI record reflects that the person either came to the attention of or assisted the FBI during the course of the FBI's law enforcement activities. Affirming that records exist on a third party would violate an individual's privacy, resulting in potential embarrassment and stigma. In addition, if a

requester seeks information on a third party whom the requester believes is an informant, affirming whether responsive records exist could expose the third party to serious personal risk.

13.  Thus, whether responsive records exist or not, the FBI has generally found that the "neither confirm nor deny" response provides the best and most complete protection when a requester seeks information regarding a third party for whom the requester provides no privacy waiver or proof of death. From an administrative standpoint, it would be much simpler to actually admit those instances in which records do not exist on a particular individual. Those FOIA requests could arguably then be disposed of with finality by a negative, but clear response. However, this would leave the FBI in the untenable position of having to affirmatively address those requests in which records do exist. While responsive information would be exempt from disclosure in all instances where the privacy interests outweigh the public interest in disclosure, the damage to the third party's privacy would have already occurred by the mere confirmation of the existence of responsive records.

## APPLICATION OF THE FBI'S POLICY TO PLAINTIFF'S REQUEST

14.  Plaintiff's request sought records about a third party for whom no privacy waiver or proof of death had been provided. Accordingly, the FBI applied its standard policy described above, and neither confirmed nor denied the existence of responsive records. Instead, the FBI returned the request to plaintiff and asked that she submit either a privacy waiver or a proof of death for Mr. Abu Ali. See 5 U.S.C. § 552a(b); 28 C.F.R. §16.3(a). To release any records responsive to plaintiff's request or even to acknowledge their existence, if they did exist, could have subjected the FBI to possible action by Ahmed Abu Ali under the Privacy Act.

15.  Since the FBI's initial response to plaintiff's FOIA request, Ahmed Abu Ali has been

5

indicted, publicly tried and convicted. Mr. Abu Ali's trial generated substantial publicity. Moreover, the FBI's role in investigating Mr. Abu Ali's case has been publicly acknowledged. As a result of these events, after plaintiff filed the instant lawsuit the FBI determined that it was no longer necessary to neither confirm nor deny the existence of records relating to Mr. Abu Ali, because the mere acknowledgment that such records exist would no longer constitute an unwarranted invasion of personal privacy. Accordingly, the FBI determined to conduct a search for responsive records at FBI headquarters. As explained below, the FBI first conducted an automated search for responsive records, and is now conducting a hand search for responsive records.

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

16. The Central Records System ("CRS") used by the FBI enables it to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this CRS are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained in those field offices.

17. Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.

18. The entries in the General Indices fall into two categories:

  (a) A "main" entry – A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

  (b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

19. The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval.

20. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

21. As noted above, upon receipt of the Complaint in this case, and recognizing the substantial publicity surrounding Mr. Abu Ali's indictment, trial and conviction, and the public acknowledgment of the FBI's role in investigating Mr. Abu Ali's case, the FBI decided to search for records responsive to plaintiff's request using the CRS in order to locate any investigatory files maintained at FBIHQ. This is the standard means by which the FBI typically conducts searches for

records responsive to FOIA requests. The FBI used Mr. Abu Ali's name, as well as his date of birth and Social Security number, to facilitate the identification of responsive records. This search failed to locate any main investigatory files responsive to plaintiff's request at FBIHQ, but it did locate two cross references.

22. Because this CRS search identified fewer responsive records than expected, RIDS requested FBIHQ personnel likely to have records on Ahmed Abu Ali to conduct a manual search for records. FBIHQ personnel are manually searching their files in which they reasonably believe responsive records may be found that have not been serialized, but are intended for future serialization, and provide those records to RIDS for further processing.

23. At this time, FBIHQ expects to complete this search, and to complete the processing of any responsive records identified (including the preparation of a *Vaughn* index) by mid-May 2006. As of this date, however, the FBI does not know how many documents will be located or how complex the processing will be. In addition, to the extent that responsive records are classified, additional procedures may have to be followed, which may further delay the processing of plaintiff's request. Therefore, this date is subject to adjustment.

24. It should be noted that neither the CRS search already conducted, nor the hand search currently under way include FBI field office files. If the plaintiff believes that there may be additional files in FBI field offices, it is incumbent upon her to file requests with each individual field office that she believes maintains the records she seeks, per 28 C.F.R. Sections 16.3 (a) and 16.41 (a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of March, 2006.

*[signature]*

DAVID M. HARDY
Section chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.