1:05-cv-1094 (RBW)                                    Reply in Support of Pl.'s Mot. for Summ. J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

APR 0 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ELISABETH KIDDER
2587 HYDRAULIC ROAD APT C
CHARLOTTESVILLE, VA 22901
(434) 409-0131

CIVIL ACTION NO. 1:05-cv-1094 (RBW)

FEDERAL BUREAU OF INVESTIGATION
9TH AND PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20535

DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON DC 20530

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Elisabeth Kidder, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this reply in support of her motion for summary judgment.

Defendants' evidentiary submission and their opposition to the Plaintiff's Motion for Summary Judgment make clear that summary judgment should now be entered for the Plaintiff because Defendants have failed to raise a genuine issue of material fact in dispute and Plaintiff is entitled to judgment in her favor as a matter of law.

## MEMORANDUM OF LAW

### INTRODUCTION

This litigation arises from the refusal of the Federal Bureau of Investigation ("FBI") to comply with a Freedom of Information Act ("FOIA") request for documents related to the FBI's involvement in the 20-month detention of Ahmed Abu Ali in a Saudi Arabian prison. Ahmed Abu Ali is an American citizen who was arrested and detained by

1:05-cv-1094 (RBW)                                        Reply in Support of Pl.'s Mot. for Summ. J.

the Saudi national security police, allegedly at the request of the United States government, while attending the Islamic University of Medina in Saudi Arabia. Mr. Abu Ali was held for nearly two years without charge and may have been tortured. The FBI interrogated Mr. Abu Ali in the Saudi prison where he was detained on numerous occasions, and these interrogations continued even after Mr. Abu Ali requested legal representation. FBI agents have admitted that, during these interrogations, they threatened Mr. Abu Ali with being declared an enemy combatant, and with indefinite detention without charge. See U.S. v. Abu Ali, 395 F.Supp.2d 338, 356 (E.D.Va., 2005).

Through the FOIA, Plaintiff sought disclosure of information relating to these violations of the public trust (including deprivation of civil liberties,[1] and allegations of complicity in the detention abroad without charge[2] and torture[3] of an American citizen) by the FBI. The records sought by Plaintiff under the FOIA will shed light on disturbing and potentially illegal FBI practices. The continuing failure of Defendant FBI to abide by

---

[1] See e.g. U.S. v. Abu Ali, 395 F.Supp.2d 338, 355 (E.D.Va., 2005).
> On cross-examination, [FBI] Agent Kuligoski testified that Agent Barry Cole told him that at his first solo meeting with Mr. Abu Ali in Saudi Arabia, Mr. Abu Ali had said he did not want to talk without a lawyer present. Mr. Kuligoski also said that he was aware that Mr. Abu Ali had previously requested a lawyer.

Id. at 356.
> [FBI] Agent Kuligoski admits that, during [September 14, 16, 17 and 18, 2003] interviews with Mr. Abu Ali, the agents did discuss the so-called "three options" about cooperation with Mr. Abu Ali. Specifically, they discussed the prospect of Mr. Abu Ali's ... being incarcerated indefinitely, perhaps for life without a trial, in the United States.

[2] See e.g. Transcript, CNN News, Nov. 30, 2004 (statement of Kelli Arena, CNN Justice Correspondent), available at 2004 WLNR 13388489 ("Publicly, Saudi officials will not discuss his case. Privately, they say they are holding him at the request of the United States.").

[3] For a discussion of the medical evidence of Mr. Abu Ali's torture presented by the Defense, see Abu Ali, 395 F.Supp.2d at 362-67. Mr. Abu Ali's testimony about this torture is also discussed in id. at 367-71. These allegations were also discussed by Judge Bates in Mr. Abu Ali's habeas case. See Abu Ali v. Ashcroft, 350 F.Supp.2d 28, 30-31 (D.D.C., 2004),
> Petitioners have provided evidence, of varying degrees of competence and persuasiveness, that: (i) the United States initiated the arrest of Abu Ali in Saudi Arabia; (ii) the United States has interrogated Abu Ali in the Saudi prison; (iii) the United States is controlling his detention in Saudi Arabia; (iv) the United States is keeping Abu Ali in Saudi Arabia to avoid constitutional scrutiny by United States courts; (v) Saudi Arabia would immediately release Abu Ali to United States officials upon a request by the United States government; and (vi) Abu Ali has been subjected to torture while in the Saudi prison. The United States does not offer any facts in rebuttal.

1:05-cv-1094 (RBW)                                     Reply in Support of Pl.'s Mot. for Summ. J.

its FOIA obligations and the refusal of the FBI to conduct an adequate search for responsive records is further support for the necessity of the injunctive relief Plaintiff seeks in her Motion for Summary Judgment.

## ARGUMENT

**The FBI should not be dismissed as a defendant in this action.**

In their Opposition to Plaintiff's Motion for Summary Judgment, Defendants contend that the FBI is "not an 'agency' as defined by the FOIA," and cite Judicial Watch, Inc. v. FBI in support of this argument. See Defs.' Mem. in Opp. To Pl.'s Mot. for Summ. J. ("Defs' Opp. Mem.") at 5. In Judicial Watch, the FOIA requestor's suit was dismissed (1) for failure pay FOIA fees, and (2) for failure to exhaust administrative remedies. 190 F. Supp. 2d 29 (D.D.C. 2002). Defendants' citation is to a footnote not relevant to the disposition of the case. Id. Defendants also cite Pray v. F.B.I., an unreported Southern District of New York case in which the court notes that, "a similar motion has been characterized as 'frivolous' by one court on the grounds that the propriety of suing the FBI is well established in FOIA suits." 1995 WL 764149, 3 (S.D.N.Y., 1995) (substituting Department of Justice for FBI as defendant in FOIA suit).

Defendants have not filed a proper motion to dismiss the FBI as a defendant in this case. To the extent that the Court finds that a motion has been made, Plaintiff urges the Court to deny it, as prejudice will result to Plaintiff should the FBI be dismissed as a defendant in this action.

**The records sought by Plaintiff were *never* exempt under (b)(6) or (b)(7)(C) of the FOIA.**

Defendants have conceded that records subject to Plaintiff's FOIA request are not now exempt from disclosure under sections (b)(6) and (b)(7)(C) of the FOIA, but argue

1:05-cv-1094 (RBW)                              Reply in Support of Pl.'s Mot. for Summ. J.

that it was proper to withhold records for more than a year pursuant to these exemptions. See Defs.' Statement of Genuine Issues in Opp. To Pl.'s Mot. for Summ. J ("Defs.' Statement") at 3 ¶ 3-7. Plaintiff will demonstrate that Defendants' withholding of records under exemptions (b)(6) and (b)(7)(C) was improper, and consequently, that Plaintiff is entitled to judgment as a matter of law.

The FBI contends that records were withheld because, "[t]o release any records responsive to plaintiff's request or even to acknowledge their existence, if they did exist, could have subjected the FBI to possible action by Ahmed Abu Ali under the Privacy Act." See Hardy Decl. ¶14. The FBI cannot properly withhold agency records, nor ignore administrative appeals based upon their determination that the agency might be sued.[4] Even assuming that Mr. Hardy meant to state in his declaration, as Defendants did in their Memorandum (see Defs.' Opp. Mem. at 8), that release of the records requested by Plaintiff would have constituted an unwarranted invasion of privacy, any privacy interest should have been deemed waived pursuant to the FBI's own policies. As this Court noted in Taylor, according to FBI policy, there are "instances when the FBI will deem that the subject of a third party request has either lost or waived most, if not all, of the otherwise inherent privacy interests." Taylor v. U.S. Dept. of Justice, 257 F.Supp.2d 101, 113 (D.D.C., 2003) (internal citations and quotation marks omitted). The instances applicable here are where (1) "the Department of Justice has previously officially

---

[4] The Department of Justice similarly used the Privacy Act to justify its refusal to release information about Mr. Abu Ali to his parents during their son's 20-month detention without charge in Saudi Arabia, even after Mr. Abu Ali executed an oral Privacy Act waiver numerous times. In Plaintiff's administrative appeal, she noted this, and Judge Bates' finding that, "Ahmed Abu Ali has expressly consented to the disclosure of information subject to the Privacy Act." Exhibit C to Pl.'s Mot. for Summ. J. at 1 (citing Order of Jan. 31, 2005, Abu Ali v. Ashcroft, Civ. Action No. 04-1258 (JDB)).

1:05-cv-1094 (RBW)                                        Reply in Support of Pl.'s Mot. for Summ. J.

acknowledged the existence of records" and (2) "the requester demonstrates that the public's interest in the disclosure outweighs privacy interests." Id.

Plaintiff demonstrates below that both these instances - and the "substantial publicity" standard articulated by Defendants for determining whether an individual has lost inherent privacy interests (see Defs.' Statement at 3 ¶ 5) – prevent Defendants from credibly asserting that exemptions (b)(6) and (b)(7)(C) justified withholding documents from the Plaintiff at the time of her FOIA request.

**Plaintiff demonstrated in her February 2 administrative appeal that the public's interest in disclosure of the records requested outweighed any privacy interest**

The Privacy Act permits an agency to disclose documents "where the FOIA requires it, but ... prohibit[s] disclosure where the FOIA allows the agency to refuse disclosure" (when the records fall under a FOIA exemption). Plain Dealer Publisher Co. v. United States Department of Labor, 471 F.Supp. 1023, 1030 (D.D.C. 1979). Section 552 (b)(6) of the FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." However, "[i]f no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure." National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989) (citing Department of Justice v. Tax Analysts, 492 U.S. 136, 109 S.Ct. 2841, 2850-53 (1989). If there is merely a "speculative" rather than "substantial probability that disclosure will cause an interference with personal privacy," then the FOIA compels disclosure. Department of Air Force v. Rose, 425 U.S. 352, 380 n.19, 96 S.Ct. 1592 (1976). Even if an interest in privacy exists, it must be balanced against the public interest in disclosure, which, according to the Supreme Court, is defined by the "core purpose" for which the FOIA was enacted: to

1:05-cv-1094 (RBW)                                Reply in Support of Pl.'s Mot. for Summ. J.

"shed[ ] light on an agency's performance of its statutory duties." United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773, 109 S.Ct. 1468, 1482 (1989).

Section 552(b)(7)(C) of the FOIA exempts "investigatory records compiled for law enforcement purposes, or information which if written would be contained in such records, but only to the extent that the production of such records or information would ... constitute an unwarranted invasion of personal privacy." A Glomar response, where an agency refuses to confirm or deny the existence of records, is "appropriate where 'members of the public may draw adverse inferences from the mere fact that an individual is mentioned in the investigative files of a criminal law-enforcement agency.'" Taylor, 257 F.Supp.2d at 112 (citations omitted). However, exemption under section (b)(7)(C) is proper only if "the privacy interest at stake outweighs the public's interest in disclosure," Reporters Comm., 489 U.S. at 776. Where records requested under the FOIA will likely "confirm or refute allegations of illegal agency activity," Safecard Services, Inc. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991), a Glomar response is inappropriate.

Defendants argue that the records sought by Plaintiff were exempt on the date of Plaintiff's FOIA request and for an unspecified amount of time after that under (b)(6) and (b)(7)(C) of the FOIA. Plaintiff explained in her February 2, 2005 administrative appeal that it was necessary for the FBI to apply a balancing test to the Bureau's analysis of exemptions (b)(6) and (b)(7)(C) that took into account (1) the weighty public interest in releasing the records requested in order to allow public scrutiny of alleged agency misconduct; (2) Mr. Abu Ali's repeated attempts to orally waive his privacy rights; and (3) the fact that "Ahmed Abu Ali's name and alleged crime ha[d] already been splashed

1:05-cv-1094 (RBW)                                    Reply in Support of Pl.'s Mot. for Summ. J.

all over the headlines by the Department of Justice." See Exhibit C to Pl.'s Mot. for Summ. J. at 2-4. Plaintiff demonstrated in February 2005 that the public's interest in disclosure of the records requested outweighed any privacy interest, and it was therefore improper for Defendant FBI to withhold records from the Plaintiff pursuant to exemption (b)(6) and (b)(7)(C) of the FOIA.

**On the date of Plaintiff's FOIA request, the Department of Justice had previously acknowledged the existence of records concerning Ahmed Abu Ali, and the FBI's role in investigating Mr. Abu Ali was the subject of substantial publicity.**

Defendants contend that, "[a]t the time of Plaintiff's FOIA request and its denial, the person who was the subject of her requests – Ahmed Abu Ali – was in the custody of Saudi Arabia, and had not been publically [sic] identified as the object of an FBI investigation." Defs. Opp. Mem. at 2 ¶2. This statement is false.

A Westlaw search for news articles published prior to the FBI's January 25, 2005 denial of Plaintiff's FOIA request, using the search term "Ahmed Abu Ali," returns more than 70 hits.[5] The search terms "Ahmed Abu Ali" and variations of "FBI" with the same date restriction return 41 newspaper articles.[6] Not only had Ahmed Abu Ali been publicly identified as the object of an FBI investigation at the time of Plaintiff's FOIA request and its denial – he had been publicly identified as such *by the FBI*. More than 18 months prior to the Plaintiff's FOIA request, on June 22, 2003, the St. Louis Post-Dispatch published an article about Mr. Abu Ali's arrest in Saudi Arabia in connection with a suicide bombing in Riyadh, quoting Ashraf Nubani, the Abu Ali family lawyer, as informing the newspaper that,

---

[5] Plaintiff searched the Westlaw database ALLNEWS with the following search string: "AHMED ABU ALI" & DA(BEF 1/25/2005).
[6] Plaintiff searched the Westlaw database ALLNEWS with the following search string: "AHMED ABU ALI" & F.B.I. FBI "FEDERAL BUREAU OF INVESTIGATION" & DA(BEF 1/25/2005).

1:05-cv-1094 (RBW)                                      Reply in Support of Pl.'s Mot. for Summ. J.

> *FBI agents* arrived Monday at the home of Abu-Ali's parents with a search warrant ... Listed on the search warrant were the names of several other men - including others whose suburban Washington homes were also searched last week. ... The search warrants sought evidence that the men had traveled abroad and supported terrorist groups. ... [T]he warrants sought evidence that the men had participated in 'military-style training' or 'jihad.'"

Karen Branch-Brioso, <u>Family Seeks Word of American Citizen Held in Riyadh Attacks Saudis Arrested Virginia Man</u>, ST. LOUIS POST-DISPATCH, at A4, available at 2003 WLNR 1818223 (emphasis added). <u>See also</u> Jerry Markon & Susan Schmidt, <u>11 Indicted In Alleged Va. Jihad Network</u>, WASH. POST, June 28, 2003, at A01 (reporting that Mr. Abu Ali had been taken into Saudi custody, "on suspicion that he is connected to the May 12 bombings in Riyadh" and that the FBI had searched Mr. Abu Ali's home in Falls Church, Virginia in connection with the <u>Royer</u> case); Caryle Murphy and John Mintz, <u>Va. Man's Months in Saudi Prison Go Unexplained</u>, WASH. POST, Nov. 22, 2003, at A01 (emphasis added),

> According to a transcript of [Seifullah Chapman's bail] hearing on July 30, *FBI agent* Jim R. Sobchack testified that Abu Ali 'was a participant in some of the jihad training' alleged in the Alexandria indictment. Sobchack also testified that during *FBI-observed interrogations*, Abu Ali 'explained to the Saudis that he was there to join an Al-Qaeda cell. And in fact, [he] had joined an Al-Qaeda cell and participated in weapons and explosives training.' Al Qaeda, Sobchack continued, 'gave Mr. Ali a choice, and that is he could either participate in a terrorist act or he could return to the United States and form an Al-Qaeda cell in the United States.' Abu Ali 'indicated that he would prefer to be a planner such as Mohamed Atta . . . but that he would be willing to participate in an attack,' Sobchack said. According to the agent's testimony, Abu Ali told his Saudi interrogators that he had joined an al Qaeda cell in Saudi Arabia and that he aspired to be a planner like Mohamed Atta, the ringleader of the Sept. 11, 2001, hijackers. ... *FBI officials* speaking on condition of anonymity said the bureau's agents have worked on the case and observed some of Abu Ali's interrogations by the Saudis.

Page 8 of 16

1:05-cv-1094 (RBW)                                      Reply in Support of Pl.'s Mot. for Summ. J.

On August 18, 2004, the St. Louis Times-Dispatch reported that, "*[t]he FBI searched the Virginia home of Abu Ali's parents at the time of his arrest, and its agents have continued to interrogate associates about his alleged terrorist ties.*" Jon Sawyer, <u>Judge cannot order change in foreign policy, lawyer says,</u> ST. LOUIS POST-DISPATCH, Aug. 18, 2004, A10, available at 2004 WLNR 1305347 (emphasis added). In that very same article, published six months prior to the time of Plaintiff's FOIA request and its denial, Defendants' council, Mr. Lev, was quoted as having said that, "U.S. courts had no business intruding [on Mr. Abu Ali's indefinite detention in Saudi Arabia] so long as Abu Ali was under the official control of another nation -- even if that nation was acting at the behest of U.S. officials." <u>Id.</u>

As Plaintiff explained in her February 2, 2005 administrative appeal, Ahmed Abu Ali's alleged connection to al Qaeda terrorists and American "jihadists" had *already* generated substantial publicity. Plaintiff cited numerous newspaper articles in major publications identifying Mr. Abu Ali by name in connection with both terrorist activity in Saudi Arabia and with <u>United States v. Royer</u>, the so-called "Virginia Jihad" case in Alexandria, Virginia. <u>See</u> Ex. C to Pl.'s Mot. for Summ. J. On the date of Plaintiff's FOIA request, the Department of Justice had already acknowledged in legal proceedings, testimony, and in statements made to the media, the existence of records concerning Ahmed Abu Ali. For example, the <u>Richmond Times Dispatch</u> reported on July 26, 2003 that, during a hearing in the case of Sabri Benkhala, Assistant US Attorney David Laufman

> presented previously sealed *evidence* linking Benkhala to a man named Ahmed Abu-Ali, who is under arrest in Saudi Arabia in connection with the May 12 Riyadh bombings that claimed 25 victims, along with the nine attackers.

1:05-cv-1094 (RBW)                                      Reply in Support of Pl.'s Mot. for Summ. J.

> Laufman said Abu-Ali ... joined an al-Qaida cell in Saudi Arabia in 2001 and was told he needed either to organize a terrorist operation or return to the United States and establish an al-Qaida cell. Benkhala had *Abu-Ali's phone number on a handwritten address list*, Laufman said.

Matthew Barakat, <u>Link Claimed Between 11 And Al-Qaida But Another Is Freed Pending Trial</u> RICHMOND TIMES-DISPATCH, July 26, 2003 at B2, available at 2003 WLNR 2139162 (emphasis added).

Mr. Abu Ali was indicted on February 3, 2005. Plaintiff's FOIA appeal was assigned a number by the Department of Justice on February 18, 2005 – more than two weeks *after* Mr. Abu Ali was indicted. FBI agent Barry Cole publicly testified and the news media reported on March 2, 2005 that Mr. Abu Ali,

> told FBI agents that he and other members of an al Qaeda cell in Saudi Arabia planned to hijack airplanes overseas and crash them into targets on the East Coast... They also discussed plans to kill members of Congress, blow up ships in U.S. ports and aircraft at U.S. military bases, and free terrorist prisoners at Guantanamo Bay.

Jerry Markon, <u>N.Va. Man Admitted Terror Plot, Agent Says</u>, WASH. POST, Mar. 2, 2005 at A01.

As the facts clearly demonstrate, Ahmed Abu Ali *had* been publicly identified, repeatedly, for more than a year prior to Plaintiff's FOIA request, as the object of an FBI investigation, *by the FBI itself.* It was, therefore, a violation of the FOIA statute for the FBI to withhold responsive records from Plaintiff pursuant to exemptions (b)(6) or (b)(7)(C).

**Defendants' Search is Inadequate**

1:05-cv-1094 (RBW)                                          Reply in Support of Pl.'s Mot. for Summ. J.

      Defendant FBI has not conducted a reasonable search for documents responsive to Plaintiff's FOIA request, and has indicated that it will not conduct an adequate search unless ordered to do so by the Court. Defendants admit that responsive documents are likely to be found in the Washington Field Office. See Defs.' Opp. Mem. at 7 n. 5 ("the FBI's Washington Field Office investigated Mr. Abu Ali's case, and it is likely that most documents relating to him would be found there."). Defendants refuse, however, to search the Washington Field Office for records responsive to Plaintiff's request. Hardy Decl. ¶24 ("neither the CRS search already conducted, nor the hand search currently under way include FBI field office files. If the plaintiff believes that there may be additional files in FBI field offices, it is incumbent upon her to file requests with each individual field office that she believes maintains the records she seeks.").

      The FOIA requires that an agency make records "promptly available" to a requestor, provided the request "reasonably describes" the records sought. 5 U.S.C. §552(a)(3). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" Kowalczyk v. Department of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting Yeager v. Drug Enforcement Administration, 678 F.2d 315, 326 (D.C. Cir. 1982)). The agency "has a duty to construe FOIA requests liberally." NYC Apparel FZE v. U.S. Customs and Border Protection 2006 WL 167833, 5 (D.D.C.,2006) (citing Wilderness Soc'y v. Dep't of Interior, 344 F.Supp.2d 1, 20 (D.D.C. 2004)) (citations omitted). The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Butler v. Department of

1:05-cv-1094 (RBW)                                      Reply in Support of Pl.'s Mot. for Summ. J.

Justice, 2006 WL 516745, 1 (D.D.C., Mar. 2, 2006). (citing Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C.Cir.1990)). This court has held that,

> If ... the requester clearly states that he wants all agency records on a subject, i.e., regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain.

Kowalczyk, 73 F.3d at 389.

Defendants have admitted that a CRS and hand-search of FBI Headquarters will not produce the records requested by Plaintiff ("*all* records concerning Ahmed Abu Ali, the Falls Church Virginia resident [who, at the time of the request, was] detained in Saudi Arabia." See Exhibit A to Pl.'s Mot. for Summ. J. at 1 (emphasis added)). Plaintiff's description of the records sought by her FOIA request clearly was sufficient to allow Defendants to determine that it is "likely" that "*most* documents" requested by Plaintiff are located in the Washington field office. Defs. Opp. Mem. at 7 n. 5 (emphasis added). This is a lead that Defendant FBI "cannot in good faith ignore," because it is both "clear" and "certain." The FBI's refusal to search the Washington field office is unreasonable and inadequate.

**Summary Judgment is Appropriate and Necessary**

"The defendant agency has the burden of justifying the withholding of requested documents." Physicians Committee For Responsible Medicine v. National Institutes of Health, 326 F.Supp.2d 19, 21 (D.D.C., 2004) (citations omitted). Defendants have not met this burden. Defendants make no evidentiary showing that they have produced any responsive records, nor do they demonstrate facts showing that the records at issue are exempt from disclosure. Despite this, Defendants argue that Plaintiff's motion is

1:05-cv-1094 (RBW)                        Reply in Support of Pl.'s Mot. for Summ. J.

"premature"[7] (Defs' Opp. Mem. at 1) and that the relief Plaintiff seeks, "makes little sense ... as Plaintiff cannot identify with any precision what specific records it believes have been improperly withheld absent the initial production of a *Vaughn* index by defendants." Defs. Opp. Mem. at 6. Therefore, Defendants argue, the Court should deny Plaintiff's motion and impose the scheduling order suggested by Defendants.

Defendants admit, however, that the FBI located responsive records when a CRS search was performed. Defs.' Statement at 3 ¶ 12 (citing Hardy Decl. at ¶ 21) ("The search ... did locate two cross references."). Defendants also admit that, despite the fact that the FBI has located responsive records, the Bureau still has not released a single record to the Plaintiff. Defs.' Statement at 2 ¶ 14. Defendants cite no FOIA exemptions to justify their continued withholding of these responsive records from the Plaintiff. See Defs.' Answer, Defs.' Statement, Defs.' Opp. Mem and Hardy Decl.. Essentially, Defendants argue that, despite the fact that FOIA section 552(a)(4)(B) gives this Court jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," summary judgment for a plaintiff FOIA requestor "makes little sense" where the agency (1) has withheld records from a FOIA requestor for more than a year pursuant to exemptions that clearly did not apply at the time of the request; (2) has located records responsive to a FOIA request but has not released any such records to the requestor; (3) has not justified

---

[7] Defendants protest that, "plaintiff's motion was pre-emptively [sic] filed before the date [March 15, 2006] on which *defendants* were ordered to ... propose a schedule to govern future proceedings in this case." (Defs.' Opp. Mem. at 1) (emphasis in original). Plaintiff notes for the record that Defendants did not attempt to confer with Plaintiff on a proposed schedule to govern future proceedings until 4:00 PM on March 15, 2006, at which time Plaintiff was unavailable. Mr. Lev left Plaintiff a voicemail asking her to return his call "in the next hour and a half" to "see if we can come to an agreement on some dates." Unfortunately, Plaintiff did not check her voicemail messages until the following day.

1:05-cv-1094 (RBW)                                          Reply in Support of Pl.'s Mot. for Summ. J.

this continued withholding of records by citing any FOIA exemption; and (4) has stated its refusal to conduct a reasonable search for responsive records.

Contrary to Defendants' reading of the FOIA statute, both this Court and others have found that granting summary judgment to a plaintiff FOIA requestor is the sensible result after this kind of agency conduct, and have ordered the exact relief that Plaintiff seeks in her Motion for Summary Judgment.[8] For example, in a FOIA suit brought in this Court, Judge Green defined directed the FBI to "search, process documents at the rate of 40,000 pages per month and to release all 'non-exempt, non-duplicative records.'" Meeropol v. Meese, 790 F.2d 942, 947 (D.C. Cir.,1986) quoting Meeropol v. Levi, Civil Action No. 75-1121 (D.D.C., order issued Nov. 19, 1979). On appeal, the D.C. Court of Appeals found that this order was "necessary …to provide a measure by which compliance would later be judged." Id. at 950. See also Hunter v. Christopher, 923 F.Supp. 5, 8 (D.D.C., 1996) (ordering FBI to complete all of plaintiff's FOIA requests within 60 days); American Civil Liberties Union v. Department of Defense, 339 F.Supp.2d 501, 502-03 (S.D.N.Y., 2004) (ordering defendant agency to produce within 30 days documents regarding treatment of detainees and a Vaughn index, when nearly one year after FOIA request, "no documents [had] been produced by defendant; no documents [had] been identified; no exemptions [had] been claimed; and no objections ha[d] been stated.); Donham v. United States Dept. of Energy 192 F.Supp.2d 877, 885 (S.D.Ill., 2002) (granting plaintiff FOIA requestor's motion for summary judgment

---

[8] Cases in which plaintiff FOIA requestors have moved for summary judgment that have come before the Court recently are distinguishable from this case, because in those cases, the agency had, prior to the plaintiff's motion, already performed a search *and* had released some documents in response to the request. See e.g. NYC Apparel FZE v. U.S. Customs and Border Protection, 2006 WL 167833, 1 (D.D.C., January 23, 2006) (agency performed search and informed FOIA requestor by letter of reasons documents were withheld prior to litigation, then released thirty-five pages of responsive documents prior to the plaintiff's motion for summary judgment).

1:05-cv-1094 (RBW)                                              Reply in Support of Pl.'s Mot. for Summ. J.

and ordering agency to complete one of plaintiff's FOIA requests within 34 days); Hinton v. Federal Bureau of Investigation, 527 F.Supp. 223, 225 (D.C.Pa., 1981) (on plaintiff's motion for summary judgment and FBI's motion for stay, court ordered "release to plaintiff all 'cleared' documents at 90-day intervals in accordance with the plaintiff's list of priorities.").

Following the initial determination to comply with a FOIA request, the agency must make the records "promptly available." 5 U.S.C. § 552(3)(A). The FBI has indicated that, in addition to the year that they have had since Plaintiff's FOIA request, they expect a search for responsive records to take until mid-May 2006. Hardy Decl. ¶ 23. Defendants also indicate that, while mid-May 2006 is the time allowance that they currently request from the Court, there might be "further delay" and therefore, "this date is subject to adjustment." Hardy Decl. ¶ 23. See also Defs.' Opp. Mem. at 9 n. 7 ("[T]he estimated time required to process plaintiff's request might change once responsive records are identified."). More than a year has passed since Plaintiff's FOIA request and administrative appeal, and the FBI has still not completed the request or indeed released any records to the Plaintiff. This cannot possibly be the kind of agency response envisioned by Congress in enacting the FOIA's timeliness provisions.

CONCLUSION

Given that Defendants' "mid-May 2006" proposed schedule and Plaintiff's proposed 30 days for Defendants to complete processing of her FOIA request, are, at this point, roughly equal timelines, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment, and order the FBI to complete, by May 15, 2006: (1) a search for responsive records in its Washington field office and the FBI Legal

1:05-cv-1094 (RBW)             Reply in Support of Pl.'s Mot. for Summ. J.

Attaché's office in Riyadh, Saudi Arabia; (2) the hand-search for responsive records at FBI headquarters; (3) production to Plaintiff all non-exempt records; and (4) a Vaughn index, should any records be withheld.

Respectfully Submitted this 6 day of April, 2006.

*[signature]*
Elisabeth Kidder
2587 Hydraulic Road Apt C
Charlottesville, VA 22901