## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ELISABETH T. KIDDER,                      )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )        No. 05-CV-01094 (RBW)
                                          )
FEDERAL BUREAU OF INVESTIGATION,          )
et al.,                                   )
                                          )
                        Defendants.       )
_____)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants hereby move for summary judgment.  In

accordance with the Court's July 6, 2006 Order, the instant motion is based on the applicability of

Exemption 7(A) to the documents withheld in their entirety in response to Plaintiff's FOIA

request.  The motion also addresses the redactions made on those documents released to Plaintiff

in response to her request.  The reasons supporting this motion are set forth in the accompanying

Statement of Points and Authorities and Statement of Material Facts As To Which There Is No

Genuine Issue.

WHEREFORE, Defendants respectfully request that the instant Motion be GRANTED

and that Judgment be entered for Defendants.

A Proposed Order is attached for the Court's consideration.

Dated: August 11, 2006.              Respectfully submitted,

                                     PETER D. KEISLER
                                     Assistant Attorney General

                                     KENNETH L. WAINSTEIN
                                     United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


_____/s/_____
ORI LEV  (D.C. Bar No. 452565)
Senior Trial Counsel
U.S. Department of Justice
Civil Division/Federal Programs Branch
Mail:   P.O. Box 883
          Washington, D.C.  20044
Street: 20 Massachusetts Ave., N.W.
          Room 7330
          Washington, DC  20001
Ph:      (202) 514-2395
Fax:     (202) 318-7589
Email:  ori.lev@usdoj.gov

*Attorneys for Defendants*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|                                          |     |                        |
|------------------------------------------|-----|------------------------|
| ELISABETH T. KIDDER,                     | )   |                        |
|                                          | )   |                        |
|     Plaintiff,       | )   |                        |
|                                          | )   |                        |
|    v.                     | )   | No. 05-CV-01094 (RBW)  |
|                                          | )   |                        |
| FEDERAL BUREAU OF INVESTIGATION,         | )   |                        |
| <u>et al.</u>,                           | )   |                        |
|                                          | )   |                        |
|    Defendants.            | )   |                        |

---

[Proposed]
**ORDER**

   THIS MATTER having come before the Court on Defendants' Motion for Summary

Judgment, the opposition and reply thereto, and all prior proceedings had in this matter, it is

hereby

   ORDERED that Defendants' Motion is GRANTED; and it is further

   ORDERED that Judgment is hereby entered on behalf of Defendants.

   **SO ORDERED.**


   Dated: _____.     _____

               REGGIE B. WALTON
               United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| ELISABETH T. KIDDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-CV-01094 (RBW) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action involves Plaintiff's Freedom of Information Act ("FOIA") request for records

regarding Ahmed Abu Ali, who was recently tried and convicted of various terrorism-related

criminal offenses in the Eastern District of Virginia.  Plaintiff sent her FOIA request to Federal

Bureau of Investigation ("FBI") headquarters, and the FBI – after conducting a reasonable search

for responsive records – has released all non-exempt responsive records to Plaintiff.  The FBI

properly redacted certain information from those released records pursuant to FOIA Exemptions

1, 2, 6 and 7(C).  The remaining responsive records have been withheld in their entirety as exempt

from disclosure pursuant to FOIA Exemption 7(A), which exempts records or information

compiled for law enforcement purposes to the extent that the production of such records could

reasonably be expected to interfere with enforcement proceedings.[1]  Accordingly, summary

judgment should be entered in favor of Defendants.

_____

[1] In accordance with the Court's July 6, 2006 Order, the instant motion addresses only the applicability of Exemption 7(A) to those records withheld in their entirety.  Other FOIA Exemptions likely apply to most or all of the records at issue.

## BACKGROUND

Plaintiff submitted a FOIA request addressed to FBI headquarters seeking "all records concerning Ahmed Abu Ali."  Plaintiff's Motion for Summary Judgment (Pl.'s SJ Mot."), Exh. A; Fourth Declaration of David M. Hardy ("Fourth Hardy Decl."), ¶ 7, attached hereto as Exhibit A. By letter dated January 25, 2005, the FBI returned Plaintiff's request to her, providing instructions and a Privacy Waiver and Certification of Identity form for requesting records on a third-party individual.  Pl.'s SJ Mot., Exh. B; Fourth Hardy Decl., ¶ 8.  This letter explained that without such a waiver, disclosure of law enforcement records or information about another person is considered an unwarranted invasion of personal privacy, and that such records, if they exist, are exempt from disclosure pursuant to Exemptions 6 and/or 7(C) of the FOIA.  Pl. SJ Mot., Exh. B; Fourth Hardy Decl., ¶ 8.  The letter also advised Plaintiff of her right to file an administrative appeal.  SJ Mot., Exh. B; Fourth Hardy Decl., ¶ 8.

By letter dated February 2, 2005, plaintiff appealed the denial of her request for access to records on Ahmed Abu Ali.  Pl. SJ Mot., Exh. C; Fourth Hardy Decl., ¶ 9.  By letter dated February 18, 2005, the Department of Justice's Office of Information and Privacy acknowledged plaintiff's administrative appeal, assigned it appeal number 05-1008 and denied Plaintiff's request for expedited processing of her request.  SJ Mot., Exh. D; Fourth Hardy Decl., ¶ 10.

Subsequent to the administrative denial of Plaintiff's request, but before Plaintiff filed the instant lawsuit, Mr. Abu Ali was indicted, publicly tried and convicted, with his trial generating substantial publicity.  Id., ¶ 11.  As a result of these events, after Plaintiff filed the instant lawsuit the FBI determined that it was no longer necessary to neither confirm nor deny the existence of records relating to Mr. Abu Ali, and the FBI conducted a search for responsive records.  Id.

2

Specifically, the FBI conducted an automated search of its Central Records System ("CRS"), using Ahmed Abu Ali's name, for records responsive to Plaintiff's request located at FBI headquarters.  Id., ¶ 21.  See also id., ¶¶ 15-20 (describing the FBI's Central Records System).  Such an automated search is the typical manner in which the FBI searches for records responsive to a FOIA request, particularly one relating to one or more specific individuals.  Id., ¶ 21.  Even though Plaintiff did not specifically request a "cross-reference" search at the administrative level, the FBI nevertheless decided to conduct such a search of the FBI headquarters indices of the CRS for cross-references to Ahmed Abu Ali.  Id.  This search identified two responsive documents.  Id.

In addition, because the CRS search identified fewer responsive records than anticipated, the FBI requested FBI headquarters personnel likely to have records responsive to Plaintiff's FOIA request to conduct a manual search for records.  Id., ¶ 22.[2]  The results of this manual search identified one Laboratory file consisting of 149 pages and a multi-volume file maintained by the FBI's Legal Attache ("Legat") in Riyadh, Saudi Arabia.  Id.

Because the Department of Justice's FOIA regulations provide that "[f]or records held by a field office of the Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI . . . field office address, which can be found in most telephone books or by calling the component's central FOIA office," 28 C.F.R. § 16.3(a), and because Plaintiff's FOIA request was directed to

---

[2] In this regard, the Litigation Support Unit (LSU) contacted the Washington Field Office case agent for the Ahmed Abu Ali investigation and obtained a list of individuals at FBI headquarters who would likely have records responsive to Plaintiff's request.  By e-mail dated March 22, 2006, each of these individuals was asked to conduct a manual search of their records for all records on Ahmed Abu Ali that would normally be up-loaded or serialized into the Central Records System and submit all responsive records to the LSU by close of business April 6, 2006. Id.

FBI headquarters and did not specifically seek field office records, the FBI did not search for

responsive records at any of its field offices.  Fourth Hardy Decl., ¶ 23.

By letter dated May 26, 2006, the FBI released 25 pages of responsive records to plaintiff,

consisting of two "cross-reference" documents and the public source documents contained within

an FBI headquarters Laboratory file.  Id., ¶ 12.[3]  All of the remaining records from the Laboratory

file were withheld pursuant to FOIA Exemption 7(A).  Id.  In addition, all or parts of the

remaining records from the Laboratory file were also withheld pursuant to FOIA exemptions 1, 2,

6, 7(C) and 7(E).  Id.

By letter dated June 12,  2006, an additional eight pages of public source documents from

the file of the Legat Riyadh file were released to Plaintiff.  Id., ¶ 13.[4]  As explained below, the

remainder of the records in the Legat Riyadh file were withheld from disclosure pursuant to FOIA

Exemption 7(A).  Id.  Other FOIA exemptions also likely apply to these records.  Id.

By letter dated August 10, 2006, the FBI released two additional unredacted pages of public

source documents from the Legat Riyadh multi-volume file that were inadvertently not included

with the outgoing letter to plaintiff dated June 12, 2006.  Id., ¶ 14 and Exh. 4.

## ARGUMENT

**I.     FOIA and Summary Judgment Standards of Review**

The FOIA "represents a balance struck by Congress between the public's right to know

and the government's legitimate interest in keeping certain information confidential."  Center for

---

[3] Three of the released pages had information redacted pursuant to FOIA Exemptions 2, 6 and 7(C).  Id.

[4] One of the released pages had information redacted pursuant to FOIA Exemptions 1, 6 and 7(C).  Id.

Nat'l Sec. Studies v. DOJ ("CNSS"), 331 F.3d 918, 925 (D.C. Cir. 2003) (citing John Doe

Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong.,

2d Sess. 6 (1966))).  FOIA requires each federal agency to make available to the public a wide

array of information, and sets forth procedures by which requesters may obtain such information.

See 5 U.S.C. § 552(a).  At the same time, FOIA exempts nine categories of information from

disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided

. . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).

Thus, while the FOIA requires agency disclosure under certain circumstances, the statute

recognizes "that public disclosure is not always in the public interest."  Baldrige v. Shapiro, 455

U.S. 345, 352 (1982).  The nine FOIA exemptions "reflect Congress' recognition that the

Executive Branch must have the ability to keep certain types of information confidential."  Hale v.

DOJ, 973 F.2d 894, 898 (10th Cir. 1992), vacated on other grnds, 509 U.S. 918 (1993).  As the

Supreme Court has stressed, the statutory exemptions must be construed "to have a meaningful

reach and application."  John Doe, 493 U.S. at 152.

Most FOIA cases are properly resolved through summary judgment pursuant to rule 56 of

the Federal Rules of Civil Procedure.  See, e.g., Miscavige v. Internal Revenue Service, 2 F.3d

366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary

judgment, once the documents in issue are properly identified.").  Summary judgment should be

freely granted when, as in this case, there are no material facts at issue and the agency is entitled

to judgment as a matter of law.  See Alyeska Pipeline Serv. Co. v. Envir. Protection Agency, 856

F.2d 309, 314-15 (D.C. Cir. 1988).  In determining whether an agency has met its burden of

justifying nondisclosure of information in a FOIA action, the district court must accord substantial

weight to affidavits submitted by the agency in support of claimed exemptions.  5 U.S.C.

§ 552(a)(4)(B).  Indeed, as courts have recognized, in enacting the FOIA, Congress intended that

courts give agency affidavits substantial weight in recognition of the agency's expertise,

particularly in cases concerning questions of national security.  Gardels v. CIA, 689 F.2d 1100,

1104-05 (D.C. Cir. 1982); Assassination Archives and Research Center v. CIA, 177 F. Supp. 2d

1, 5-6 (D.D.C. 2001).

Accordingly, summary judgment is regularly granted in FOIA cases on the basis of agency

affidavits.  Summary judgment is appropriate in a FOIA case unless the information provided by

the agency is contradicted in the record or there is some evidence in the record of agency bad

faith.  Gardels, 689 F.2d at 1104-05; Assassination Archives, 177 F. Supp. 2d at 5-6; Windels,

Marx, Davies & Ives v. Dep't of Commerce, 576 F. Supp. 405, 409-11 (D.D.C. 1983).  An

agency should prevail upon motion for summary judgment if the declarations submitted are clear,

specific, reasonably detailed, and describe the withheld information in a factual and nonconclusory

manner.  See Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Hemenway v. Hughes, 601 F.

Supp. 1002, 1004 (D.D.C. 1985) (recognizing that in FOIA cases, summary judgment hinges not

on the existence of genuine issue of material fact but rather on the sufficiency of agency

affidavits).

## II.    Only the Department of Justice is a Proper Defendant in This FOIA Case

Plaintiff has brought this action against both the FBI and the Department of Justice.  The

FOIA, however, grants district courts the "jurisdiction to enjoin the *agency* from withholding

agency records . . ." 5 U.S.C. § 552(a)(4)(B) (emphasis added).  The term "agency" is defined to

include "any executive department . . . or other establishment in the executive branch of the

Government . . . or any independent regulatory agency." 5 U.S.C. § 552(f)(1). As the legislative

history makes clear, "it is not intended that the term 'agency' be applied to subdivisions, offices or

units within an agency." S. Conf. Rep. No. 93-1200 (1974), reprinted in 1974 U.S.C.C.A.N.

6285, 6293. The FBI is a component of the Department of Justice, and not an "agency" as

defined by the FOIA. Thus, the FBI should be dismissed as a defendant in this action. See, e.g.,

Judicial Watch, Inc. v. FBI, 190 F. Supp. 2d 29, 30 n.1 (D.D.C. 2002); Pray v. FBI, No. 95-380,

1995 WL 764149, at *3 (S.D.N.Y. Dec. 28, 1995) ("a majority of courts have concluded that

neither an individual officer nor the FBI are proper parties to such a suit, but that the Department

of Justice is."). Such dismissal will in no way prejudice Plaintiff, as any order of this Court will

bind the Attorney General, as head of the Department of Justice, as well as his agents, including

the FBI and its director. Pray, 1995 WL 764149 at *3. Accordingly, the FBI should be dismissed

as a Defendant in this action.

**III.    The FBI Conducted Adequate Searches for Responsive Documents**

An agency can show that it has discharged its obligations under the FOIA and is entitled

to summary judgment by submitting declarations that "demonstrate that it has conducted a search

reasonably calculated to uncover all relevant documents." Weisberg v. Department of Justice,

745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotations omitted); see also Oglesby v. U.S.

Dep't. Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the

agency must show that it made a good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested.").

To establish the sufficiency of its search, the agency's affidavits need only explain the

"scope and method of the search" in "reasonable detail." Kidd v. Dep't of Justice, 362 F. Supp.

7

2d 291, 295 (D.D.C. 2005) (quoting <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982)).

Declarations should be "sufficiently detailed," but "[t]he standard, however, is not 'meticulous

documentation [of] the details of an epic search.'" <u>Texas Independent Producers Legal Action</u>

<u>Ass'n v. IRS</u>, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting <u>Perry</u>, 684 F.2d at 127). Moreover,

in evaluating the adequacy of a search, courts recognize that "[a]gency affidavits enjoy a

presumption of good faith, which will withstand purely speculative claims about the existence of

other documents." <u>Grounds Saucer Watch v. CIA</u>, 692 F.2d 770, 771 (D.C. Cir. 1981). Failure

to uncover a responsive document does not render the search inadequate: "[T]he issue to be

resolved is not whether there might exist any . . . documents possibly responsive to the request,

but rather whether the search for those documents was adequate." <u>Weisberg</u>, 745 F.2d at 1485

(internal citations omitted).

    As the Fourth Hardy Declaration demonstrates, the FBI conducted searches reasonably

calculated to uncover documents responsive to Plaintiffs' request. <u>See generally</u> Fourth Hardy

Decl. ¶¶ 15-22. The FBI uses the Central Records System ("CRS"), a system that enables it to

maintain all information which it has acquired in the course of fulfilling its mandated law

enforcement responsibilities, to conduct searches in response to FOIA requests. <u>See</u> Fourth

Hardy Decl. ¶¶ 15-20 (describing in detail the CRS). The FBI searched the CRS's indices for any

documents referencing Ahmed Abu Ali at FBI headquarters. <u>Id.</u>, ¶ 21. This automated search

included a search not only for "main" entries in the CRS system, but also for "cross-references" to

Mr. Abu Ali. <u>Id.</u>; <u>see also id.</u>, ¶¶ 16-17 (describing difference between "main" and "cross

reference" entries). This search yielded two documents responsive to Plaintiff's request. <u>Id.</u>,

¶ 21.

In addition, the FBI requested its headquarters personnel likely to have records responsive to Plaintiff's FOIA request to conduct a manual search for records.  Id., ¶ 22.  In this regard, the Litigation Support Unit (LSU) contacted the Washington Field Office case agent for the Ahmed Abu Ali investigation and obtained a list of individuals at FBI headquarters who would likely have records responsive to Plaintiff's request.  Id.  By e-mail dated March 22, 2006, each of these individuals was asked to conduct a manual search of their records for all records on Ahmed Abu Ali that would normally be up-loaded or serialized into the CRS, and to submit all responsive records to the LSU by close of business April 6, 2006.  Id.  The results of this manual search identified a Laboratory file consisting of 149 pages and a multi-volume file maintained by the Legat in Riyadh.  Id.

The FBI's system of records and search techniques clearly meet the standards of adequacy and reasonableness established under the FOIA.  See, e.g., Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 04-1180 (CKK), 2006 WL 367893 at *7 (D.D.C. Feb. 16, 2006) ("Court is convinced from defendant's description of the CRS, see 2 Hardy Decl. ¶¶ 89-93, that a search of that system was reasonably calculated to locate responsive records."); Gonzalez v. Bureau of Alcohol, Tobacco, and Firearms, No. 04-2281 (JDB), 2005 WL 3201009 at *5 (D.D.C. Nov. 9, 2005); Brunetti v. FBI, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (finding adequate search where FBI conducted a CRS search that produced one responsive file and noting that FBI declaration "describes in great detail the structure of the FOIA unit of the FBI and the various processes involved in implementing a search," including the CRS indices); Master v. FBI, 926 F. Supp. 193, 196-97 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997).  In this case, moreover, the FBI went beyond its standard CRS search by requesting headquarters personnel

likely to have responsive records to conduct a manual search for such records.

In sum, the FBI "made a good faith effort to search for the records requested," and "its methods were reasonably expected to produce the information requested.'" <u>Kidd</u>, 362 F. Supp. 2d at 294 (citation omitted).  Accordingly, the Court should enter summary judgment on this issue in favor of Defendants.

Nor was the FBI required to search for responsive records at its field offices.  <u>See, e.g.</u>, Reply in Support of Pl.'s SJ Mot. ("SJ Reply") (dkt no. 19) at 10-12 (arguing that the FBI's search is inadequate for failing to search field offices).  The FOIA expressly provides that its disclosure requirements only apply "upon any request for records which . . . is made *in accordance with published rules stating* the time, *place*, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A) (emphasis added).  As noted in Defendants' prior filings with the Court, Department of Justice regulations expressly provide that "[f]or records held by a field office of the Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI . . . . field office address, which can be found in most telephone books or by calling the [FBI's] central FOIA office." 28 C.F.R. § 16.3(a).[5]  As noted above, Plaintiff mailed her FOIA request to the FBI's headquarters.  <u>See</u> Pl. SJ Mot., Exh A at 2 (showing address to which request was mailed). Accordingly, to the extent that Plaintiff is seeking records maintained at an FBI field office, the

---

[5] Indeed, as a result of this litigation, Plaintiff has been on notice since at least March 29, 2006, that most of the FBI's documents regarding Mr. Abu Ali are likely to be located at its Washington Field Office ("WFO") and that the FBI was not searching WFO for documents in response to Plaintiff's FOIA request, as that request was only sent to FBI headquarters.  <u>See</u> Defs.' Opp. to Pl. SJ Mot. (dkt no. 16) at 4 & n.3 (noting WFO's role in investigation and citing relevant regulation).  In the four intervening months, Plaintiff has not availed herself of the opportunity to simply file another FOIA request with WFO, preferring instead to litigate this issue.

FOIA request she submitted to FBI headquarters failed to comply with the "published rules stating the . . . place" to which requests should be made. Absent a proper FOIA request submitted to a field office in accordance with the published regulations, Defendants have no obligation to search FBI field offices for responsive records.

The cases relied upon by Plaintiff in this regard, see SJ Reply at 11-12, do not hold otherwise. To the contrary, the D.C. Circuit's opinion in Kowalczyk v. Department of Justice, 73 F.3d 386 (D.C. Cir. 1996), expressly holds that "the Bureau is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." Id. at 389. Rather, as the court noted in the sentence immediately preceding the sentence quoted by Plaintiff:

> [i]f the agency may reasonably interpret the request to be for records in a specific office or offices only – the office to which the request was sent or any office(s) named in the request – then upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them.

Id.

It is only if the requestor "*clearly states* that he wants all agency records on a subject, *i.e., regardless of their location*," that an agency is obligated to search other locations where it knows responsive documents may be found. Id. (emphasis added). Plaintiff's FOIA request, however, did not so "clearly state." See SJ Motion, Exh. 1 (seeking "all records concerning Ahmed Abu Ali" without indicating request covers all FBI offices or that documents are sought "regardless of their location"). As the Circuit Court has held, once Plaintiff became aware that additional records might exist at the Washington Field Office and made her interest in those records known, the FBI was under no obligation to initiate a new search for records, id. at 388; rather, the burden

was on Plaintiff to file a new FOIA request, if she so desired, id. at 389 ("[o]f course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request.").[6]

Accordingly, the FBI's search was reasonable, and summary judgment should be granted to Defendants on this issue.

## IV.    The FBI Properly Withheld Responsive Records in Their Entirety Pursuant to Exemption 7(A)

As noted above, with the exception of the public source and cross-reference documents released to Plaintiff, the FBI withheld all remaining responsive records pursuant to FOIA Exemption 7(A).

### A.    Exemption 7(A) Generally

Exemption 7(A) permits the withholding of "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Exemption 7(A) applies to pending or prospective proceedings, including ongoing criminal, civil and administrative investigations.  This exemption applies to all records or information compiled for law enforcement purposes "whenever the government's case in court . . . would be harmed by the premature release of evidence or information."  National Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978) (internal quotation and citation omitted).  In light of the important interests protected by Exemption 7(A), to satisfy its burden justifying the applicability of the exemption, the Government need only demonstrate that

---

[6] None of the other cases cited by Plaintiff involved FOIA requests to the FBI, or otherwise negate the holding of Kowalczyk.

(1) a law enforcement proceeding is pending or prospective; and (2) release of the information could reasonably be expected to cause some articulable harm.  See, e.g., Voinche v. FBI, 46 F. Supp. 2d 26, 31 (D.D.C. 1999).

With respect to the showing of harm to a law enforcement proceeding required to invoke Exemption 7(A), courts have long accepted that Congress intended this exemption to apply whenever the Government's case in court could be harmed by the premature release of evidence or information, or when disclosure could impede any necessary investigation prior to the enforcement proceeding.  See, e.g., Robbins Tire, 437 U.S. at 232 ("the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against").  For instance, courts have upheld the applicability of Exemption 7(A) when disclosure could reveal the scope, direction, or nature of a law enforcement investigation or allow suspects to elude detection.  See, e.g., Solar Sources, Inc. v. United States, 142 F.3d 1033, 1039 (7th Cir. 1998) (holding that records were properly exempt under 7(A) because disclosure could have resulted in "destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation"); Kay v. Federal Communications Comm'n, 976 F. Supp. 23, 39 (D.D.C. 1997) (records exempt under 7(A) because disclosure could reveal evidence and focus of investigation and discourage witness cooperation), aff'd, 172 F.3d 919 (D.C. Cir. 1998) (table); Willard v. IRS, 776 F.2d 100, 103 (4th Cir. 1985) (affirming withholding of records that would reveal "the nature and scope of the investigation"); Moorefield v. Secret Service, 611 F.2d 1021, 1026 (5th Cir. 1980) (Exemption 7(A) proper when release of Secret Service file to target of investigation could not only allow target to elude scrutiny of Secret Service but also

13

could "generally . . . inform targets of Service investigations of the means the Service employs to keep abreast of them").

Moreover, the Government's burden in demonstrating interference with law enforcement proceedings under Exemption 7(A) has been significantly relaxed by Congress. Section 552(b)(7)(A) originally provided for the withholding of information that "would interfere with enforcement proceedings," but the Freedom of Information Reform Act of 1986 amended that language and replaced it with the phrase "could reasonably be expected to interfere with" enforcement proceedings. See Pub. L. No. 99-570 § 1802, 100 Stat. 3207, 3207-48 (emphasis added). Courts have repeatedly recognized that this change in the statutory language substantially broadens the scope of the exemption. See, e.g., Manna v. Department of Justice, 51 F.3d 1158, 1164 n.5 (3d Cir. 1995) (purpose of 1986 amendment was "to relax significantly the standard for demonstrating interference with enforcement proceedings"); Gould Inc. v. GSA, 688 F. Supp. 689, 703 n.33 (D.D.C. 1988) ("The 1986 amendments relaxed the standard . . . by requiring the government to show merely that production of the requested records 'could reasonably be expected' to interfere with enforcement proceedings.") (emphasis added); see also Alyeska Pipeline Service Co. v. Environmental Protection Agency, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) (holding that district court's improper reliance on pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands"); Spannaus v. United States Dep't of Justice, 813 F.2d 1285, 1288 (4th Cir. 1987) (explaining that relaxed standard "is to be measured by a standard of reasonableness, which takes into account the 'lack of certainty in attempting to predict harm'").

Finally, it is well-established that the applicability of Exemption 7(A) may be demonstrated

generically, based on the category of records involved, rather than on a document-by-document basis. See Robbins Tire, 437 U.S. at 236.  Congress enacted Exemption 7(A) because it "'recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases'" in court.  John Doe Agency, 493 U.S. at 156, quoting Robbins Tire,  437 U.S. at 224.  It must therefore be construed pragmatically, so as to ensure that the statutory protection of law enforcement records is given "meaningful reach and application." John Doe Agency, 493 U.S. at 152.

Consistent with these pragmatic considerations, in Robbins Tire, the Supreme Court held that an agency may sustain an Exemption 7(A) claim without making a page-by-page or document-by-document showing that release of the document in question will result in particularized harm to a specific law enforcement proceeding.  An agency may instead sustain an Exemption 7(A) claim by making "certain generic determinations," showing that "with respect to particular *kinds* of enforcement proceedings, disclosure of particular *kinds* of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" Robbins Tire, 437 U.S. at 224, 236 (emphasis added).  An agency may thus satisfy its burden of justifying withholding if it "trace[s] a rational link" between the nature of the requested documents and the interference with enforcement proceedings that could reasonably be expected to result from disclosure.  Crooker v. BATF, 789 F.2d 64, 67 (D.C. Cir. 1986) (R.B. Ginsburg, J.).

Thus, courts have routinely accepted affidavits in Exemption 7(A) cases that specify the distinct, generic categories of documents at issue and the harm that could result from their release,

rather than requiring extensive, detailed itemizations of each document. See, e.g., Spannuaus, 813 F.2d at 1288 ("The Supreme Court has rejected the argument that [Exemption 7(A)] requires particularized showings of interference, holding instead that the Government may justify nondisclosure in a generic fashion."); see also Solar Sources, 142 F.3d at 1037 ("The Government need not establish that release of a particular document would actually interfere with an enforcement proceeding," but rather that "with respect to particular *kinds* of enforcement proceedings, disclosure of particular *kinds* of investigatory records while a case is pending would *generally* interfere with enforcement proceedings.") (emphasis added) (quoting Robbins Tires, 437 U.S. at 236).

Moreover, the FBI's predictive judgments about the risks of disclosure in this area are entitled to particular deference because disclosure implicates concerns of national security. This subject is peculiarly within the expertise of the Executive Branch, and separation of powers principles thus require that defendant's predictive judgment be afforded heightened deference. Indeed, the D.C. Circuit recently re-emphasized the need for such deference in a similar case involving counterterrorism law enforcement efforts:

> The need for deference in this case is just as strong as in earlier cases. America faces an enemy just as real as its former Cold War foes, with capabilities beyond the capacity of the judiciary to explore. Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information . . . . It is abundantly clear that the government's top counterterrorism officials are well-suited to make this predictive judgment. Conversely, the judiciary is in an extremely poor position to second-guess the executive's judgment in this area of national security.

CNSS, 331 F.3d at 928.

16

### B.    The Fourth Hardy Declaration

The Fourth Hardy Declaration amply satisfies the FBI's Exemption 7(A) burden.

### 1.    Law Enforcement Records

As Mr. Hardy explains, the information over which the FBI has asserted Exemption 7(A) was compiled in the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States, including conspiring to provide and providing material support and resources to a designated terrorist organization and to terrorists, as well as conspiring to assassinate the President and to commit air piracy.  Fourth Hardy Decl., ¶ 26.  Mr. Abu Ali has since been indicted, tried and convicted of various terrorism related offenses in the Eastern District of Virginia (See U.S. v Abu Ali, No. 05-CR-0053-GBL (E.D. Va.)).  Fourth Hardy Decl., ¶¶ 26, 29.

The investigation pursuant to which these records and information were compiled is clearly within the law enforcement duties of the FBI – which include both the investigation of possible violations of federal criminal laws and preventing and deterring terrorist attacks within the United States and around the world, and reducing the vulnerability of the United States to terrorism.  Id., ¶ 27.  Moreover, in light of Mr. Abu Ali's conviction there is a clearly established connection between Mr. Abu Ali and a possible violation of federal law.  Id.  The Fourth Hardy Declaration's description of the types of documents at issue makes clear that the files at issue – consisting of an FBI Laboratory file and the Legat's file – consist of law enforcement records. Id., ¶ 28 (describing types of documents in files).

### 2.    Pending or Prospective Law Enforcement Proceeding

The investigation pursuant to which these records were compiled is still ongoing, as is the law enforcement proceeding involving Mr. Abu Ali, in light of his pending appeal.  Id., ¶¶ 26-27, 29-30.  "The potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption exists at least until [his] conviction is final."  Kansi v. U.S. Dep't of Justice, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) (pending criminal appeal constitutes pending or prospective law enforcement proceeding for purposes of Exemption 7(A)) (internal citations omitted) (citing Helmsley v. Dep't of Justice, No. 90-CV-2413 (D.D.C. Sept. 24, 1992)).

### 3.    Reasonable Expectation of Interference

Having established that the records at issue constitute law enforcement records relevant to a pending or prospective law enforcement proceeding, the last remaining issue to be addressed is whether release of the records could reasonably be expected to interfere with enforcement proceedings.  5 U.S.C. § 552(b)(7)(A).  In light of the pending appeal of Mr. Abu Ali's criminal conviction, the release of any information from these files could reasonably be expected to interfere with further possible proceedings in the criminal case.  Fourth Hardy Decl., ¶¶ 31-32.

Underlying this determination of harm is the fact that once the information is released to Plaintiff and placed in the public domain, information concerning the ongoing investigation could reach the individuals being investigated, including Mr. Abu Ali, thus allowing such individuals to critically analyze these documents concerning the investigation.  Id., ¶ 32.  Such individuals possess the unique advantage of knowing the details surrounding the potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the criminal activities.  Id.  These individuals could therefore use the released information to their advantage to

18

destroy evidence or intimidate potential witnesses.  Id.

The Fourth Hardy Declaration identifies the following potential harms from the release of information contained in the remaining records: the identification of individuals and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of, these individuals; the use of released information to counteract evidence developed by investigators, alter or destroy potential evidence, or create false evidence; the use of released information by any subject of the investigation to assess the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation; and the identification of locations in the United States, as well as foreign countries, where the FBI is focusing the investigation and collection of investigative and source material.  Id., ¶ 33.  Furthermore, the release of this information could allow third parties not directly involved in this matter to interfere with the pending law enforcement proceeding by harassment, intimidation, and creation of false evidence.  Id., ¶ 34.  These harms are more directly linked to the categories of documents at issue in the following section.

### 4.    Categories of Records

In accordance with the case-law discussed above, each document in the responsive records withheld pursuant to Exemption 7(A) has been reviewed, document-by-document, and categorized in terms of the information contained therein.  Id., ¶ 35.  The responsive records all fall into one or more of the following categories of documents:[7]

---

[7] A single document might fall into more than one category.  Id., ¶ 36.

19

### a.    Evidentiary/Investigative Materials

The withheld records contain evidentiary/investigative materials, including copies of records or evidence, and derivative communications discussing or incorporating evidence. Id., ¶ 37. The following paragraphs describe the types of evidentiary/investigative materials contained within the withheld records and the anticipated harm which could reasonably result from the release of such materials.

Among the materials included in this category are records reflecting confidential source statements, which are one of the principal tools used in providing the facts which form the basis for a prosecution. Id., ¶ 38. These statements contain information obtained from confidential informants, records custodians and other third party individuals who have knowledge of potential criminal activities in this criminal investigation. Id. If this information was released, the witnesses and/or confidential sources who have chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, or physical or mental harm. Id. This could have a chilling effect on any future proceedings in this case inasmuch as potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this investigation. Id. Implicit in conducting interviews in an investigation of this nature is the notion that an individual's identity and the information provided by him/her will be afforded confidentiality. Id. The FBI goes to great lengths to protect and maintain an individual's confidentiality since it is an integral part of a successful investigation and prosecution. Id. The release of witness statements and confidential source statements would disrupt and harm potential investigative and/or prosecutive actions. Id.

Also included in the category of evidentiary/investigative materials is material reflecting the exchange of information between various local, state, federal and foreign agencies. Id., ¶ 39.

Release of this type of information will disclose investigative information developed by various agencies that have cooperated with and provided information and records to the FBI in the course of this investigation.  Id.  Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released.  Id.  This information was gathered to help identify subjects, suspects or other individuals of potential investigative interest and to assist in locating witnesses and/or confidential sources.  Id.  To release this information would identify the investigative interest in particular individuals as well as subject witnesses and confidential sources to potential harassment, intimidation and physical or mental harm.  Id.

The evidentiary/investigative materials also include information concerning documentary evidence and physical evidence, which cannot be described in greater detail without leading to the possible identification of such evidence and the source of the records.  Id., ¶ 40.  Further description or release of these records could result in the possible harm or intimidation of the witnesses and confidential sources who provided these records.  Id.  The information contained in these records is pertinent and integral to the FBI's ongoing investigation.  Id.  Disclosure of these records could be detrimental to success of the pending and prospective prosecutions by permitting subjects to formulate a strategy as to how the evidence could be contradicted in Court.  Id.

**b.    Administrative Materials**

In addition to the evidentiary/investigative materials described above, the withheld records also contain administrative materials, including items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ

21

guidelines.  Id., ¶ 41.  In many instances, administrative information is contained at the beginning

of correspondence which also falls into other categories.  Id.  Therefore, to release details with

respect to this category of information would also reveal the investigative interests of the FBI and

could enable suspects to discern a "road map" of the investigation.  Id.  The following paragraphs

describe the types of administrative material contained within the withheld records and the

anticipated harm which could reasonably result from the release of such materials.

     Among the administrative materials withheld are reporting communications.  Id., ¶ 42.

These communications permit an agency to monitor the progress of the investigation and to

facilitate its conduct.  Id.  These communications may reveal or confirm the cooperation of other

local, state, or foreign agencies in the investigation.  Id.  These communications are replete with

detailed information about the investigative activities as well as detailed information about

potential witnesses and confidential sources to be interviewed.  Id.  Additionally, they contain

background information about third party individuals, the origin of pertinent information which

ties them to the investigation, their connection with the subject and their relationship with the

pending investigation.  Id.  The release of this information would reveal the investigative steps

taken to obtain witness and confidential source interviews, techniques and investigative methods

used to compile and/or solicit information from various sources and the perceived weaknesses in

the investigation.  Id.  The release of this information would reveal the nature and scope of this

pending investigation.  Id.

     The withheld records also contain various other miscellaneous administrative documents.

Id., ¶¶ 43-44.  These materials include items such as storage envelopes, transmittal forms, and

standardized forms used for particular purposes.  Id., ¶ 43.  These types of materials were used

throughout this investigation for many routine purposes. Id. While these materials are not solely applicable to this investigation, they were adapted or used in such a manner so as to contain information of investigative value. Id.[8]

The administrative materials withheld also contain various administrative instructions. Id., ¶ 45. This type of information, whether it originates in communications from the Department of Justice, the FBI, or other law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures employed in this investigation. Id. Release of this information would thus permit the subject of an investigation to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions of himself or other subjects. Id.[9]

The disclosure of the information described above, a majority of which was obtained from highly sensitive sources, and other governments, would create a risk to the security of the United States and its allies. Id., ¶ 50. The identities of those involved, the methods and techniques of intelligence collection, and the pending nature of the investigations in connection with other third parties must be protected to ensure the success of future operations and the continued

---

[8] An example is the envelope used to store records obtained from a confidential source. While the envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the persons who provided the records. Id., ¶ 44. Disclosure of these materials could harm the investigation by providing details which, when viewed in conjunction with knowledge possessed by the subject, could provide information useful in identifying witnesses, investigative strategies and items of evidence. Id.

[9] Specific examples of these instructions include the setting out of investigative guidelines, requests for laboratory or fingerprint analyses, and requests for specific investigative inquiries at various FBI field offices or other government agencies. Id., ¶ 46. These instructions are commonly referred to as "investigative leads" and are set forth throughout the course of this investigation. Id.

23

cooperation of the FBI's sources.  Id.  The FBI has carefully examined the records at issue in this case and has determined that all of the information withheld regarding this pending investigation is exempt from disclosure in its entirety pursuant to FOIA Exemption 7(A), with the exception of the public source information.  Id., ¶¶ 49-50.  No additional releases are possible at this time without hindering the pending investigation.  Id., ¶ 50.

In light of the above, it is clear that all of the records withheld in their entirety – which form part of the FBI's investigative file for an ongoing criminal prosecution – constitute "records or information compiled for law enforcement purposes . . . the production of [which] . . . could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), including further proceedings in Mr. Abu Ali's criminal case, which is now on appeal.

## V.      The FBI Properly Redacted Information from the Documents Released to Plaintiff

As noted above, the FBI also redacted information from four of the pages released to Plaintiff.  Fourth Hardy Decl., ¶¶ 12-13, 51 and Exh.5.  These redactions were based on FOIA Exemptions 1, 2, 6 and 7(C).

### A.      FOIA Exemption 1

FOIA Exemption 1 exempts from disclosure those records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order."  5 U.S.C. § 552(b)(1).  Pursuant to Exemption 1, the FBI withheld and redacted a FBI file number that is assigned to a specific intelligence activity and identifies channelization/dissemination instructions for information identifiable with the intelligence activity.  Fourth Hardy Decl., ¶ 55 and Exh. 5.

24

As detailed his Fourth Declaration, David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI, has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to sections 1.3 and 3.1 of the Executive Order 12958, as amended.[10]  Fourth Hardy Decl. ¶  2.  Mr. Hardy personally reviewed the information redacted pursuant to Exemption 1, and determined that the file number withheld under Exemption 1 warrants continued classification at the "Secret" level in the interest of national defense or foreign policy, pursuant to E.O. 12958 § 1.4(c), because its release could be expected to reveal intelligence activities (including special activities), intelligence sources or methods, or cryptology, and the unauthorized disclosure of this information could reasonably be expected to cause serious damage to the national security.  Id., ¶ 61.

### 1.    The Standard for Exemption 1

Exemption 1 protects records that are:  (1) specifically authorized under criteria established by an Executive Order to be kept secret, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552(b)(1).  Section 1.2(a)(4) of E.O. 12958 states that an agency may classify information that fits into one or more of the Executive Order's categories for classification when the appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  68 Fed. Reg. 15315, 15315 (March 25, 2003).

---

[10]  E.O. 12958 was amended by E.O. 13292, effective March 25, 2003.  See Exec. Order No. 12958, 3 C.F.R. (1995), reprinted as amended in 50 U.S.C. § 435 note at 91 (supp. 2004); see also Exec. Order No. 13292, 68 Fed. Reg. 15315 (March 28, 2003).  All citations herein to E.O. 12958 are to the Order as amended by E.O. 13292.

An agency can demonstrate that it has properly withheld information under Exemption 1 if it establishes that it has met the requirements of the Executive Order. Substantively, the agency must show that the records at issue fall within the exemption, i.e., that E.O. 12958 authorizes the classification of the information at issue. Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information. See Salisbury v. United States, 690 F.2d 966, 970-73 (D.C. Cir. 1982); Military Audit Project v. Casey, 656 F.2d 724, 737-38 (D.C. Cir. 1981). An agency meeting both tests is then entitled to summary judgment. See, e.g., Abbotts v. NRC, 766 F.2d 604, 606-08 (D.C. Cir. 1985); Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984).

Agency decisions to withhold classified information under FOIA are reviewed de novo by the district court, and the agency bears the burden of proving its claim for exemption. See 5 U.S.C. § 552(a)(4)(B); Miller, 730 F.2d at 776. Nevertheless, because agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information, the courts must accord "substantial weight" to an agency's affidavits justifying classification. Military Audit Project, 656 F.2d at 738; cf. Miller, 730 F.2d at 776 (court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record"). Indeed, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions." Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980); see Weissman v. CIA, 565 F.2d 692, 697 (D.C. Cir. 1997) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information"). To do so would violate the principle of according substantial weight to the expert opinion of the agency. Cf. Stillman v. CIA, 319 F.3d 546, 548 (D.C. Cir. 2003) (in non-FOIA case, criticizing district court for withholding

26

deference ordinarily owed to national security officials).

**2.    The Withheld Information Properly Falls Within the Classification Categories.**

The FBI has established that it followed proper procedures to classify the documents at issue.  See Fifth Hardy Decl. ¶¶ 57-60.  Moreover, the FBI has adequately shown that the withheld information falls within the classification categories established by the Executive Order. Id., ¶¶ 62-65.  As detailed below, the FBI has properly withheld classified information that would disclose intelligence sources, activities, operations and methods because such disclosure would cause serious and specific harm to national security.

Section 1.4(c) of the Executive Order exempts disclosure of intelligence activities, operations, and methods.  The FBI has properly classified (and withheld) a FBI file number that is assigned to a specific intelligence activity and that identifies channelization/dissemination instructions for information identifiable with the intelligence activity.  Fourth Hardy Decl., ¶ 55. As Mr. Hardy explained:

> The disclosure of an intelligence file number in the aggregate could enable a hostile analyst to attribute any information released from the documents containing such a file number to that particular file.  A hostile analyst can identify the specific intelligence activity by supplying further missing pieces.  Hence, a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods.  Disclosure of this file number will allow a hostile analyst, or anyone not privileged to this information, to patch bits and pieces of information together until the actual use of the application of the source or method can be determined.  The identification of these intelligence sources or methods, which continue to furnish positive intelligence information to date, will severely limit its application.  In addition, disclosure will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can collect, concerning them. This knowledge provides potential or actual violators of the United States' national security laws a means of deflection or avoidance of lawful regulations. Disclosure will allow countermeasures to be implemented, making future

27

operations more difficult, or compromise other ongoing planned intelligence operations. Accordingly, the release of the file number can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. The redacted file number is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c), and exempt from disclosure pursuant to Exemption (b)(1).

Id., ¶ 63. See also id., ¶¶ 64-65.[11]

Because its disclosure could reasonably be expected to cause these specific and serious harms to national security, the file numbers are properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

## B.    FOIA Exemption 2

FOIA Exemption 2 exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large. The FBI redacted a FBI facsimile number from one of the documents released to plaintiff pursuant to Exemption 2. Fourth Hardy Decl., ¶ 67 and Exh. 5.

Exemption 2 applies to materials "'used for predominantly internal purposes.'" Schiller v. National Labor Relations Bd., 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)). This exemption has been held to protect two types of information: (1) information the release of which would risk circumvention of agency regulations or statutes, see Crooker, 670 F.2d at 1074, and

---

[11] The fact that apparently harmless pieces of information, when assembled together, could reveal a damaging picture is specifically recognized in section 1.7(e) of E.O. 12958. See also, e.g., Halperin, 629 F.2d at 150; Salisbury, 690 F.2d at 971; Gould, 688 F. Supp. at 698.

(2) "routine matters of merely internal interest," id. at 1069 (citation omitted).  See also Founding

Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 831 n.4 (D.C. Cir.

1983) (material is exempt if it "relates to trivial administrative matters of no genuine public

interest").  The second of these types of information is at issue here.

    The non-secure facsimile number withheld by the FBI relates directly to the internal

practices of the FBI in that it is used by individuals during the performance of their duties.  Fourth

Hardy Decl., ¶ 67.  Disclosure of  internal facsimile numbers of the FBI could cause the offices to

be inundated with faxes which could also disrupt official business.  Id.  The disclosure of routine

internal administrative information such as the fax number referenced above serves no public

benefit and there is no indication that there is a genuine public interest in the disclosure of these

numbers.  Id.  Accordingly, because the fax number is solely related to the FBI's internal

practices, because disclosure would not serve any public benefit, and because disclosure could

impede the agency's effectiveness, the FBI properly withheld this information pursuant to

Exemption 2.

    C.    Exemption 6

    Exemption 6 exempts from disclosure personnel and medical files and similar files when

the disclosure of such information would constitute a clearly unwarranted invasion of personal

privacy.  5 U.S.C. § 552(b)(6)   The FBI redacted the names of FBI support personnel, the names

of employees of other Federal government agencies, and the names of third parties who provided

information to the FBI or whose name is merely mentioned in the records pursuant to Exemption

6.  Fourth Hardy Decl., ¶¶ 69, 72-74.  These names were also withheld pursuant to Exemption

7(C), discussed below.  Id., ¶ 69.

The Supreme Court has held that, regardless of the title of the file, Exemption 6 "[was] intended to cover detailed government records on an individual which can be identified as applying to that individual." United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). The Supreme Court's broad construction of the term "similar files" effectuates Congress' primary purpose in enacting Exemption 6 – "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Id. at 599. An agency may, therefore, protect personal information under Exemption 6, so long as the information is in a government file and "applies to a particular individual." Id. at 602; see also New York Times Co. v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). This "minimal" threshold "ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored." Washington Post Co. v. HHS, 690 F. 2d 252, 259 (D.C. Cir. 1982).

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure. See United States Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information threatens a protectible privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991). In this case, there is no public interest in disclosure of the withheld names, since they would shed no light on the operations of the FBI. Fourth Hardy Decl., ¶ 70. See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (noting that the public interest in disclosure "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own

30

conduct"); U.S. Dep't of Defense v. Federal Labor Relations Authority ("DoD"), 510 U.S. 487, 495 (1994) ("the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'" (quoting Reporters Committee, 489 U.S. at 775) (emphasis in original); Voinche v. FBI, 425 F. Supp. 2d 134, 136-37 (D.D.C. 2006) (public interest in the disclosure of names of FBI employees, other government employees, and third parties "is at best minimal").

The Supreme Court has also adopted a broad construction of the privacy interests protected by Exemption 6.  In Reporters Committee, the Court rejected a "cramped notion of personal privacy" under the FOIA and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person."  489 U.S. at 763.  More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." Id. at 764 n.16 (citation omitted).[12]  Privacy is of particular importance in the FOIA context because a disclosure required by the FOIA is a disclosure to the public at large.  See Painting & Drywall Work Preservation Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

With this background it is clear that the FBI's Exemption 6 withholdings were appropriate.

---

[12]Although Reporters Committee was decided under Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), which concerns privacy interests in law enforcement records, the definition of the public interest to be considered is the same as for Exemption 6.  See Reed, 927 F.2d at 1251 (noting that Reporters Committee is controlling in the Exemption 6 context as well, citing National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989)).

FBI support personnel are in positions to access information concerning official law enforcement investigations. Fourth Hardy Decl., ¶ 72. They could, therefore, become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released. Id. There is thus a substantial privacy interest in the identities of these FBI support employees. Id. After balancing this privacy interest against the public interest in disclosure, the FBI found no legitimate public interest that outweighed this privacy interest because the identities of FBI support employees will not shed light on the operations and activities of the FBI, and appropriately concluded that these employees' names are exempt from disclosure. Id. See Voinche, 425 F. Supp. 2d at 135-37 (affirming withholding of names of FBI employees, other government employees, and third parties under Exemption 7(C)).

Similarly, disclosure of the identities of other government employees could subject them to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy. Fourth Hardy Decl., ¶ 73. The rationale for protecting non-FBI federal employees is the same as that of FBI employees. Id. Balanced against the legitimate privacy interests of these third parties is the lack of any bona fide public interest in disclosure. Id. Accordingly, the FBI appropriately determined that the disclosure of the identities of these individuals would constitute an unwarranted invasion of their personal privacy. Id. See Voinche, 425 F. Supp. 2d at 135-37.

Finally, disclosure of the names of third parties contained within these documents could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. Fourth Hardy Decl., ¶ 74. For these reasons, the FBI has determined that the third party individuals in the responsive communication maintain a strong privacy interest in not having their

identities disclosed.  Id.  After identifying the substantial privacy interest of the third parties in this

communication, the FBI balanced those interests against the public interest in disclosure.  Id.,

¶ 75.  The FBI could identify no discernible public interest in the disclosure of this information

because the disclosure of third parties' names will not shed light on the operations and activities

of the FBI.  Id.  Accordingly, the FBI appropriately determined that the disclosure of this

information would constitute a clearly unwarranted invasion of personal privacy and properly

withheld the names of these third parties pursuant to Exemption 6.  Id.  See Voinche, 425 F.

Supp. 2d at 135-37.

> **D.    Exemption 7(C)**

The FBI also withheld the names of FBI employees, other government employees and

third parties pursuant to Exemption 7(C).  Fourth Hardy Decl., ¶ 77.  Exemption 7(C) exempts

from disclosure "records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information . . . . (C) could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(7)(C).

As discussed above with respect to Exemption 7(A), the records at issue clearly constitute

"records or information compiled for law enforcement purposes."  When withholding information

pursuant to Exemption 7(C), the FBI is required to balance the privacy interests of the individuals

mentioned in these records against any public interest in disclosure.  Fourth Hardy Decl., ¶ 79.

See Reporter's Committee, 489 U.S. at 761, 776; Voinche, 425 F. Supp. 2d at 136.  For the same

reasons that the withheld information at issue is exempt from disclosure pursuant to Exemption 6,

it is also exempt from disclosure pursuant to Exemption 7(C) – in each instance, the privacy

interest of the individual whose name is at issue clearly outweighs the nonexistent public interest in disclosure. Indeed, "Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted.'" DoD, 510 U.S. at 496 n.16.

* * *

With the exception of the information already released to Plaintiff, there is no additional reasonably segregable portion of any document or evidentiary material which can be released at this time. Fourth Hardy Decl., ¶¶ 50, 80.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the instant motion be granted and judgment be entered in their favor.

Dated: August 11, 2006.                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           KENNETH L. WAINSTEIN
                                           United States Attorney

                                           ELIZABETH J. SHAPIRO
                                           Assistant Branch Director


                                                  /s/
                                           _____
                                           ORI LEV  (D.C. Bar No. 452565)
                                           Senior Trial Counsel
                                           U.S. Department of Justice
                                           Civil Division/Federal Programs Branch
                                           Mail:   P.O. Box 883
                                                   Washington, D.C.  20044

Street: 20 Massachusetts Ave., N.W.
　　　　Room 7330
　　　　Washington, DC  20001
Ph:　　(202) 514-2395
Fax:　　(202) 318-7589
Email:  ori.lev@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ELISABETH T. KIDDER,                    )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        No. 05-CV-01094 (RBW)
                                        )
FEDERAL BUREAU OF INVESTIGATION,        )
et al.,                                 )
                                        )
                Defendants.             )
_____)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE
SUBMITTED IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR 7(h) , Defendants hereby submit this Statement of Material Facts as to

Which There Is No Genuine Issue:

1.      Plaintiff submitted a FOIA request addressed to FBI headquarters seeking "all

records concerning Ahmed Abu Ali."  See Plaintiff's Motion for Summary Judgment (Pl.'s SJ

Mot."), Exh. A; Fourth Declaration of David M. Hardy ("Fourth Hardy Decl."), ¶ 7.

2.      The request did not specifically request records located at FBI field offices nor did

it clearly state that it sought records regardless of their location.  Pl's SJ Mot., Exh. A.

3.      After Plaintiff filed the instant lawsuit, the FBI conducted an automated search of

its Central Records System ("CRS"), using Ahmed Abu Ali's name, for records responsive to

Plaintiff's request located at FBI headquarters.  Fourth Hardy Decl., ¶ 21.

4.      Such an automated search is the typical manner in which the FBI searches for

records responsive to a FOIA request, particularly one relating to one or more specific

individuals.  Id.

5.      The FBI also conducted a "cross-reference" search of the FBI headquarters indices of the CRS for cross-references to Ahmed Abu Ali.  Id.

6.      This search identified two responsive documents.  Id.

7.      In addition, because the CRS search identified fewer responsive records than anticipated, the FBI requested FBI headquarters personnel likely to have records responsive to Plaintiff's FOIA request to conduct a manual search for records.  Id., ¶ 22.

8.      In this regard, the Litigation Support Unit (LSU) contacted the Washington Field Office case agent for the Ahmed Abu Ali investigation and obtained a list of individuals at FBI headquarters who would likely have records responsive to Plaintiff's request.  Id.

9.      By e-mail dated March 22, 2006, each of these individuals was asked to conduct a manual search of their records for all records on Ahmed Abu Ali that would normally be up-loaded or serialized into the Central Records System and submit all responsive records to the LSU by close of business April 6, 2006.  Id.

10.      The results of this manual search identified one Laboratory file consisting of 149 pages and a multi-volume file maintained by the FBI's Legal Attache ("Legat") in Riyadh, Saudi Arabia.  Id.

11.      By letter dated May 26, 2006, the FBI released 25 pages of responsive records to plaintiff, consisting of two "cross-reference" documents and the public source documents contained within an FBI headquarters Laboratory file.  Id., ¶ 12.

12.      Three of the released pages had information redacted pursuant to FOIA Exemptions 2, 6 and 7(C).  Id.

2

13.    All of the remaining records from the Laboratory file were withheld pursuant to FOIA Exemption 7(A). Id.

14.    By letter dated June 12, 2006, an additional eight pages of public source documents from the file of the Legat Riyadh file were released to Plaintiff. Id., ¶ 13.

15.    One of the released pages had information redacted pursuant to FOIA Exemptions 1, 6 and 7(C). Id.

16.    The remainder of the records in the Legat Riyadh file were withheld from disclosure pursuant to FOIA Exemption 7(A). Id.

17.    By letter dated August 10, 2006, the FBI released two additional unredacted pages of public source documents from the Legat Riyadh multi-volume file that were inadvertently not included with the outgoing letter to plaintiff dated June 12, 2006. Id., ¶ 14 and Exh. 4.

18.    The records from the Laboratory file and the Legat Riyadh file were compiled in the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States, including conspiring to provide and providing material support and resources to a designated terrorist organization and to terrorists, as well as conspiring to assassinate the President and to commit air piracy. Id., ¶ 26.

19.    Mr. Abu Ali has been indicted, tried and convicted of various terrorism related offenses in the Eastern District of Virginia, and has appealed his conviction. Id., ¶¶ 29-30.

20.    The investigation pursuant to which these records were compiled is still ongoing, as is the law enforcement proceeding involving Mr. Abu Ali. Id., ¶¶ 26-27.

21.    The release of any additional information from these files could reasonably be

3

expected to interfere with further possible proceedings in the criminal case.  Id., ¶¶ 31-34, 36-45.

22.     Each document in the responsive records withheld pursuant to Exemption 7(A) has been reviewed, document-by-document, and categorized in terms of the information contained therein.  Id., ¶ 35.

23.     The responsive records all fall into one or more of the categories set forth in the Fourth Hardy Declaration.  Id., ¶¶ 36-45.

24.     Pursuant to FOIA Exemption 1, the FBI withheld and redacted a FBI file number that is assigned to a specific intelligence activity and identifies channelization/dissemination instructions for information identifiable with the intelligence activity, from the records provided to Plaintiff.  Id. ¶ 55 and Exh. 5.

25.     The file number was properly classified.  Id., ¶¶  59-65

26.     The FBI redacted a FBI facsimile number from one of the documents released to Plaintiff pursuant to FOIA Exemption 2.  Id., ¶ 67 and Exh. 5.

27.     The non-secure facsimile number withheld by the FBI relates directly to the internal practices of the FBI in that it is used by individuals during the performance of their duties.  Id., ¶ 67.

28.     Disclosure of  internal facsimile numbers of the FBI could cause the offices to be inundated with faxes which could also disrupt official business.  Id.

29.     The disclosure of routine internal administrative information such as the fax number serves no public benefit and there is no indication that there is a genuine public interest in the disclosure of these numbers.  Id.

30.     The FBI redacted from the records provided to Plaintiff the names of FBI support

4

personnel, the names of employees of other Federal government agencies, and the names of third

parties who provided information to the FBI or whose name is merely mentioned in the records

pursuant to FOIA Exemption 6.  Id., ¶¶ 69, 72-74, and Exh. 5.

31.    There is no public interest in disclosure of the withheld names, since they would

shed no light on the operations of the FBI.  Id., ¶ 70.

32.    FBI support personnel are in positions to access information concerning official

law enforcement investigations.  Id., ¶ 72.

33.    Such personnel could become targets of harassing inquiries for unauthorized

access to FBI investigations if their identities were released.  Id.

34.    There is thus a substantial privacy interest in the identities of these FBI support

employees.  Id.

35.    The disclosure of the identities of other government employees could subject them

to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their

personal privacy.  Id., ¶ 73.

36.    The disclosure of the names of third parties contained within the records released

to Plaintiff documents could cause unsolicited and unnecessary attention to be focused on them

and disclosure may embarrass them.  Id., ¶ 74.

37.    For these reasons, the FBI has determined that the third party individuals in the

responsive communication maintain a strong privacy interest in not having their identities

disclosed.  Id.

38.    The FBI also withheld the names of FBI employees, other government employees

and third parties pursuant to FOIA Exemption 7(C).  Id., ¶ 77 and Exh. 5.

5

39.    The records at issue constitute records or information compiled for law enforcement purposes.  Id., ¶¶ 26-27, 79.

40.    In each instance, the privacy interest of the individual whose name is at issue clearly outweighs the nonexistent public interest in disclosure.  Id., ¶ 79.

41.    With the exception of the information already released to Plaintiff, there is no additional reasonably segregable portion of any document or evidentiary material which can be released at this time.  Fourth Hardy Decl., ¶¶ 50, 80.

Dated: August 11, 2006.            Respectfully submitted,

                                   PETER D. KEISLER
                                   Assistant Attorney General

                                   KENNETH L. WAINSTEIN
                                   United States Attorney

                                   ELIZABETH J. SHAPIRO
                                   Assistant Branch Director


                             _____/s/_____
                                   ORI LEV  (D.C. Bar No. 452565)
                                   Senior Trial Counsel
                                   U.S. Department of Justice
                                   Civil Division/Federal Programs Branch
                                   Mail:   P.O. Box 883
                                           Washington, D.C.  20044
                                   Street: 20 Massachusetts Ave., N.W.
                                           Room 7330
                                           Washington, DC  20001
                                   Ph:     (202) 514-2395
                                   Fax:    (202) 318-7589
                                   Email:  ori.lev@usdoj.gov

                                   *Attorneys for Defendants*

6