## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELISABETH T. KIDDER | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil. Action No. 05-CV-01094 |
| FEDERAL BUREAU OF INVESTIGATION et al., | ) | |
| Defendants. | ) | |

### FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

1.      I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

2.      In my official capacity as Section Chief of RIDS, I supervise approximately 240 employees who staff a total of ten (10) units and a field operational service unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specially, I am aware of the treatment which has been afforded the FOIA request of Elisabeth T. Kidder for information pertaining to Ahmed Abu Ali.

4.    In accordance with Vaughn v. Rosen, 484 F. 2d 820 (D.C. Cir. 1973), this declaration, which is being submitted in support of defendants' motion for summary judgment, will provide the Court and plaintiff with an explanation for the procedures used in searching, reviewing and processing of the FBIHQ records responsive to plaintiff's FOIA request, and provide justifications for the withholding of information from these records in their entirety

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

pursuant to FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A).[3] The declaration also addresses the bases for the redactions made to the public source and cross-reference documents released to plaintiff.

5.    Although this declaration will primarily address the application of Exemption (b)(7)(A) to withhold the FBIHQ records responsive to plaintiff's request in their entirety, there are other FOIA exemptions which also are applicable to exempt certain information within these withheld documents from disclosure to the plaintiff.  These exemptions are FOIA Exemptions (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  In accordance with the Court's July 6, 2006 Order in this case, this declaration only addresses the applicability of Exemption (b)(7)(A) with respect to these records.

6.    In accordance with Bevis v U.S. Department of State, 801 F. 2d 1386, 1389 (D.C. Cir. 1986), this declaration will provide a description of the functional categories of each document withheld pursuant to Exemption (b)(7)(A) and will provide explanations as to why release of each functional category of documents could reasonably be expected to interfere with pending criminal law enforcement proceedings.

## CHRONOLOGY OF PLAINTIFF'S REQUEST

7.    By a FOIA Request Form (undated), plaintiff submitted a FOIA request addressed to FBIHQ for all records concerning a third-party individual named Ahmed Abu Ali.  Plaintiff requested a waiver of all duplication fees; however, she advised she was willing to pay fees up to a maximum of $20.  See Exhibit A to Plaintiff's Motion for Summary Judgment.

---

[3] References to FOIA Exemptions reflect the parallel subsection of 5 U.S.C. § 552 setting forth those exemptions.  See 5 U.S.C. § 552(b).

8.      By letter dated January 25, 2005, FBIHQ returned plaintiff's request to her,
providing instructions and the Privacy Waiver and Certification of Identity form for requesting
records on a third-party individual. This letter explained that without such a waiver, disclosure
of law enforcement records or information about another person is considered an unwarranted
invasion of personal privacy, and that such records, if they exist, are exempt from disclosure
pursuant to Exemptions (b)(6) and/or (b)(7)(C) of the FOIA. Plaintiff was advised of her right to
file an administrative appeal. See Exhibit B to Plaintiff's Motion for Summary Judgment.

9.      By letter dated February 2, 2005, addressed to the United States Department of
Justice, Office of Information [and] Privacy ("USDOJ/OIP"), plaintiff appealed the denial of her
request for access to records on Ahmed Abu Ali. See Exhibit C to Plaintiff's Motion for
Summary Judgment.

10.      By letter dated February 18, 2005, DOJ/OIP acknowledged plaintiff's
administrative appeal, assigned it appeal number 05-1008 and denied plaintiff's request for
expedited processing of her request. See Exhibit D to Plaintiff's Motion for Summary Judgment.

11.      Plaintiff then filed the instant lawsuit. As explained in the [First] Declaration of
David M. Hardy ("First Hardy Decl."), subsequent to the administrative denial of plaintiff's
request, Mr. Abu Ali was indicted, publicly tried and convicted, with his trial generating
substantial publicity. First Hardy Decl., ¶ 15.[4] As a result of these events, after plaintiff filed the
instant lawsuit the FBI determined that it was no longer necessary to neither confirm nor deny the
existence of records relating to Mr. Abu Ali, and the FBI conducted a search for responsive

---

[4] For the Court's convenience, a copy of the First Hardy Declaration – which was
previously filed in this matter as Exhibit A in support of Defendants' Opposition to Plaintiff's
Motion for Summary Judgment (docket no. 16) – is attached hereto as Exhibit 1.

4

records, as described further below. Id. See also Second Declaration of David M. Hardy ("Second Hardy Declaration") (describing search).[5]

12.    As explained in the Third Declaration of David M. Hardy ("Third Hardy Decl."), by letter dated May 26, 2006, the FBI released 25 pages of responsive records to plaintiff, consisting of two "cross-reference" documents and the public source documents contained within the Laboratory file. Third Hardy Decl., ¶ 6 and Exh. A.[6]  Certain material was redacted from three pages of these records pursuant to FOIA Exemptions (b)(2), (b)(6), and (b)(7)(C). Id. All of the remaining records from the Laboratory file were withheld pursuant to FOIA Exemption (b)(7)(A). Id. In addition, all or parts of the remaining records from the Laboratory file were also withheld pursuant to FOIA exemptions (b)(1), (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E). Id.

13.    Eight pages of public source documents contained within the Legat Riyadh file were released to plaintiff by letter dated June 12, 2006. Third Hardy Decl., ¶ 7 and Exh. B. One page contained information redacted pursuant to FOIA Exemptions (b)(1), (b)(6) and (b)(7)(C). As explained below, the remainder of the records in the Legat Riyadh file were withheld from disclosure pursuant to FOIA Exemption (b)(7)(A). Other FOIA exemptions also likely apply to these records.

14.    By letter dated August 10, 2006, the FBI released two additional unredacted pages of public source documents from the Legat Riyadh multi-volume file that were inadvertently not

---

[5] For the Court's convenience, a copy of the Second Hardy Declaration – which was previously filed in this matter as Exhibit A in support of Defendants' Unopposed Motion for Extension of Time (docket no. 20) – is attached hereto as Exhibit 2.

[6] For the Court's convenience, a copy of the Third Hardy Declaration (and attached exhibits) – which was previously filed in this matter as Exhibit 1 in support of Defendants' June 5, 2006 Status Report (docket no. 22) – is attached hereto as Exhibit 3.

included with the outgoing letter to plaintiff dated June 12, 2006. A copy of the August 10, 2006 letter to plaintiff is attached hereto as Exhibit 4.

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

15.     The Central Records System ("CRS") used by the FBI enables it to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this CRS are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained in those field offices.

16.     Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.

17.     The entries in the General Indices fall into two categories:

> (a) A "main" entry– A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry– "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

18.     Access to the CRS files in FBI field offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches

6

made in the General Indices to locate records concerning a particular subject, such as Ahmed

Abu Ali, are made by searching the subject's name in the index. FBI field offices have

automated indexing functions.

19.     On October 16, 1995, the Automated Case Support ("ACS") system was

implemented for all Field Offices, Legal Attaches ("Legats") and FBIHQ. More than 105 million

records were converted from automated systems previously utilized by the FBI. The ACS

consists of three integrated, yet separately functional, automated applications that support case

management functions for all FBI investigative and administrative cases:

(a)  Investigative Case Management ("ICM")—ICM provides the ability to open,

assign, and close investigative and administrative cases as well as set, assign, and track leads.

The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens

a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs")-

formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case

File Number ("UCFN") which is utilized by all FBI field offices, Legats and FBIHQ, that are

conducting or assisting in the investigation. Using a fictitious file number "111-HQ-12345" as

an example, an explanation of the UCFN is as follows: "111" indicates the classification for the

specific type of investigation; "HQ" is the abbreviated form used for the OO of the investigation,

which in this case is FBIHQ; and "12345" denotes the individual case file number for the

particular investigation.

(b)  Electronic Case File ("ECF")—ECF serves as the central electronic repository

for the FBI's official text-based documents. ECF supports the universal serial concept in that

only the creator of a document serializes it into a file. This provides a single-source entry of

7

serials into the computerized ECF system. All _original_ serials are maintained in the OO case file.

(c) Universal Index ("UNI")—UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 95.0 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

20.    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statues. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, _i.e.,_ Ahmed Abu Ali.

## SEARCH FOR AND DESCRIPTION OF THE FBIHQ RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

21.    As set forth in the Second Hardy Declaration, upon receipt of the Complaint in

this action, the FBI conducted an automated search of the CRS using Ahmed Abu Ali's name for

records responsive to plaintiff's request located at FBIHQ. Second Hardy Decl., ¶ 5. Such an

automated search is the typical manner in which the FBI searches for records responsive to a

FOIA request, particularly one relating to one or more specific individuals. Even though plaintiff

did not specifically request a "cross-reference" search at the administrative level, the FBI

nevertheless decided to conduct such a search of the FBIHQ indices of the CRS for cross-

references to Ahmed Abu Ali. Id., ¶¶ 6-7. This search identified two responsive documents. Id.,

¶ 7.

22.    In addition, because the CRS search identified fewer responsive records than

anticipated, the FBI requested FBIHQ personnel likely to have records responsive to plaintiff's

FOIA request to conduct a manual search for records. Id., ¶ 7. In this regard, the Litigation

Support Unit (LSU) contacted the Washington Field Office case agent for the Ahmed Abu Ali

investigation and obtained a list of individuals at FBIHQ who would likely have records

responsive to plaintiff's request. By e-mail dated March 22, 2006, each of these individuals was

asked to conduct a manual search of their records for all records on Ahmed Abu Ali that would

normally be up-loaded or serialized into the Central Records System and submit all responsive

records to the RIDS/LSU by close of business April 6, 2006. The results of this manual search

identified one Laboratory file consisting of 149 pages and a multi-volume file maintained by the

FBI's Legal Attache in Riyadh, Saudi Arabia. Id.

23.    The Department of Justice's FOIA regulations provide that "[f]or records held by

a field office of the Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI .

. . field office address, which can be found in most telephone books or by calling the

component's central FOIA office." 28 C.F.R. § 16.3(a). Accordingly, because plaintiff's FOIA request was addressed and sent to FBIHQ, the FBI did not search for responsive records at any of its field offices.

## JUSTIFICATION FOR WITHHOLDING OF THESE RECORDS IN THEIR ENTIRETY

24.     All records contained in the HQ's Laboratory file, the two cross-references, and the multi volume Legat Riyadh files were reviewed, document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA. Exemption (b)(7)(A) of the FOIA is asserted for withholding all documents responsive to plaintiff's FOIA request, with the exception of the previously released public source and cross-reference documents (See Third Declaration of David M. Hardy, ¶¶ 6-7). In addition, many of these documents contain information which is exempt from disclosure pursuant to FOIA Exemptions (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The following paragraphs explain the FBI's rationale for withholding these documents in their entirety pursuant to FOIA Exemption (b)(7)(A).

## FOIA EXEMPTION (b)(7)(A)

25.     5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings.

In order to justify withholding pursuant to this Exemption, the FBI must demonstrate that the records or information at issue were compiled for a law enforcement purpose, and that their disclosure could reasonably be expected to interfere with enforcement proceedings that are

pending or reasonably anticipated.  See Mapother v. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993).  Each of these requirements is addressed in the paragraphs below.

### Compiled for Law Enforcement Purposes

26.    All of the records responsive to plaintiff's FOIA request, with the exception of the previously-released public source and cross-reference records, are withheld pursuant to Exemption (b)(7)(A).  These records were all compiled during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States, including conspiring to provide and providing material support and resources to a designated terrorist organization and to terrorists, as well as conspiring to assassinate the President and to commit air piracy.  (See U.S. v Abu Ali, No. 05-CR-0053-GBL (E.D. Va.)).

27.    The investigation pursuant to which these records and information were compiled is ongoing and is clearly within the law enforcement duties of the FBI – which include both the investigation of possible violations of federal criminal laws and preventing and deterring terrorist attacks within the United States and around the world, and reducing the vulnerability of the United States to terrorism.  Moreover, in light of Mr. Abu Ali's conviction there is a clearly established connection between Mr. Abu Ali and a possible violation of federal law.

28.    The records at issue are from the pending law enforcement files of the investigation into Ahmed Abu Ali's activities.  These files pertain to the ongoing criminal investigation of Ahmed Abu Ali and others.  The multi volume file obtained from Legat Riyadh, the Laboratory file, and the two cross reference documents include the following types of documents:

11

(a) **Electronic Communication (EC):** The EC is a Word Perfect macro, which has replaced the traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI. The purpose of this document is to communicate within the FBI in a consistent format which can be uploaded onto the computer network.

(b) **FBI Letter:** The FBI letter is the formal correspondence format used to communicate with such non-FBI entities as other federal agencies, other law enforcement agencies, commercial businesses and private citizens. Its format is identical to the business letters utilized by commercial agencies except that it contains the FBI Seal at the top of the page.

(c) **FD-302 Interview Forms:** These are internal FBI forms on which the results of FBI interviews of persons are recorded. Such interview information may later be used in Federal Grand Jury proceedings or at criminal trials. Additionally, these interview forms are often incorporated into FBI Investigative Reports. The contents of these forms may also be incorporated into ECs for lead purposes.

(d) **FBI Records Checks:** These are computerized print-outs of the results of checks of databases concerning FBI records, local law enforcement records and/or business records. The information from these record checks is often incorporated into Investigative Reports and EC's for lead purposes.

(e) **Transcripts:** These are verbatim recordations of conversations of individuals that are used for investigative purposes. The contents of these transcripts are sometimes used for lead purposes.

(f) **FBI Routing Slip:** These are internal FBI forms used to record summarized administrative or investigative information and are often attached to other relevant documents.

(g) **Teletype:** This is an interim summary of an investigation, usually of the activities of one field division of the FBI, and is designed to expeditiously alert other field divisions and/or FBIHQ of a pertinent development in a case which would require prompt attention. It usually requires "same day" action and is transmitted by teletype machine to expedite its handling.

(h) **Memorandum:** This is ordinarily an internal communication among the Attorney General, FBIHQ and field office employees, and other DOJ component officials. It serves to assist in the overall supervision of a case by summarizing pertinent details of an investigation.

(i) **Letterhead Memorandum (LHM):** An interim summary which reports information usually derived from Form FD-302 concerning the subject of an investigation, and is designed to alert other field divisions and/or FBIHQ to pertinent developments in the investigation. It is usually attached to a cover sheet, which may be a letter or an airtel. The LHM can also be detached from its cover sheet, and disseminated to other Government agencies.

(j) **Source Documents/Information:** These documents are provided to the FBI by a source, as defined within the realm of U.S. Department of Justice v. Landano, 508 U.S. 165 (1993). These documents can include investigatory reports, material collected pursuant to a subpoena, commercial documents (unavailable to the public), financial documents and state and/or local bureau/agency documents.

(k) **FBI Administrative Forms Concerning 1A/1B Sections:** These are internal FBI forms used to record administrative information concerning the sections of a file in which certain types of documents are separately filed. These sections are usually designated in

13

alphabetical order as 1A, 1B, etc. The types of documents which are filed separately can include handwritten notes of interviews, newspaper articles or evidentiary documents.

(l) **Third-Party Communications:** These are documents which have been received by the FBI from third parties who provide information. Also, employees of other government agencies provide the FBI information coming to their attention regarding source information. Types of third party communications include, but are not limited to, reports, letters, memoranda, notes, faxes, flyers, invoices, etc.

(m) **FBI Computer Printouts:** These are papers which have been printed from internal FBI computer systems which may describe information concerning FBI investigations. The information included on the documents may include file numbers, names, and addresses of subjects and suspects, key dates and places of crimes, names of Special Agents ("SAs") assigned to investigations, and other similar information.

(n) **Miscellaneous Administrative Documents:** Various types of forms are used throughout an investigation, which include storage envelopes, bulky exhibit cover sheets, transmittal forms, i. e., facsimile cover pages, routing slips, and notes. Also included are forms that are placed in a file whenever a serial has been removed from the file and placed elsewhere. A Form FD-159 is placed in a file to show that information was furnished to another government agency. Other documents in this category may include notes, memoranda, letters, telegrams, or attachments which do not fall into an official government format.

(o) **Lab Reports:** These are documents prepared by the FBI Laboratory at Quantico, Virginia. These reports are completed by a lab employee and forwarded to the requesting field office in order to report the FBI Laboratory's findings.

14

## Pending/Prospective Law Enforcement Proceedings

29.    Ahmed Omar Abu Ali was indicted and subsequently convicted in the United

States District Court for the Eastern District of Virginia on November 22, 2005, of the following

offenses:

| | |
|---|---|
| 18 U.S.C. § 2339B: | Providing material support to a terrorist organization (Al Qaida) (2 counts) |
| 18 U.S.C. § 2339A: | Providing material support to terrorists (2 counts) |
| 50 U.S.C. § 1705: | Contributing/receiving goods and services from Al Qaida (2 counts) |
| 18 U.S.C. § 1751: | Conspiracy to assassinate the President (1 count) |
| 49 U.S.C. § 46502: | Conspiracy to commit air piracy (1 count) |
| 18 U.S.C. § 32: | Conspiracy to destroy aircraft (1 count) |

On March 29, 2006, Abu Ali was sentenced in the United States District Court for the Eastern

District of Virginia to thirty years in prison to be followed by thirty years of supervised release.

30.    Abu Ali has appealed his criminal conviction and the appeal is currently pending

in the United States Court of Appeals for the Fourth Circuit.  See U.S. v. Abu Ali, Nos. 06-4521,

06-4334 (4th Cir.).

## Reasonable Expectation of Interference

31.    The case agent, who has the responsibility for this investigation, has advised that

this investigation is still pending and that release of any information from these files, other than

the previously-released public source and cross-reference documents, could reasonably be

expected to interfere with potential criminal law enforcement proceedings against Abu Ali and/or

others.  Specifically, in light of the pending appeal of Mr. Abu Ali's criminal conviction, the

release of any information from these files could reasonably be expected to interfere with further possible proceedings in the criminal case.

32.    Any release of information from this file to plaintiff would be premature and could reasonably be expected to cause harm to pending law enforcement proceedings. Once documents are released and are in the public domain, information concerning this ongoing investigation could reach the individuals being investigated, thus allowing such individuals to critically analyze these documents concerning the investigation. Such individuals possess the unique advantage of knowing the details surrounding the criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities. These individuals could therefore use the released information to their advantage to destroy evidence or intimidate potential witnesses.

33.    In this regard, the following potential harms from the release of information contained in these documents exists:

(a) The identification of individuals and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of, these individuals;

(b) The use of released information to counteract evidence developed by investigators, alter or destroy potential evidence, or create false evidence; and

(c) The use of released information by any subject of the investigation to assess the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation; and

(d) The identification of locations in the United States, as well as foreign

countries, where the FBI is focusing the investigation and collection of investigative and source material.

34.    Furthermore, the release of this information to third parties not directly involved in this matter could allow these third parties to interfere with the pending law enforcement proceeding by harassment, intimidation, and creation of false evidence. Once a release is made to plaintiff under the FOIA, her use and dissemination of the information to third parties is unrestricted.

## Functional Categories of Information

35.    Each document in the responsive records and evidentiary materials withheld pursuant to FOIA Exemption (b)(7)(A) has been reviewed, document-by-document, and categorized for the purpose of this declaration in terms of the information contained therein.

36.    Documents located in the Laboratory and multi-volume Legat Riyadh file and the information contained in each such document falls into one or more of the categories described in the following paragraphs. For example, one document, such as an "EC," may serve several purposes and may contain multiple categories of information, such as witness statements, administrative directions or evidentiary materials. This document could, therefore, be included in multiple of the categories described below, as could the information contained within the document. The categories include:

### 1. Evidentiary/Investigative Materials

37.    This category includes copies of records or evidence, and derivative communications discussing or incorporating evidence. A derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it

17

relates to this investigation. Other derivative communications report this information to other

FBI Field Offices or other law enforcement agencies, either to advise them of the progress of the

investigation, or to elicit their assistance in handling investigative leads. The following

paragraphs describe the types of evidentiary material in the responsive records and the

anticipated harm which could reasonably result from the release of such materials.

### (a) Confidential Source Statements

38.    Confidential source statements are one of the principal tools used in providing the

facts which form the basis for a prosecution. These statements contain information obtained

from confidential informants, records custodians and other third party individuals who have

knowledge of potential criminal activities in this criminal investigation. If this information was

released, the witnesses and/or confidential sources who have chosen to cooperate with law

enforcement could be subjected to retaliation, intimidation, or physical or mental harm. This

could have a chilling effect on any future proceedings in this case inasmuch as potential

witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this

investigation. Implicit in conducting interviews in an investigation of this nature is the notion

that an individual's identity and the information provided by them will be afforded

confidentiality. The FBI goes to great lengths to protect and maintain an individual's

confidentiality since it is an integral part of a successful investigation and prosecution. The

release of witness statements and confidential source statements would disrupt and harm

potential investigative and/or prosecutive actions.

18

**(b) Exchange Of Information Between Various Local, State, Federal and Foreign Agencies**

39. Release of this type of information will disclose investigative information developed by various agencies that have cooperated with and provided information and records to the FBI in this pending investigation. Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released. This information was gathered to help identify subjects, suspects or other individuals of potential investigative interest and to assist in locating witnesses and/or confidential sources. To release this information would identify the investigative interest in particular individuals as well as subject witnesses and confidential sources to potential harassment, intimidation and physical or mental harm.

**(c) Information Concerning Documentary and Physical Evidence**

40. Information concerning documentary and physical evidence responsive to this request includes items that cannot be further described in this public declaration. To fully describe these records could reasonably lead to the identification of the evidentiary records and, ultimately, the sources of these records. Further description (or release) of these records could result in the possible harm or intimidation of those witnesses and confidential sources who provided these records. The information contained in these records is pertinent and integral to this ongoing investigation. Disclosure of these records could be detrimental to success of the pending and prospective prosecutions by permitting subjects to formulate a strategy as to how the evidence could be contradicted in Court.

## 2. Administrative Materials

41.     Materials which fall into this category include items such as case captions, serial

numbers, identities of FBI field offices involved, dates of investigation and detailed instructions

designed to ensure that investigative procedures are conducted within the appropriate FBI and

DOJ guidelines. The following subparagraphs describe the types of administrative material

contained within the Laboratory and multi-volume Riyadh file and the anticipated harm which

could reasonably result from the release of such materials. In many instances, administrative

information is contained at the beginning of correspondence which also falls into other

categories. Therefore, to release details with respect to this category of information would also

reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of

the investigation.

### (a) Reporting Communications

42.     These communications permit an agency to monitor the progress of the

investigation and to facilitate its conduct. These communications may reveal or confirm the

cooperation of other local, state, or foreign agencies in the investigation. These communications

are replete with detailed information about the investigative activities as well as detailed

information about potential witnesses and confidential sources to be interviewed. Additionally,

they contain background information about third party individuals, the origin of pertinent

information which ties them to the investigation, their connection with the subject and their

relationship with the pending investigation. The release of this information would reveal the

investigative steps taken to obtain witness and confidential source interviews, techniques and

investigative methods used to compile and/or solicit information from various sources and the

20

perceived weaknesses in the investigation. The release of this information would reveal the nature and scope of this pending investigation.

### (b) Miscellaneous Administrative Documents

43.    These materials include items such as storage envelopes, transmittal forms, and standardized forms used for particular purposes. These types of materials were used throughout this investigation for many routine purposes. While these materials are not solely applicable to this investigation, they were adapted or used in such a manner so as to contain information of investigative value.

44.    An example is the envelope used to store records obtained from a confidential source. While the envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the persons who provided the records. The disclosure of these materials could harm the investigation by providing details which, when viewed in conjunction with knowledge possessed by the subject, could provide information useful in identifying witnesses, investigative strategies and items of evidence.

### (c) Administrative Instructions

45.    This type of information, whether it originates in communications from DOJ, the FBI, or other law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures employed in this investigation. Release of this information would thus permit the subject of an investigation to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions of himself or other subjects.

46.    Specific examples of these instructions include the setting out of investigative guidelines, requests for laboratory or fingerprint analyses, and requests for specific investigative

inquiries at various FBI field offices or other government agencies. These instructions are

commonly referred to as "investigative leads" and are set forth throughout the course of this

investigation.

### 3. Public Source and Cross-Reference Documents

47.    The only information responsive to plaintiff's request which is not exempt from

disclosure pursuant to Exemption (b)(7)(A) is the public source information and the two cross-

reference documents already released to plaintiff. This information is considered outside the

scope of Exemption (b)(7)(A) as the information is already known to the public, or, in the case of

the cross-reference documents, not reasonably be expected to interfere with pending criminal law

enforcement proceedings. Thus, the disclosure of this the information would not result in any of

the harms which the application of Exemption (b)(7)(A) is intended to protect.

48.    During the course of an FBI investigation, including this one, relevant and

pertinent articles in newspapers, magazines or other periodicals are placed into the investigative

file. These materials contain information known to the public, thus the title "public source."

They are placed into the file for background and review purposes. This public source

information is similar in nature to FBI news releases and media statements which are often part

of an investigative file. Considered in this category might be FBI communications that contain

detailed summaries of media coverage, but only to the extent that the material is known media

coverage. Also included in this category are documents which appear in court files, such as

orders, motions, or sentencing reports.

49.    As explained above and in my prior declarations, upon review of the material

located at FBIHQ, all public source material contained within the Laboratory and multi-volume

22

Legat Riyadh files was previously released to the plaintiff on May 26, 2006, June 12, 2006, and August 10, 2006.

50.    The disclosure of the remainder of the information described above, a majority of which was obtained from highly sensitive sources, and other governments, would create a risk to the security of the United States and its allies. The identities of those involved, the methods and techniques of intelligence collection, and the pending nature of the investigations in connection with other third parties must be protected to ensure the success of future operations and the continued cooperation of the FBI's sources. The FBI has carefully examined the records at issue in this case and has determined that all of the information withheld regarding this pending investigation is exempt from disclosure in its entirety pursuant to FOIA Exemption (b)(7)(A). No additional releases are possible at this time without hindering the pending investigation.

## INFORMATION REDACTED FROM PUBLIC SOURCE AND CROSS-REFERENCE DOCUMENTS RELEASED TO PLAINTIFF

51.    As noted above, four pages of the public source and cross-reference documents released to plaintiff on May 26, 2006 and June 12, 2006 had certain information redacted. Copies of those four pages, with coded explanations for the material redacted, are attached hereto as Exhibit 5. The following paragraphs explain the coded explanations, describe the information withheld from these four pages, and explain why that information is exempt from disclosure under FOIA.

### Mechanics of Utilizing the Coded Format for Deleted Material

52.    Each withholding of information from these documents is accompanied by a code that corresponds to a category of information within each of the exemptions used to withhold

23

information. For example, if (b)(7)(C)-1 appears on the margin of the page, the "b)(7)(C)" designation refers to reliance on Exemption (b)(7)(C) ("unwarranted invasion of personal privacy"). The Subcategory "1" designation narrows and specifically describes the material redacted which, in this example, are the identities of FBI employees.

53.     The coded categories of exemptions used in the processing of plaintiff's request are as follows:

**EXEMPTION (b)(1)**          **CLASSIFIED INFORMATION**

Code: (b)(1)                  Information Properly Classified by an FBI Classification
                              Authority pursuant to Executive Order 12958, As Amended

**EXEMPTION (b)(2)**          **INFORMATION RELATED SOLELY TO THE
                              INTERNAL RULES & PRACTICES OF AN AGENCY**

Code: (b)(2)                  Internal Facsimile of FBI Employees

**EXEMPTION (b)(6)**          **CLEARLY UNWARRANTED INVASION OF
                              PERSONAL PRIVACY**

Code: (b)(6)-1                Names of FBI Employees
                              [Cited in conjunction with Exemption (b)(7)(C)-1]

Code: (b)(6)-2                Names of Non-FBI Federal Government Employees
                              [Cited in Conjunction With Exemption (b)(7)(C)-2]

Code: (b)(6)-3                Names of Third Parties Who Provided Information to the
                              FBI or Whose Names Are Merely Mentioned
                              [Cited in Conjunction With Exemption (b)(7)(C)-3]

**EXEMPTION (b)(7)(C)**       **UNWARRANTED INVASION OF PERSONAL
                              PRIVACY**

Code: (b)(7)(C)-1             Names of FBI Employees
                              [Cited in Conjunction With Exemption (b)(6)-1]

Code: (b)(7)(C)-2             Names of Non-FBI Federal Government Employees
                              [Cited in Conjunction With Exemption (b)(6)-2]

24

Code: (b)(7)(C)-3         Names of Third Parties Who Provided Information to the
FBI or Whose Names Are Merely Mentioned
[Cited in Conjunction With Exemption (b)(6)-3]

## Justification for Redacted Material

54.      The following paragraphs describe the redacted information withheld from the

four pages of public source and cross-reference documents attached as Exhibit 5, and explain the

FBI's rationale for withholding each particular category of information under the specific

exemption categories described.

## FOIA Exemption (b)(1) and E.O. 12958, as Amended

55.      Pursuant to Exemption (b)(1), the FBI withheld and redacted the following

classified information from the documents provided to plaintiff: a FBI file number that is

assigned to a specific intelligence activity and identifies channelization/dissemination

instructions for information identifiable with the intelligence activity. This number was redacted

from the bottom righthand corner of the document labeled "Kidder-4." See Exhibit 5.

56.      5 U.S.C. § 552(b)(1) exempts from disclosure those records that are: "(A)

specifically authorized under criteria established by an Executive Order to be kept secret in the

interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to

such Executive Order. . . ."

57.      In determining whether Exemption (b)(1) applies to particular information, I must

determine whether the information satisfies the requirements of the Executive Order which

presently governs the classification and protection of information that affects the national

security.[7]  In this regard, I must ensure that the information at issue complies with the various

substantive and procedural criteria of the current Executive Order, E.O. 12958, as amended.  The

current Executive Order which applies to the protection of national security information was

amended on March 25, 2003.  I am bound by the requirements of E.O. 12958, as amended, when

making classification determinations.

58.     For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in

E.O. 12958, as amended, § 1.1 (a):

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United
States Government;

(3) the information falls within one or more of the categories of information listed in
§ 1.4 of the order; and

(4) the original classification authority determines that the unauthorized disclosure of the
information reasonably could be expected to result in damage to the national security,
which includes defense against transnational terrorism, and the original classification
authority is able to identify or describe the damage.

59.     All information which I determined to be classified in this case, and which is

under the control of the United States Government, is marked at the "Secret" level since the

unauthorized disclosure of this information reasonably could be expected to cause serious

damage ("Secret") to the national security.[8]

60.     In addition to these substantive requirements, certain procedural and

---

[7]  Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national
defense or foreign relations of the United States."

[8]  See E.O. 12958, as amended, § 1.2 (a)(2).

administrative requirements of E.O. 12958, as amended, must be followed before information

can be considered to be properly classified, including the proper identification and marking of

documents. I made certain that all procedural requirements of E.O. 12958, as amended, were

followed in order to ensure that the information at issue was properly classified. In this regard, I

made certain that:

> (a) each document was marked as required and stamped with the proper classification designation;[9]
>
> (b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 12958, as amended, § 1.5 (d) and which portions are unclassified;[10]
>
> (c) the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;
>
> (d) the declassification policies set forth in E.O. 12958, as amended, § 3.1 were followed; and
>
> (e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.[11]

61.     With the above requirements in mind, I personally and independently examined

the information withheld from the plaintiff pursuant to FOIA Exemption (b)(1). I determined

that the portion of classified information withheld warrants continued classification at the

--------

[9] E.O. 12958, as amended, §§ 1.6 (a)(1)-(5).

[10] E.O. 12958, as amended, § 1.6 (c).

[11] 5 U.S.C. § 552 (b) provides, in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." In this case, the information at issue has been carefully examined and we have determined that no additional reasonably segregable portions may be declassified and released.

"Secret" level, pursuant to E.O. 12958, as amended, § 1.4(c), which provides for the

classification of intelligence activities (including special activities), intelligence sources or

methods, or cryptology, as the unauthorized disclosure of this information could reasonably be

expected to cause serious damage to the national security.

### Intelligence Activities or Methods

62.     As noted above, the classified information withheld from the document labeled

"Kidder-4" consists of a FBI file number that is assigned to a specific intelligence activity and

identifies channelization/dissemination instructions for information identifiable with the

intelligence activity.  The release of this file number would lead to exposure of the particular

intelligence activities at issue.  Individual file numbers are assigned by FBIHQ and field offices

and contain a geographical prefix of the originating office and case number, which includes the

numerical characterization of the type of investigation followed by a chronological number

assigned to a specific investigation/activity.

63.     The disclosure of an intelligence file number in the aggregate could enable a

hostile analyst to attribute any information released from the documents containing such a file

number to that particular file.  A hostile analyst can identify the specific intelligence activity by

supplying further missing pieces.  Hence, a partial mosaic of the activity begins to appear as

more information is identified with the file leading to the exposure of actual current activities or

methods.  Disclosure of this file number will allow a hostile analyst, or anyone not privileged to

this information, to patch bits and pieces of information together until the actual use of the

application of the source or method can be determined.  The identification of these intelligence

sources or methods, which continue to furnish positive intelligence information to date, will

severely limit its application. In addition, disclosure will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can collect, concerning them. This knowledge provides potential or actual violators of the United States' national security laws a means of deflection or avoidance of lawful regulations. Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations. Accordingly, the release of the file number can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. The redacted file number is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c), and exempt from disclosure pursuant to Exemption (b)(1).

64.    Moreover, the information withheld in this case pursuant to Exemption (b)(1) was examined in light of the body of information available to me concerning the national defense of the United States. This information was not examined in isolation. Instead, the individual piece of information was evaluated with careful consideration given the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined.

65.    In my judgement, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighs the benefit of disclosure. Accordingly, I exercised my prerogative as an original classification authority and

designated the file number information as classified in the interest of national security, and invoked Exemption (b)(1) of the FOIA to prevent disclosure.

## FOIA Exemption (b)(2) - Internal Agency Rules and Practices

66.     5 U.S.C. § 552(b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.

67.     Exemption (b)(2) has been asserted to redact and withhold the business non-secure facsimile number of FBI personnel on the document labeled "Kidder-2." See Exhibit 5. The non-secure facsimile number relates directly to the internal practices of the FBI in that it is used by individuals during the performance of their duties. Disclosure of internal facsimile numbers of the FBI could cause the offices to be inundated with faxes which could also disrupt official business. The disclosure of routine internal administrative information such as the fax number referenced above serves no public benefit and there is no indication that there is a genuine public interest in the disclosure of these numbers. Accordingly, because the fax number is solely related to the FBI's internal practices, because disclosure would not serve any public benefit, and because disclosure could impede the agency's effectiveness, the FBI withheld this information pursuant to Exemption (b)(2).

## FOIA Exemption (b)(6)
## Clearly Unwarranted Invasion of Personal Privacy

68.     5 U.S.C. § 552(b)(6) exempts from disclosure personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

69.    The following information was withheld and redacted from the documents provided to plaintiff pursuant to Exemption (b)(6): the names of FBI employees (on the bottom of "Kidder-1" and "Kidder-4"); the names of employees of other government agencies (the name of the fax sender on "Kidder-2" and the name of a Congressional staffer in the last paragraph of "Kidder-3"); and the names of third parties who provided information to the FBI or who are merely mentioned in the records (in the first paragraph of "Kidder-1" and in the first three paragraphs of "Kidder-3"). This information was also withheld pursuant to Exemption (b)(7)(C), as discussed further below.

70.    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, each item of information was examined to determine the degree and nature of the privacy interest of every individual whose name and/or identifying information appears in these records. The public interest in disclosure of this information is determined by whether the information in question would inform the plaintiff and the general public about the FBI's performance of its mission to enforce federal criminal statutes and/or how the information would shed light on the FBI's performance of its statutory duties. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest. The only recognized public interest is that which sheds light on the operations and activities of the federal government. To reveal the names and/or identifying information of third party individuals in the context of the records of an ongoing FBI criminal investigation could reasonably be expected to cause harassment, embarrassment and/or humiliation, and thus constitute an unwarranted invasion of personal privacy. It would also shed

31

no light on the operations and activities of the federal government.

71.    During the review of these records, the passage of time and its effect on the

privacy interests of third party individuals was considered. It was determined that the privacy

interests are as strong and pertinent now as when the records were created and that there is no

public or historical interest in these records which would outweigh the privacy interests of these

third party individuals.

### Code (b)(6)-1: Names of FBI Employees

72.    The names of FBI support personnel have been withheld pursuant to Exemption

(b)(6), as noted by the code (b)(6)-1 on the documents attached as Exhibit 5. Support personnel

are assigned to handle various tasks such as searching the CRS, following leads, retrieving

reports from the FBI's intelligence data systems, serving subpoenas and other duties relating to

FBI investigations. These individuals are in positions to access information concerning official

law enforcement investigations. They could, therefore, become targets of harassing inquiries for

unauthorized access to FBI investigations if their identities were released. Similarly, there is a

substantial privacy interest in the identities of these FBI support employees. After balancing this

privacy interest against the public interest in disclosure, the FBI found no legitimate public

interest that outweighed this privacy interest because the identities of FBI support employees will

not shed light on the operations and activities of the FBI.

### Code (b)(6)-2: Names of Non-FBI Federal Government Personnel

73.    The names of other federal government personnel have been withheld pursuant to

Exemption (b)(6), as noted by the code (b)(6)-2 on the documents attached as Exhibit 5.

Disclosure of the identities of these individuals could subject them to unauthorized inquiries and

harassment which could constitute an unwarranted invasion of their personal privacy. The

rationale for protecting non-FBI federal employees is the same as that of FBI employees.

Balanced against the legitimate privacy interests of these third parties, is the lack of any bona fide

public interest in disclosure. Accordingly, the FBI has determined that the disclosure of the

identities of these individuals would constitute an unwarranted invasion of their personal privacy.

### Code (b)(6)-(3): Names of Third Parties Who Provided Information to the FBI or Whose Names Are Merely Mentioned

74.     The names of third parties contained within these documents have been withheld

pursuant to Exemption (b)(6), as noted by the code (b)(6)-3 on the documents attached as Exhibit

5. Disclosure of the identities of these third parties in this context could cause unsolicited and

unnecessary attention to be focused on them and disclosure may embarrass them. For these

reasons, the FBI has determined that the third party individuals in the responsive communication

maintain a strong privacy interest in not having their identities disclosed.

75.     After identifying the substantial privacy interest of the third parties in this

communication, the FBI balanced those interests against the public interest in disclosure. The

FBI could identify no discernible public interest in the disclosure of this information because the

disclosure of third parties' names and identifying information will not shed light on the

operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this

information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI

properly withheld the names of these third parties pursuant to Exemption (b)(6)-(3).

### FOIA Exemption (b)(7)(C) Unwarranted Invasion of Personal Privacy

76.     5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."

77.    The same information that was withheld and redacted pursuant to Exemption (b)(6) was also withheld and redacted pursuant to Exemption (b)(7)(C).

78.    As discussed above with respect to Exemption (b)(7)(A), the records at issue clearly constitute "records or information compiled for law enforcement purposes."

79.    When withholding information pursuant to Exemption (b)(7)(C), the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. For the same reasons that the withheld information at issue is exempt from disclosure pursuant to Exemption (b)(6), it is also exempt from disclosure pursuant to Exemption (b)(7)(C) – in each instance, the privacy interest of the individual whose name is at issue clearly outweighs the public interest in disclosure.

80.    With the exception of the information already released to plaintiff, there is no additional reasonably segregable portion of any document or evidentiary material which can be released at this time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of August, 2006.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.