1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELISABETH T. KIDDER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-CV-01094 (RBW) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

1.      I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

2.      In my official capacity as Section Chief of RIDS, I supervise approximately 257

1

employees who staff a total of ten (10) units and a field operational service center unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General and FBI policies and procedures; judicial decisions and other

Presidential and Congressional directives.  My responsibilities also include the review of FBI

information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the

preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2]  I

have been designated by the Attorney General of the United States as an original classification authority

and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1.  The

statements contained in this declaration are based upon my personal knowledge, upon information

provided to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.  If called as a witness, I could competently testify to the facts set forth herein

3.      Due to the nature of my official duties, I am familiar with the procedures followed by the

FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5

U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment

which has been afforded the FOIA request of plaintiff Elisabeth Kidder which seeks access to records

pertaining to Ahmed Abu Ali.

4.      The purpose of this declaration is to provide the Court and plaintiff with an explanation

of the FBI's initial response to plaintiff's FOIA request, and to respond to plaintiff's motion for summary

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

2

judgement.

## CHRONOLOGY OF PLAINTIFF'S FOIA REQUEST

5.      By a FOIA Request Form (undated), plaintiff submitted a FOIA request addressed to

FBIHQ for all records concerning a third-party individual named Ahmed Abu Ali. Plaintiff requested a

waiver of all duplication fees; however, she advised she was willing to pay fees up to a maximum of

$20. See Exhibit A to Plaintiff's Motion for Summary Judgment.

6.      By letter dated January 25, 2005, FBIHQ returned plaintiff's request to her, providing

instructions and the Privacy Waiver and Certification of Identity form for requesting records on a third-

party individual. This letter explained that without such a waiver, disclosure of law enforcement records

or information about another person is considered an unwarranted invasion of personal privacy, and

that such records, if they exist, are exempt from disclosure pursuant to Exemptions (b)(6) and/or

(b)(7)(C) of the FOIA. Plaintiff was advised of her right to file an administrative appeal. See Exhibit B

to Plaintiff's Motion for Summary Judgment.

7.      By letter dated February 2, 2005, addressed to the United States Department of

Justice, Office of Information [and] Privacy ("USDOJ/OIP"), plaintiff appealed the denial of her

request for access to records on Ahmed Abu Ali. See Exhibit C to Plaintiff's Motion for Summary

Judgment.

8.      By letter dated February 18, 2005, DOJ/OIP acknowledged plaintiff's administrative

appeal, assigned it appeal number 05-1008 and denied plaintiff's request for expedited processing of

her request. See Exhibit D to Plaintiff's Motion for Summary Judgment.

## POLICY OF DENYING THE EXISTENCE OF RECORDS PURSUANT TO EXEMPTIONS (b)(6) AND (b)(7)(C)

9.      The Privacy Act, 5 U.S.C. § 552a(b), states that:

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ."

This section is followed by a list of twelve specific conditions permitting disclosure. Of the twelve

conditions, only the second has relevance to this case. This second condition permits disclosure of such

a record if it "would be required under section 552 of this title [the FOIA]." 5 U.S.C. § 552a(b)(2).

10.     Under 5 U.S.C. § 552(b)(6), the FOIA exempts from disclosure:

"Personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

11.     Under 5 U.S.C. § 552(b)(7)(C), the FOIA also exempts:

Records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

12.     When a FOIA requester seeks information about a third party for which no privacy

waiver or proof of death is provided, the FBI generally neither confirms nor denies the existence of

responsive records. Refusing to provide records due to lack of privacy waiver or proof of death would

essentially affirm that the individual is mentioned in FBI records. The mere mention of an individual's

name in an FBI record reflects that the person either came to the attention of or assisted the FBI during

the course of the FBI's law enforcement activities. Affirming that records exist on a third party would

violate an individual's privacy, resulting in potential embarrassment and stigma. In addition, if a

4

requester seeks information on a third party whom the requester believes is an informant, affirming

whether responsive records exist could expose the third party to serious personal risk.

13.     Thus, whether responsive records exist or not, the FBI has generally found that the

"neither confirm nor deny" response provides the best and most complete protection when a requester

seeks information regarding a third party for whom the requester provides no privacy waiver or proof

of death.  From an administrative standpoint, it would be much simpler to actually admit those instances

in which records do not exist on a particular individual.  Those FOIA requests could arguably then be

disposed of with finality by a negative, but clear response.  However, this would leave the FBI in the

untenable position of having to affirmatively address those requests in which records do exist.  While

responsive information would be exempt from disclosure in all instances where the privacy interests

outweigh the public interest in disclosure, the damage to the third party's privacy would have already

occurred by the mere confirmation of the existence of responsive records.

### APPLICATION OF THE FBI'S POLICY TO PLAINTIFF'S REQUEST

14.     Plaintiff's request sought records about a third party for whom no privacy waiver or

proof of death had been provided.  Accordingly, the FBI applied its standard policy described above,

and neither confirmed nor denied the existence of responsive records.  Instead, the FBI returned the

request to plaintiff and asked that she submit either a privacy waiver or a proof of death for Mr. Abu

Ali.  See 5 U.S.C. § 552a(b); 28 C.F.R. §16.3(a).  To release any records responsive to plaintiff's

request or even to acknowledge their existence, if they did exist, could have subjected the FBI to

possible action by Ahmed Abu Ali under the Privacy Act.

15.     Since the FBI's initial response to plaintiff's FOIA request, Ahmed Abu Ali has been

5

indicted, publicly tried and convicted. Mr. Abu Ali's trial generated substantial publicity. Moreover, the FBI's role in investigating Mr. Abu Ali's case has been publicly acknowledged. As a result of these events, after plaintiff filed the instant lawsuit the FBI determined that it was no longer necessary to neither confirm nor deny the existence of records relating to Mr. Abu Ali, because the mere acknowledgment that such records exist would no longer constitute an unwarranted invasion of personal privacy. Accordingly, the FBI determined to conduct a search for responsive records at FBI headquarters. As explained below, the FBI first conducted an automated search for responsive records, and is now conducting a hand search for responsive records.

### EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

16.    The Central Records System ("CRS") used by the FBI enables it to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this CRS are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained in those field offices.

17.    Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.

18.    The entries in the General Indices fall into two categories:

6

(a) A "main" entry – A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

(b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

19.    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ.  The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval.

20.    Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved.  The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes.  Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

21.    As noted above, upon receipt of the Complaint in this case, and recognizing the substantial publicity surrounding Mr. Abu Ali's indictment, trial and conviction, and the public acknowledgment of the FBI's role in investigating Mr. Abu Ali's case, the FBI decided to search for records responsive to plaintiff's request using the CRS in order to locate any investigatory files maintained at FBIHQ.  This is the standard means by which the FBI typically conducts searches for

records responsive to FOIA requests. The FBI used Mr. Abu Ali's name, as well as his date of birth and Social Security number, to facilitate the identification of responsive records. This search failed to locate any main investigatory files responsive to plaintiff's request at FBIHQ, but it did locate two cross references.

22.    Because this CRS search identified fewer responsive records than expected, RIDS requested FBIHQ personnel likely to have records on Ahmed Abu Ali to conduct a manual search for records. FBIHQ personnel are manually searching their files in which they reasonably believe responsive records may be found that have not been serialized, but are intended for future serialization, and provide those records to RIDS for further processing.

23.    At this time, FBIHQ expects to complete this search, and to complete the processing of any responsive records identified (including the preparation of a *Vaughn* index) by mid-May 2006. As of this date, however, the FBI does not know how many documents will be located or how complex the processing will be. In addition, to the extent that responsive records are classified, additional procedures may have to be followed, which may further delay the processing of plaintiff's request. Therefore, this date is subject to adjustment.

24.    It should be noted that neither the CRS search already conducted, nor the hand search currently under way include FBI field office files. If the plaintiff believes that there may be additional files in FBI field offices, it is incumbent upon her to file requests with each individual field office that she believes maintains the records she seeks, per 28 C.F.R. Sections 16.3 (a) and 16.41 (a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of March, 2006.

DAVID M. HARDY
Section chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

**2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELISABETH T. KIDDER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil. Action No. 05-CV-01094 |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters

("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the

FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy,

procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as

a Navy Judge Advocate, at various commands and routinely worked with FOIA matters. I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 233

1

employees who staff a total of ten (10) units and a field operational service center unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General and FBI policies and procedures; judicial decisions and other

Presidential and Congressional directives.  My responsibilities also include the review of FBI

information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the

preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2]  I

have been designated by the Attorney General of the United States as an original classification authority

and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1.  The

statements contained in this declaration are based upon my personal knowledge, upon information

provided to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the

FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specially, I am aware of the treatment

which has been afforded the FOIA request of Elisabeth T. Kidder.

(4)    The purpose of this declaration is to provide the Court and plaintiff with a description of

the search for records responsive to plaintiff's request to FBIHQ.

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(5)     Upon receipt of the complaint in this litigation, the FBI conducted a search of the

Central Records System (CRS) for records responsive to the plaintiff's request. The CRS files are the

means by which the FBI can determine what retrievable information, if any, the FBI may have in its

CRS files on a particular subject matter or individual, i.e., Ahmed Abu Ali. FBIHQ searched the CRS

using Ahmed Abu Ali's name in order to locate any main investigatory files maintained at HQ.

(6)     In the absence of a specific request for a search of cross-references at the

administrative level, the FBI's current policy is to search for and identify only "main" files responsive to

FOIA requests. In this case, at the administrative level, plaintiff did not specifically request that a

search be conducted for cross-references.

(7)     Because the CRS search identified fewer responsive records than anticipated, it was

determined that the FBI should search the FBIHQ indices of the CRS for cross-references. This

search identified two cross-references on Ahmed Abu Ali. In addition, RIDS requested FBIHQ

personnel likely to have records responsive to plaintiff's request to conduct a manual search for records

and provide responses by close of business April 6, 2006. The results of this manual search identified

one Laboratory file consisting of 149 pages and a multi volume file maintained by the FBI's Legal

Attache in Riyadh, Saudi Arabia (Legat Riyadh).[3] Legat Riyadh did not completely identify all the files

responsive to the plaintiff's request until April 17, 2006. Legat Riyadh advised that many of the

---

[3]An FOIA request addressed to FBIHQ includes all records in the possession of FBI Legats
likely to have responsive records. It does not, however, cover FBI field offices. See 28 C.F.R. §§
16.3 (a), 16.41 (a).

3

documents in the responsive files are classified  and must be sent by "diplomatic pouch" through the

United States State Department.  Legat Riyadh estimated, based on his experience, that it would take

four to six weeks for FBIHQ to receive documents sent by diplomatic pouch.

(8)  The Laboratory file that was identified as responsive to the plaintiff's request also contained

classified information.  This file was immediately sent to the Classification Review Unit.  RIDS

maintains three Classification Units ("CUs") that are responsible for complying with the classification/

declassification review of FBI records under Executive Order 12958, as amended.  The CUs review

documents responsive to FOIA/Privacy Act requests, criminal and civil discovery requests,

Congressional and Presidential mandates, Presidential Library requests, mandatory declassification

requests, Office of Inspector General Reports, and other federal agency requests in order to determine

whether such material should remain classified or be declassified.  The classification review of the

laboratory file identified as responsive to the plaintiff's request should be completed by May 10, 2006.

(9)  RIDS/FOIPA Units ("Disclosure Units") will begin processing the Laboratory file

responsive to the plaintiff's request as soon as the classification review is completed.  "Processing"

involves a page-by-page, line-by-line review of the responsive documents to determine which, if any,

FOIA and/or Privacy Act exemptions may apply.  This includes redaction of the exempt material and

notation of the applicable exemption(s) in the margins of each page and/or preparation of deleted page

information sheets when pages are withheld in their entireties.  During the course of their review, the

Disclosure Units consult with other government agencies for their determination as to the releasability of

their information contained within FBI records, or refer non-FBI documents to those originating

4

agencies for processing and direct response.  The Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, no releasable material has been withheld, no material meriting protection has been released, all necessary classification reviews have been completed, and other government agency information and/or entire documents originating with other government agencies have been properly handled.

(10)    The Classification and Disclosure Units will expedite the processing of the Laboratory file with the goal of ensuring that a release of the responsive records from that file will be made to the plaintiff before May 31, 2006.  In addition, the two responsive records identified by the computer search for cross-references, consisting of approximately 7 pages, will be provided to the plaintiff at that time.

## CONCLUSION

(11)    The FBI anticipates releasing to the plaintiff all responsive, non-exempt records located at FBIHQ prior to May 31, 2006.  Once the remaining responsive documents are received from Legat Riyadh, the FBI will provide the Court with a declaration indicating how long it will take to complete the classification review, process and release non-exempt responsive records to the plaintiff.

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

true and correct.

Executed this _____ day of May, 2006.


_____
DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

6

**3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELISABETH T. KIDDER                          )
                                             )
        Plaintiff,                           )
                                             )
                v.                           )        Civil. Action No. 05-CV-01094
                                             )
FEDERAL BUREAU OF INVESTIGATION              )
        et al.,                              )
                                             )
        Defendants.                          )
                                             )

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters

("FBIHQ") in Washington, D.C.  I have held this position since August 1, 2002.  Prior to my joining the

FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law.  In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy,

procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I served as

a Navy Judge Advocate at various commands and routinely worked with FOIA matters.  I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 240

employees who staff a total of ten (10) units and a field operational service unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General and FBI policies and procedures; judicial decisions and other

Presidential and Congressional directives. My responsibilities also include the review of FBI

information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the

preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I

have been designated by the Attorney General of the United States as an original classification authority

and a declassification authority pursuant to Executive Order 12958, as amended, §§1.3 and 3.1. The

statements contained in this declaration are based upon my personal knowledge, upon information

provided to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the

FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specially, I am aware of the treatment

which has been afforded the FOIA request of Elisabeth T. Kidder for information pertaining to Ahmed

Abu Ali.

(4)     The purpose of this declaration is to provide information in support of the status report

that defendants are required to file by June 15, 2006.

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

2

### DOCUMENTS RELATED TO AHMED ABU ALI AND RELEASES TO DATE

(5)    The Second Declaration of David Hardy (See ¶ 7) identified three separate sets of records relating to Ahmed Abu Ali that are responsive to plaintiff's FOIA request. The three separate sets of records consisted of two cross reference documents, a Laboratory file, and a multi-volume file maintained by Legat Riyadh.

(6)    By letter dated May 26, 2006, the FBI released 25 pages of responsive records to plaintiff, consisting of the two cross reference documents and the public source documents contained within the Laboratory file. All of the remaining records from the Laboratory file were withheld pursuant to FOIA Exemption (b)(7)(A).[3] (See Exhibit A.) In addition, all or parts of the remaining records from the Laboratory file were also withheld pursuant to FOIA exemptions (b)(1), (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E). (See Exhibit A.)

(7)    On May 12, 2006, FBIHQ received the multi-volume file from Legat Riyadh. In an effort to provide plaintiff with releasable records from the file as soon as possible, the file was preliminarily reviewed in order to identify any public source documents contained in it. In light of the applicability of Exemption (b)(7)(A) to the non-public source records in the Laboratory file, the Legat Riyadh file was also reviewed to ascertain whether the remaining documents in the file were exempt from disclosure pursuant to FOIA Exemption (b)(7)(A). Eight pages of public source documents contained within the Legat Riyadh file were released to plaintiff by letter dated June 12, 2006. (See Exhibit B.) As explained below, the remainder of the records in the Legat Riyadh file are exempt from

---

[3] References to FOIA Exemptions reflect the parallel subsection of 5 U.S.C. § 552 setting forth those exemptions. See 5 U.S.C. § 552 (b).

disclosure pursuant to FOIA Exemption (b)(7)(A). Other FOIA exemptions also likely apply to these records.

### EXPLANATION OF THE PROCESS
### OF REVIEWING PENDING MATERIAL

#### Exemption 7 (A)

(8)    Title 5 U.S.C. § 552 (b)(7)(A), exempts from disclosure:

> "Records or information compiled for law enforcement purposes, but only to the extent
> that the production of such law enforcement records or information could reasonably be
> expected to interfere with enforcement proceedings."

(9)    Application of this exemption requires the existence of law enforcement records; a

pending or prospective law enforcement proceeding; and a reasonable expectation that release of the

information would interfere with the law enforcement proceeding. The remaining records responsive to

the plaintiff's request are exempt from disclosure pursuant to Exemption (b)(7)(A) because they are law

enforcement records. They were created to support a criminal/intelligence investigation that is still

pending; and release of the remaining records would interfere with a law enforcement proceeding.

(10)    Invocation of exemption (b)(7)(A) in litigation involves a three-part process requiring

the government to review each document withheld on a document by document basis; to group the

documents into functional categories and describe the categories; and to explain why release of each

category would interfere with law enforcement proceedings. To support a motion for summary

judgment based on Exemption (b)(7)(A), the FBI will provide an appropriate declaration concerning

the applicability of the Exemption to the records at issue in this case (all of the records withheld from

both the Laboratory file and the Legat Riyadh file). The FBI can provide an appropriate declaration in

4

support of Exemption (b)(7)(A) by July 21, 2006. Although preparation of a declaration in support of Exemption (b)(7)(A) is a time-consuming process, it is not nearly as time-consuming as preparation of the detailed <u>Vaughn</u> index required to support invocation of many of the other FOIA exemptions.

### Other Exemptions

(11)   As just noted, preparation of a <u>Vaughn</u> index supporting the invocation of most FOIA exemptions is a labor-intensive and time-consuming task, particularly when a large volume of records is involved. A detailed description of the process required for preparation of such a <u>Vaughn</u> index is provided in the paragraphs below.

(12)   Processing of responsive records involves the Classification Units, FOIA Units and the Litigation Support Unit.

(13)   RIDS consists of three Classification Units ("CUs") that are responsible for complying with the classification and declassification review of FBI records under Executive Order 12958, as amended. The CU's review documents responsive to FOIA/Privacy Act requests, criminal and civil discovery requests, Congressional and Presidential mandates, Presidential Library requests, mandatory declassification requests, Office of Inspector General Reports, and other federal agency requests in order to determine whether such material should remain classified or be declassified. In addition, CUs review and prepare classified material for review by the Department of Justice Review Committee ("DRC").[4]

---

[4] The DRC is the FBI's appellate authority with regard to the implementation and administration of Executive Order 12958, as amended, and related directives and guidelines concerning classified information. <u>See</u> 28 C.F.R. § 17.14.

5

(14)    The first step in processing responsive records for preparation of a <u>Vaughn</u> index

consists of the classification and declassification review described above.  It is expected that the

classification and declassification review of the multi-volume Legat Riyadh file identified as responsive

to the plaintiff's request would take approximately one month.[5]

(15)    RIDS/FOIA Units ("Disclosure Units") begin processing the records once the

classification review is completed.  "Processing" involves a page-by-page, line-by-line review of the

responsive documents to determine which, if any, FOIA and/or Privacy Act exemptions may apply.

This includes redaction of the exempt material and notation of the applicable exemption(s) in the

margins of each page and/or preparation of deleted page information sheets when pages are withheld in

their entirety.  During the course of their review, the Disclosure Units consult with other government

agencies for their determination as to the releasability of their information contained within FBI records,

or refer non-FBI records to those originating agencies for processing and direct response.  The

Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, no

releasable material has been withheld, no material meriting protection has been released, all necessary

classification reviews have been completed, and other government agency information and/or entire

documents originating with other government agencies have been properly handled.  The FBI

anticipates that the processing of the multi-volume Legat Riyadh file by the Disclosure Units will take

---

[5] The Laboratory file responsive to plaintiff's request has already undergone classification and
declassification review, as well as the processing by the Disclosure Units described in the next
paragraph of this declaration.  At that juncture, it was determined that the non-public source records in
the file were exempt pursuant to Exemption 7(A), and that preparation of a detailed <u>Vaughn</u> index with
respect to the other exemptions applicable to those records might not be necessary.

approximately one month (after completion of the classification and declassification review).

(16)   The Litigation Support Unit ("LSU") is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel and the Chief Division Counsels and Assistant Division Counsels in the FBI's field offices in all FOIA/Privacy Act requests that result in federal litigation. The LSU is responsible, in the first instance, for preparation of the Vaughn index declaration. In preparing such a declaration, the LSU reviews the processed records and justifies the deletions of all processed material. LSU justifies the deletions of all processed material by conducting a second review of the records to ensure that all releasable information is provided to the plaintiff. In addition, the LSU evaluates all FOIA exemptions cited on each document for accuracy and consistency. Once this process is complete, LSU inserts within the declaration, a detailed explanation for all exemptions cited and the purpose of the exemption. The deletion justifications include a detailed description of the actual document, why it was withheld, and how disclosure would be inappropriate. Codes are then assigned which describe the exact nature of the deletions. These codes are applied immediately adjacent to the redacted material on the actual document. The text of the Vaughn index is then drafted, which describes the FBI's Central Records System, and the handling of plaintiff's request, explains the codes and the exemptions utilized, and provides a detailed justification for the withholdings and redactions. Copies of the pertinent communications (i.e., FOIA requests and responses) and redacted documents are than prepared. The Vaughn declaration is then reviewed for accuracy of content and for typographical, spelling, grammatical or other errors. Once the declarant has reviewed and signed the document, the declaration and exhibits are scanned onto a CD-Rom in a portable document format (PDF) and electronically sent to the trial attorney's office for court filing. The FBI

7

currently anticipates that the LSU processing and completion of a <u>Vaughn</u> index with respect to the Laboratory and Legat Riyadh files will take approximately ninety days to complete, once the Disclosure Units complete the processing of the records.

(17)    In conclusion, the FBI anticipates that the further processing of the responsive records withheld to date pursuant to Exemption (b)(7)(A) and the preparation of a detailed <u>Vaughn</u> index describing in detail the additional FOIA exemptions applicable to those records would take a total of approximately 150 days.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___14th___ day of June, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELISABETH T. KIDDER                    )
                                       )
            Plaintiff,                 )
                                       )
        v.                             )          Civil. Action No. 05-CV-01094
                                       )
FEDERAL BUREAU OF INVESTIGATION        )
    et al.,                            )
                                       )
            Defendants.                )
                                       )

# EXHIBIT A



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

May 26, 2006

MS. ELISABETH KIDDER
2655D BARRACKS ROAD
CHARLOTTESVILLE, VA 22901

Request No.: 1015542-001
Subject: ALI, AHMED ABU

Dear Ms. Kidder:

Pursuant to your Freedom of Information Act (FOIA) request, enclosed are the public source documents and two cross references.

The remainder of the records reviewed are exempt from disclosure pursuant to Title 5, United States Code, Section 552 (b)(7)(A).

In addition to Title 5, United States Code, Section 552 (b)(7)(A), the records are also exempt pursuant to Title 5, United States Code, Section 552 exemptions (b)(1), (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E).

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

Enclosures (3)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELISABETH T. KIDDER                          )
                                             )
            Plaintiff,                       )
                                             )
                v.                           )        Civil. Action No. 05-CV-01094
                                             )
FEDERAL BUREAU OF INVESTIGATION              )
      et al.,                                )
                                             )
            Defendants.                      )
                                             )

# EXHIBIT B



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

June 12, 2006

Ms. Elisabeth Kidder
2655 D Barracks Road
Charlottesville, VA 22901

Request No: 1015542-002
Subject: Ali, Ahmed Abu

Dear Ms. Kidder:

Pursuant to your Freedom of Information Act (FOIA) request, enclosed are eight pages of public source documents from the FBI Legat Riyadh file on Ahmed Abu Ali. Redactions were made on certain extraneous information on two pages to protect information which is exempt from disclosure pursuant to Title 5, United States Code, Section 552 exemptions (b)(1), (b)(6) and (b)(7)(C).

In an effort to provide releaseable records as soon as possible, this file was preliminarily reviewed to identify public source documents. This preliminary review indicates that the remainder of the documents are exempt from disclosure pursuant to Title 5, United States Code, Section 552 (b)(7)(A). Preliminary review also indicates that other FOIA exemptions likely apply. These exemptions cannot be definitively stated prior to a page-by-page, line-by-line review.

Sincerely yours,

*David M. Hardy/spt*

David M. Hardy
Section Chief
Records/Information
    Dissemination Section
Records Management Division

Enclosures (2)

**4**



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

August 10, 2006

MS. ELISABETH KIDDER
APARTMENT C
2587 HYDRAULIC ROAD
CHARLOTTESVILLE, VA 22901

Request No.: 1015542- 002
Subject: ALI, AHMED ABU

Dear Ms. Kidder:

    Enclosed are two additional pages of public source documents that
were inadvertently omitted from our release dated June 12, 2006.
Although the header on the attached document suggests that it consists
of three pages, only two pages were located in the file.

    We are sorry for any inconvenience this may have caused you.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

ALL INFORMATION
CONTAINED\nHEREIN IS
UNCLASSIFIED\nDATE 07-17-2006



**MEMBER SERVICES**    MAKE CNN.com

**SEARCH**    ○ The Web  ○ CNN.com    Powered by

- Home Page
- World
- **U.S.**
- Weather
- Business
- Sports
- Politics
- Law
- Technology
- Science & Space
- Health
- Entertainment
- Travel
- Education
- Special Reports



**Learning feels good.**

**Click here for special offers.**

**SERVICES**
- Video
- **E-mail Newsletters**
- **Your E-mail Alerts**
- RSS
- CNNtoGO
- TV Commercials
- Contact Us
- SEARCH

Web ○ CNN.com ○

Powered by
**YAHOO!** search

# U.S.

## Saudi Arabia handing over U.S. citizen

**Man held for 20 months expected to face charges**

Monday, February 21, 2005 Posted: 8:48 PM EST (0148 GMT)

**WASHINGTON (CNN) — An American detained in Saudi Arabia for 20 months without being charged is being sent back to the United States where he is expected to be charged Tuesday, his father and a family friend told CNN.**

Two U.S. government sources indicated they were aware of the move but refused to provide any details.

The FBI and Justice Department refused comment.

The case of Ahmed Abu Ali, 23, generated controversy after his family sued the U.S. government last year charging that American authorities had asked for his arrest in June 2003. U.S. officials have denied that assertion.

The transfer of custody follows a recent demand by the U.S. government to the Saudis to either charge Abu Ali or release him to American custody.

Abu Ali's family said it has been told he will face unspecified charges in federal court. He is expected to make an appearance in U.S. District Court sometime Tuesday.

His father Omar Abu Ali, said he got a call from the FBI telling him his son was coming back from Saudi Arabia Monday night.

"I feel that the truth will come soon," he told CNN. "He will be a free man soon."

advertiser links — what's this?

**Compare Mortgage Offers**
Up to four free mortgage, refinance or home equity offers - one easy form.
www.nextag.com

**MyCashNow - $100 - $1,000 Overnight**
Payday Loan Cash goes in your account overnight. Very low fees. Fast decisions...
www.mycashnow.com

**Mortgage Rates Hit Record Lows**
Get $150,000 loan for $690 per month. Refinance while rates are low.
www.lowermybills.com

**LendingTree.com - Official Site**
LendingTree - Find a mortgage, refinance, home equity or auto loan now. Receive...
www.lendingtree.com

**RELATED**
- Judge weighs classified motion
- District Court: Dec. ruling

**YOUR E-MAIL ALERTS**

○ United States

○ Saudi Arabia

○ Crime, Law and Justice

Activate | or **CREATE YOUR OWN**

Manage alerts | What is this?

Case 1:05-cv-01094-RBW    Document 25-3    Filed 08/11/2006    Page 34 of 39



He said his son's return to the United
States shows this was never a Saudi case.

The father said his son is not guilty of any crimes. Regarding the unspecified charge
expected to be filed in the United States, the father said, "They are lying. He is
innocent."

Abu Ali was arrested after the May 2003 bombings in Riyadh, Saudi Arabia, which
killed 23 people, including nine Americans. (Full story)

Sources familiar with the case have said Abu Ali is suspected of having connections
to individuals involved in that bombing. A federal grand jury has been hearing
evidence regarding the case.

Federal prosecutors have previously alleged Abu Ali had a relationship with some
members of what has been called the "Virginia jihad network," whose members were
charged with providing material support to a terrorist organization.

A federal judge last December ruled the family's lawsuit could proceed despite strong
objections from the U.S. government. The Justice Department this month filed a
motion asking the judge overseeing the case to dismiss the family's lawsuit.

With that motion the Justice Department filed a secret document explaining its legal
reasoning and citing classified evidence. The family's lawyer criticized that effort,
saying it was unfair because he could not respond to the secret evidence, meaning
the judge considering the motion would hear from only one side.

*CNN's Kelli Arena, Carol Cratty and Terry Frieden contributed to this story.*

**Story Tools**                                          advertisement

📧 SAVE THIS   📧 E-MAIL THIS          Click Here to try 4 Free
🖨 PRINT THIS  ☆ MOST POPULAR          Trial Issues of Time!



**U.S.**                    US NEWS ↑      **TOP STORIES**          CNN.com HOME PAGE ↑

Dogs join hunt for Amber                    N. Korea offers conditional
Alert mom                                   return to nuclear talks

                         

• Saudis handing over detained American    • At least 80 dead, 300 hurt in Iran quake
• Storms and mudslides batter California    • Bush and Chirac find common ground
• 'Minutemen' plan to patrol border         • Saudis handing over American detained
                                              for 20 months

**International Edition** | Languages ▾ | **CNN TV  CNN International**  **Headline News  Transcripts  Advertise Wi**

SEARCH   The Web ⊙  CNN.com ○  [                    ]              Powered by

© 2005 Cable News Network LP, LLLP.
A Time Warner Company. All Rights Reserved.
Terms under which this service is provided to you.
Read our privacy guidelines. Contact us.

📧+    All external sites will open
      CNN.com does not endorse
⚙     Denotes premium content.
      Add RSS headlines.

**5**

Honorable Tom Davis
Member of Congress
Suite 103
4115 Annandale Road
Annandale, VA 22003

JUL 29 2004

Dear Congressman Davis:

I am writing in response to your June 3, 2004, inquiry to the FBI, on behalf of      b6 -3
your constituents [          ] who are concerned about [          ] Ahmed Abu Ali,      b7C -3
who has been detained in Saudi Arabia since June 11, 2003. Your letter was referred to my
office for response since their concerns fall within the purview of the FBI's Counterterrorism
Division.

As reflected in their correspondence, your constituents have been in contact with
representatives from the State Department as well as the FBI concerning their son's detention. In
their letter, they reference an e-mail from a high-ranking FBI official in Washington which
reportedly stated that "this office has no further interest" in their son's detention. In addition,
they state that the FBI informed their lawyer that there are no charges against their son nor any
intentions to bring charges in the future. Please note, the attachments referenced in your
constituents' letter were not received by the FBI.

It is a longstanding policy of the Department of Justice and the FBI not to
comment on pending cases. This policy, which has existed for a number of years to protect the
rights of all parties involved in an investigation, limits my ability to respond to the concerns
raised by your constituents. However, I have been advised by our Washington Field Office that
the communications referenced in your constituents' letter were limited to responding to specific
questions concerning the FBI's interest in the continued detention of their son by the Kingdom of
Saudi Arabia. I've been advised that our office has not discussed pending investigations or plans
for future investigations with your constituents or their representatives.

I regret that I am unable to be more responsive to your inquiry at this time.

Sincerely yours,

Gary M. Bald
Assistant Director
Counterterrorism Division

MAILED 39
AUG 2 2004
FBI

1 - ADIC, Washington Field Office
1 - Mr. Bald, Rm. 5012
1 - Mr. Harrington, Rm. 4330
1 - [          ] Rm. 4981        b6 — 1
1 - FBI, ES, Rm. 6236 (DO/2711) - Att        b7C — 1
1 - CAO, Rm. 7240 - Enc. - att
66F-HQ-A1413614-G - 256
62F-HQ-1077229

ABT

Dep. Dir.
Chief of Staff
Off. of Gen.
Counsel
Asst. Dir.:
Admin. Serv.
Crisis.oveness
Crim. Inv.
CJIS
Finance
Info. Res.
Insp.
Inv. Serv.
Lab.
National Sec.
OPR
Off. of Public
& Cong. Affrs.
Training
Off. of EEOA
Director's Office

APPROVED:

Director _____
Dep. Director _____

Admin. Serv. _____
Crim. Inv. _____
CJIS _____
Counterterror _____
Finance _____
MAIL ROOM _____

Info. Res. _____
Inspection _____
Inv. Serv. _____
Laboratory _____
National Sec. _____

Training _____
OGC _____
OPR _____
OPCA _____
OEEO _____

KIDDER-1

Jun 03 04 05:00p    U.S. House of Representat    703 437-3004    p.1

TOM DAVIS
11TH DISTRICT, VIRGINIA

COMMITTEE ON GOVERNMENT REFORM
Chairman
COMMITTEE ON ENERGY AND COMMERCE
ON LEAVE

# Congress of the United States
## House of Representatives
### Washington, DC 20515–4611

2349 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-1492

DISTRICT OFFICES:
4115 Annandale Road
Suite 103
Annandale, VA 22003
(703) 916-9610

13546 Minnieville Road
Woodbridge, VA 22192
(703) 590-4599

www.house.gov/tomdavis

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: FBI - Congressional | FROM: |
| COMPANY: Office of Rep. Tom Davis | DATE: 6 3 04 |
| FAX NUMBER: 202 | TOTAL NO. OF PAGES INCLUDING COVER: 6 |
| PHONE NUMBER: 703-437-1726 | SENDER'S REFERENCE NUMBER: |
| RE: | YOUR REFERENCE NUMBER: |

b2

b6-2
b7C-2

☒ URGENT    ☒ FOR REVIEW    ☐ PLEASE COMMENT    ☒ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

PRINTED ON RECYCLED PAPER

62F-HQ-1077229-17720

Jun 03 04 05:01p    U.S. House of Representat    703-437-3004    p.2

TOM DAVIS
11TH DISTRICT, VIRGINIA

COMMITTEE ON GOVERNMENT REFORM
Chairman

COMMITTEE ON ENERGY AND COMMERCE
VICE CHAIRMAN

2348 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-1492

DISTRICT OFFICES:
6715 ANNANDALE ROAD
SUITE 103
ANNANDALE, VA 22003
(703) 916-6816

13546 MINNIEVILLE ROAD
WOODBRIDGE, VA 22192
(703) 690-4539

www.house.gov/tomdavis

# Congress of the United States
## House of Representatives
### Washington, DC 20515-4611

June 3, 2004

Ms. Eleni Kalisch
Assistant Director of Congressional Affairs
Federal Bureau of Investigation
9356 Penn Avenue, NW
Room 7240
Washington, D.C. 20535

Dear Ms. Kalisch:

I write today to call your attention to the concerns of my constituents ▮▮▮▮▮▮▮▮

Attached you will find a copy of a letter provided to me by ▮▮▮▮▮▮▮▮ regarding ▮▮▮▮▮▮ Ahmed Abu Ali. Ahmed, a United States citizen, has been detained by the Saudi Government since June 11, 2003. ▮▮▮▮▮▮▮▮ concerned about his safe release and return to the United States.

I respectfully request that you review their concerns and provide to me any information available in this matter. Specifically ▮▮▮▮▮▮▮▮ wants to learn the length of time before the Federal Bureau of Investigation notifies the State Department if there is no interest in Mr. Abu Ali's continued detention in Saudia Arabia. ▮▮▮▮▮▮▮▮ senior members of my staff today to express their concerns that Ahmed's rights as a United States citizen be protected.

**b6-3**

**b7C-3**

Please direct your response to ▮▮▮▮▮▮ in my Annandale office at 703-437-1726. — **b6-2**
Thank you for your immediate attention to this important request.    **b7C-2**

Sincerely,

Tom Davis
Member of Congress

TMD: ar

PRINTED ON RECYCLED PAPER

KIDDER-3



## Virginia Man Held In Saudi Jail Seeks U.S. Aid



The Washington Post
By Henri E. Cauvin
August 18, 2004

WASHINGTON, DC -- A federal judge said yesterday that he will rule within days on a court action seeking the release of a Falls Church man whose family says he is being improperly detained in Saudi Arabia at the behest of U.S. authorities.

The Saudis have not filed criminal charges against Ahmed Abu Ali, a 23-year-old U.S. citizen who has been in custody since June 2003. But the U.S. government said in court papers that the kingdom indicated that it plans to charge him with providing support for terrorism. Abu Ali, who was studying in Saudi Arabia, was among at least four people arrested last year in a crackdown on a Pakistani organization trying to drive Indian forces out of the disputed Kashmir region. But unlike the other three, who were extradited to the United States and charged, Abu Ali has remained in Saudi Arabia. Members of Abu Ali's family turned last month to the U.S. courts for help in winning his release. They contend that the United States, not Saudi Arabia, is behind his detention and that he has been denied due process.

The prospect of criminal charges has added new urgency to their effort and led them to seek an emergency order from the U.S. District Court for the District of Columbia. At a hearing yesterday before Judge John D. Bates, Abu Ali's attorney, Morton Sklar, said the charges are a coordinated effort to ensure that Abu Ali remains out of the reach of U.S. courts -- a contention that the **Justice Department** rejected yesterday. Even if no charges are filed by Saudi Arabia, the authority of a U.S. court over a prisoner in another country is a matter of much legal debate, lawyers said yesterday. The Supreme Court ruled this year that the detainees held in Guantanamo Bay, Cuba, have a right to contest their incarcerations in U.S. courts. But no one disputes that the Guantanamo detainees are in the custody of U.S. forces.

By contrast, Abu Ali is being held by the Saudis. But Sklar, executive director of the World Organization for Human Rights, said Abu Ali is effectively in the custody of the United States. While he acknowledged that the court could not order Saudi Arabia to do anything, Sklar said the judge could order the United States to ask Saudi Arabia not to charge Abu Ali and to return him. Ori Lev, a lawyer for the U.S. government, attacked Sklar's arguments. Abu Ali is most certainly in the custody of Saudi Arabia, and therefore a U.S. court has no authority in the matter, he said. "The United States does not control Saudi Arabia," Lev said.

5/22/2006    65179 DMH/
CLASSIFIED BY: _H K9 kH_
REASON: _1.4 ( c )_
DECLASSIFY ON: _5/22/2031_
C/A # 05-CV-1094



KIDDER-4



b1
(S)

> b6-1
b7C-1