Case 1:05-cv-01094 (RBW)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Elisabeth Kidder
2587 Hydraulic Road Apt C
Charlottesville, Va 22901
(434) 409-0131

CIVIL ACTION NO. 1:05-cv-1094 (RBW)

Federal Bureau of Investigation
9th And Pennsylvania Avenue, N.W.
Washington, D.C. 20535

Department of Justice
950 Pennsylvania Avenue, N.W.
Washington Dc 20530

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Elisabeth Kidder, *pro se* plaintiff ("Plaintiff"), brings this action under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, against the Federal

Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ"

collectively, "Defendants") to compel the release of information that the FBI has refused

to disclose regarding Ahmed Abu Ali, an American citizen held for more than twenty

months in a prison in Saudi Arabia, allegedly at the behest of the United States

government.

Plaintiff submits this Memorandum and accompanying Statement of Genuine

Issues in opposition to Defendants' Motion for Summary Judgment. The FBI claims it is

entitled to judgment as a matter of law because, they argue, the records the Plaintiff seeks

Case 1:05-cv-01094 (RBW)

fall within Exemption 7(A) of the FOIA which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A), however, has no application because: 1) the records at issue were not compiled for law enforcement purposes; 2) many of the records are already in the public domain; and 3) the FBI has failed to show how their categorical withholding is limited to the extent that production could reasonably be expected to interfere with enforcement proceedings. As demonstrated below, the FBI has not conducted a search reasonably calculated to uncover all relevant documents, and the FBI has unlawfully withheld information to which the plaintiff is entitled. For these reasons, Defendants Motion for Summary Judgment should be denied, and Plaintiff is entitled to judgment as a matter of law.

## BACKGROUND

Plaintiff, deeply disturbed by media coverage of Ahmed Abu Ali's lengthy detention in Saudi Arabia and the alleged complicity of the United States government in the overseas imprisonment and torture of this American citizen, filed a request for records with the FBI using the "FOIA Request Form" on the FBI's website. See Ex. E to Pl.'s Opp. to Defs. Mot. for Summ. J. at 1. On January 8, 2005, Plaintiff's mailed her request for "all records concerning Ahmed Abu Ali, the Falls Church Virginia resident currently detained in Saudi Arabia. This request includes, but is not limited to: minutes of meetings, notes, correspondence, submissions, reports, memoranda, electronic mail, and

staff calendars and appointment books" to the FOIPA Section of the FBI. Ex. A to Pl.'s

Mot. For Summ. J., at 1.

On January 25, 2006, the FBI responded, denying Plaintiff's request and citing

exemptions "(b)(6) and/or (b)(7)(C) of the FOIA." Ex. B to Pl.'s Mot. For Summ. J., at 1.

On February 2, 2005, Plaintiff mailed a letter to the Co-director of the Department

of Justice's Office of Information Privacy, appealing her denial, explaining why

exemptions (b)(6) and (b)(7)(C) were no applicable to the requested records, and

requesting an expedited appeal. Ex. C to Pl.'s Mot. For Summ. J. at 1-4. Defendants have

subsequently admitted that these FOIA exemptions are inapplicable to the records at

issue. See First Hardy Decl., ¶15.

On February 18, 2005, Richard L. Huff, Co-Director of the Office of Information

Privacy, mailed a letter to Plaintiff informing her that her appeal had been numbered and

denying her request for expedited processing. Letter from Huff to Kidder of 2/18/05 (Ex.

D to Pl.'s Mot. for Summ. J., at 1-2). After waiting for a response from the FBI for nearly

four months, on June 2, 2005, Plaintiff filed this action to enforce her rights under the

FOIA. See Docket No. 1.

After an eight-month delay, the Defendants filed their Answer on February 13,

2006, alleging that Plaintiff had not exhausted her administrative remedies and that the

FBI was not an 'agency' under the FOIA. Docket No. 7.  Plaintiff subsequently filed a

Motion for Summary Judgment on March 10, 2006, asking the Court to order Defendants

to conduct a good faith search and to turn over to Plaintiff all responsive documents.

Docket No. 12. Defendants filed their Memorandum in Opposition on March 29, 2006.

Docket No. 16. Plaintiff filed her reply on April 7, 2006. Docket No. 19.

Case 1:05-cv-01094 (RBW)

On April 6, 2006, the Court filed an order setting a schedule for the government to file its motion for summary judgment. Docket No. 18. The government requested an extension on May 10, 2006. Docket No. 20 This request was granted by the Court on May 30, 2006. Docket No. 21. On July 6, 2006 the Court granted Defendant's request, over Plaintiff's objection, to file for summary judgment solely on the issue of Exemption 7(A). Docket No. 24. Defendants filed their Motion for Summary Judgment on August 11, 2006. Docket No. 25.

## ARGUMENT

## I. FOIA and summary judgment standards of review

The Supreme Court explained in Department of the Air Force  v. Rose, that the purpose of the Freedom of Information Act is "to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny." 425 U.S. 352, 361 (1976) (citation omitted). The FOIA statute reflects, "'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" Id. at 360-61 (quoting S. Rep. No. 813, 3, 89th Cong., 1st Sess. (1965)). While Congress has enumerated exemptions from the disclosure requirement, "these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Id. at 361. The FOIA exemptions are to be "narrowly construed," id. at 361, because FOIA mandates a "strong presumption in favor of disclosure." United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991).

In ruling on a motion for summary judgment by the government, the court must be, "mindful that the 'burden is on the agency' to show that requested material falls within a FOIA exemption." Petroleum Info. Corp. v. United States Dep't of the Interior, 298

Case 1:05-cv-01094 (RBW)

U.S. App. D.C. 125, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citations omitted). The court

must draw all justifiable inferences in the requestor's favor and accept the requestor's

evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

   To prevail on a motion for summary judgment in the FOIA context, an agency

must show "that it made a good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested."

Oglesby v. United States Dep't of the Army, 287 U.S. App. D.C. 126, 920 F.2d 57, 68

(D.C. Cir. 1990). The inquiry into "[t]he competence of any records-search is a matter

dependent upon the circumstances of the case." Founding Church of Scientology of

Wash., D. C., Inc. v. Nat'l Sec. Agency, 197 U.S. App. D.C. 305, 610 F.2d 824, 834

(D.C. Cir. 1979). The agency must provide a "reasonably detailed affidavit, setting forth

the search terms and type of search performed, and averring that all files likely to contain

responsive materials…were searched."  Friends of Blackwater v. United States DOI,  391

F. Supp. 2d 115, 119 (D.D.C. 2005) (citing Oglesby, 920 F.2d at 68). In addition, the

agency "must prove that each document that falls within the class requested either has

been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection

requirements." Perry v. Block, 221 U.S. App. D.C. 347, 684 F.2d 121, 126 (D.C. Cir.

1982) (internal citation omitted).

   The Court may not award summary judgment based upon the information

provided in an agency's affidavit when it is "controverted by either contrary evidence in

the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 211

U.S. App. D.C. 135, 656 F.2d 724, 738 (D.C. Cir. 1981). Defendants cite Hemenway v.

Hughes, 601 F. Supp. 1002 (D.D.C. 1985), for the proposition that "summary judgment

Case 1:05-cv-01094 (RBW)

hinges not on the existence of genuine issues of material fact but rather on the sufficiency

of agency affidavits." Defs. Statement of Points and Authorities in Support of Defs. Mot.

for Summ. J. ("Defs. Statement") at 6. This case is not persuasive. To the contrary, as the

D.C. Circuit explained four years later, "if material facts are genuinely in issue or, though

undisputed, are susceptible to divergent inferences bearing upon an issue critical to

disposition of the case, summary judgment is not available." Alyeska Pipeline Service

Co. v. United States EPA, 272 U.S. App. D.C. 355, 856 F.2d 309, 314 (D.C. Cir. 1988).

See also Washington Post Co. v. United States Dep't of State, 268 U.S. App. D.C. 146,

840 F.2d 26 (D.C. Cir. 1988), vacated on other grounds by 283 U.S. App. D.C. 196, 898

F.2d 793 (D.C. Cir. 1990) (noting that an agency cannot prevail upon motion for

summary judgment, "merely by filing an affidavit purporting to support a motion for such

a judgment. Rather, 'the requester may…produce countervailing evidence,' and if any

genuine issue of material fact remains, summary judgment is improper.") (internal

citation omitted).

## II. The FBI is an "agency" for FOIA purposes and is therefore a proper defendant

The Defendants argue that because the FBI is a component of the DOJ, it is not an

"agency" for the purposes of the FOIA, and should be dismissed as a defendant in this

action. Defs. Statement at 7.  In defense of this sweeping assertion, they cite two

unpersuasive cases. The first, Judicial Watch, Inc. v. FBI, 190 F. Supp. 2d 29 (D.D.C.

2002), was decided based upon the plaintiff's failure to exhaust administrative remedies,

and the second is an outlier district court case from New York. Pray v. FBI, No. 95-380,

1995 WL 764149 (S.D.N.Y. Dec. 28, 1995).

Case 1:05-cv-01094 (RBW)

The Defendants' argument is directly contradicted by the definition of an agency Administrative Procedures Act's ("APA"): "[A]gency means *each* authority of the Government of the United States, *whether or not* it is within or subject to review by another agency." 5 U.S.C. § 551(1) (2006) (emphasis added). In 1974, the FOIA, which incorporates the APA definition, was amended to clarify and broaden the meaning of agency to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). Congress' purpose in amending the definition was to expand the FOIA's coverage. See Energy Research Foundation v. Defense Nuclear Facilities Safety Bd., 286 U.S. App. D.C. 359, 917 F.2d 581, 583 (D.C. Cir. 1990) ("Through these words, Congress sought to encompass entities that might have eluded the APA's definition in § 551(1), which FOIA had incorporated by reference.") (citing H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974); H.R. Rep. No. 876, 93d Cong., 2d Sess. 8 (1974); S. Rep. No. 854, 93d Cong., 2d Sess. 33 (1974)); see also Cotton v. Heyman, 314 U.S. App. D.C. 161, 63 F.3d 1115, 1121 (D.C. Cir. 1995).

In determining whether a particular government authority qualifies as an agency for FOIA purposes, this circuit employs "a fact-specific functional approach." Cotton, 63 F.3d at 1121. This circuit has found that "an entity in the federal government which 'investigates, evaluates and recommends' is an 'agency'" for purposes of the Freedom of Information Act. Energy Research Foundation, 917 F.2d at 585 (citing Soucie v. David, 145 U.S. App. D.C. 144, 448 F.2d 1067, 1073 (D.C. Cir. 1971)). The D.C. Circuit also

Case 1:05-cv-01094 (RBW)

reached this conclusion where a federal entity had "substantial independent authority in the exercise of specific functions." Soucie, 448 F.2d at 1073.

The FBI is clearly an agency under this rubric. Its core mission includes developing its own law enforcement priorities, conducting investigations, enforcing the law, and providing leadership to other law enforcement organizations. FBI, Facts and Figures, available at http://www.fbi.gov/priorities/priorities.htm (last accessed Sept. 26, 2006) ("The FBI's investigative authority can be found in Title 28, Section 533 of the US Code. Additionally, there are other statutes, such as the Congressional Assassination, Kidnapping, and Assault Act (Title 18, US Code, Section 351), which give the FBI responsibility to investigate specific crimes.").

This circuit has consistently treated the FBI as an agency for FOIA purposes. See, e.g., McGehee v. CIA, 225 U.S. App. D.C. 205, 697 F.2d 1095, 1108 (D.C. Cir. 1983) ("[T]he organs of government that first compiled the records -- the State Department and FBI -- clearly are covered by the Act."); Peralta v. United States Attys. Office, 66 F. Supp 2d 21, 26 (D.D.C. 1999) (on remand) ("As the Court of Appeals noted, 'the FOIA itself appears to contemplate that the FBI is subject to its provisions…and [the] FBI 'has litigated numerous FOIA cases in its own name before the Supreme Court, this court, and other circuit courts.'") (internal citations omitted).

Finally, the Defendants' argument is directly contradicted by this Court's recent decision in Prison Legal News v. Lappin, holding that the Bureau of Prisons ("BOP"), "despite its status as a component agency of the DOJ, is a proper defendant in this FOIA action." 436 F. Supp. 2d 17, 22 (D.D.C. 2006). The FBI has substantial independent authority equal to or greater than that of the BOP; it too is a proper FOIA defendant.

Case 1:05-cv-01094 (RBW)

**III. The FBI has not conducted an adequate search for responsive records because the method and scope of the FBI's search were not reasonably calculated to uncover all relevant documents**

In order to be entitled to summary judgment in a Freedom of Information Act case, the government must prove as a threshold matter that it has conducted a reasonable search. Kowalczyk v. Dep't of Justice, 315 U.S. App. D.C. 286, 73 F.3d 386, 388 (D.C. Cir. 1996); Judicial Watch, Inc. v. United States DOC, 34 F. Supp. 2d 28, 46 (D.D.C. 1998) ("The FOIA confers upon each requester a right to a reasonable search, and when an agency search is demonstrated to be unreasonable, the FOIA plaintiff is entitled to judgment as a matter of law and a new search."); Canning v. Dep't of Justice, 919 F. Supp. 451, 459 (D.D.C. 1994).

An agency's search for records must be "reasonably calculated to uncover all relevant documents." Kowalczyk 73 F.3d at 388. If, as here, the reasonableness of the search is challenged, summary judgment is inappropriate unless the government proves "beyond a material doubt" that the search was not unreasonable. Id. See also Truitt v. Department of State, 283 U.S. App. D.C. 86, 897 F.2d 540, 542 (D.C. Cir. 1990). To satisfy its burden of production, agency affidavits must, at a minimum, "[set] forth the search terms and the type of search performed, and [aver] that *all files likely to contain responsive materials (if such records exist) were searched*." Valencia-Lucena v. U.S. Coast Guard, 336 U.S. App. D.C. 386, 180 F.3d 321, 326 (D.C. Cir. 1999) (emphasis added) (citing Oglesby, 920 F.2d at 68).

"If the record raises substantial doubts regarding the agency's efforts, 'particularly in view of well defined requests and positive indications of overlooked materials,'

Case 1:05-cv-01094 (RBW)

summary judgment is not appropriate." Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 107 (D.D.C. 2005) (citing Valencia-Lucena, 180 F.3d at 326) (internal quotations and citations omitted).

The Defendants' motion and supporting affidavit by an FBI FOIA officer fall short of proving beyond a material doubt that the government has discharged its duty to conduct a reasonable search. To the contrary, the FBI has not conducted a reasonable search, because it has not 1) searched for variants of "Ahmed Abu Ali;" 2) searched for responsive records in the Washington Field Office; or 3) searched for responsive records in the FBI's ELSUR index.

**A. The FBI has not conducted a search using variants of "Ahmed Abu Ali"**

Since the FBI's records reference Mr. Abu Ali's name in different forms and by different spellings, it was unreasonable for the FBI to search the CRS only for "Ahmed Abu Ali." See Fourth Hardy Decl., ¶ 21. A search using the term "Ahmed Abu Ali" is unlikely to uncover all responsive documents, because Mr. Abu Ali is alternatively referred to by the FBI using names, "Ahmed Omer Abu Ali", "Ahmad Abu-'Ali", "Ahmad 'Umar Abu-Ali", "Ahmed Abu Omar Abu Ali," "Ahmed Omar Mohammed Abu Ali", "Ali, Ahmed Abu" and the alleged aliases, "Souri, Ashraf, Al Abu Ali, Ahmed Omar." See Ex. A to Pl.'s Opp. to Defs. Mot. for Summ. J, at 6.

For this reason, the FBI's search was not reasonably calculated to retrieve all responsive documents, and summary judgment for the Defendants is therefore improper. Plaintiff requests that the Court direct the FBI to search for records using all known variants of Mr. Abu Ali's name, including those listed below and any others of which the Bureau is aware.

Case 1:05-cv-01094 (RBW)

**B. The FBI impermissibly limited the scope of the hand search.**

Defendants refer to "FBIHQ personnel likely to have records responsive to plaintiff's FOIA request," but do not identify these individuals by name, or indicate the number of FBI personnel who were asked to conduct a manual search for records. Fourth Hardy Decl., ¶ 22. Plaintiff is therefore unable to determine whether all individuals at FBIHQ likely to have records responsive to her FOIA request were asked to conduct a hand search.

The manual search that these individuals were tasked with was limited to producing those records "that would normally be up-loaded or serialized into the Central Records System." Fourth Hardy. Decl., ¶ 22.  This limitation on the scope of the manual search virtually ensured that the FBI would not uncover all relevant documents. The FOIA request at issue is for "*all* records" concerning Mr. Abu Ali – not only those "normally up-loaded or serialized" into CRS.

**C. The FBI's has not conducted a reasonable search, because it has not search for responsive records in the Washington Field Office**

Instead of simply searching the Washington Field Office for responsive records, Defendants have repeatedly suggested that Plaintiff file another FOIA request. Defs. Statement at 10 n. 5. This suggestion is a particularly audacious one, given that Defendants have demonstrated over the past 20 months that FOIA requests directed to the FBI will be ignored. As demonstrated below, Plaintiff is entitled to a search of the Washington Field office for two reasons: 1) The Department of Justice's regulation, 28 C.F.R. § 16.3(a), is unreasonable as applied to this case; and 2) the FBI's search for

Case 1:05-cv-01094 (RBW)

records at Headquarters uncovered proof of the existence of responsive records located in the Washington Field Office and the FBI must follow this lead.

**1. The DOJ's FOIA regulations are unreasonable as applied to the Plaintiff's FOIA request**

The DOJ's regulation, 28 C.F.R. § 16.3(a), requiring a FOIA requestor to direct their inquiry to the specific field office that holds the requested records, is unreasonable as applied to this case. This regulation should not be applied to the Plaintiff's request, because of 1) the Defendants' active concealment of their role in the detention of Mr. Abu Ali at the time of the plaintiff's request, and 2) the misleading "FOIA Instructions" on the FBI's website.

This is a case in which a FOIA requester directed a broad request for "all records" to FBI Headquarters because it was impossible – due to the refusal of the FBI to admit any involvement in the detention of Mr. Abu Ali - to further tailor the request to specific field offices. The language of 28 C.F.R. § 16.3(a) indicates that the regulation is meant to apply only to those requestors who know that records are held by a particular FBI field office. This reading is supported by the instructions following the rule, advising requestors to, "write directly to that FBI or INS field office address, which can be found in most telephone books or by calling the component's central FOIA office."

When Plaintiff requested records from the Bureau in January 2005, the government was actively concealing its role in the detention of Ahmed Abu Ali in Saudi Arabia. See Abu Ali v. Ashcroft, 350 F. Supp. 2d 28 (D.D.C. 2004). Ahmed Abu Ali's own parents had to sue the United States government in an attempt to gain insight into the FBI's role in the detention of their son. Id. Plaintiff, therefore, could not simply consult a

Case 1:05-cv-01094 (RBW)

telephone book or, as is suggested by Defendants, call the Bureau's central FOIA office

to ask them which FBI field offices were involved in the illegal overseas detention of an

American citizen. Because there was no means for Plaintiff to determine which field

office might be in possession of responsive records, she addressed her request to FBI

Headquarters and specified that she sought "*all* records concerning Ahmed Abu Ali…"[1]

See Ex. A to Pl.'s Mot. for Summ. J.

     Finally, the DOJ's FOIA regulation should not be applied to the plaintiff's

request, because of the misleading "FOIA Instructions" on the FBI's website. The FBI

states on its FOIA website, "Here you will find one-stop shopping to request

information." See Ex. H to Pl.'s Opp. to Defs. Mot. for Summ. J. Far from "one-stop

shopping," these documents actually mislead members of the public who, like the

Plaintiff, believe that by following the FBI's "FOIA Instructions" they are complying

with the FOIA's requirements to gain access to the information they seek. Nowhere on

the FBI's FOIA Request Form or FOIA Instructions is there any mention of 28 C.F.R. §

16.3(a), or any reference to additional rules published by the DOJ. See Ex. E to Pl.'s Opp.

to Defs. Mot. for Summ. J.

     Plaintiff, relying on the FBI's "FOIA Instructions," had no way of knowing that

the DOJ required requests for records located in specific field offices be directed to those

offices. However, even if Plaintiff had not been misled by the FBI's FOIA website, she

still would not have been able to determine which field offices might have had records,

because at the time of Plaintiff's request the FBI had been, for more than 20 months,

concealing their involvement in the overseas detention of Ahmed Abu Ali. It would

---

[1] The alternative – addressing a FOIA request to every field office of the Bureau -would result in an enormous waste of FBI resources as each office would then be required to conduct a search.

Case 1:05-cv-01094 (RBW)

therefore be unreasonable to apply the DOJ's regulation to plaintiff's request. For these

reasons, the Court should require the FBI to conduct a search of the Washington Field

Office for responsive records.

**2. The FBI has incurred an obligation to search the Washington Field Office**

Even if the Court does not find that the FBI must search the Washington Field

Office because 28 C.F.R. § 16.3(a) is unreasonable as applied to Plaintiff's FOIA request,

the FBI incurred this obligation during its search of FBIHQ.

This circuit has held that "when a request does not specify the locations in which

an agency should search, the agency has discretion to confine its inquiry to a central

filing system if additional searches are unlikely to produce any marginal return . . ."

Campbell v. United States Dep't of Justice, 334 U.S. App. D.C. 20, 164 F.3d 20, 27 (D.C.

Cir. 1998). However, an agency "must revise its assessment of what is 'reasonable' in a

particular case to account for leads that emerge during its inquiry. Consequently, the

court evaluates the reasonableness of an agency's search based on what the agency knew

at its conclusion rather than what the agency speculated at its inception." Id.

The FBI incurs an obligation to search a field office if during the search for

responsive documents, they, "find a document at headquarters specifically indicating that

documents related to" the FOIA request at issue is located in that particular field office.

Kowalczyk, 73 F.3d at 389. Because there is substantial disagreement between the parties

as to the correct interpretation of Kowalczyk, the Court may find a synopsis helpful.

The plaintiff in Kowalczyk was an inmate who had been tried in the District Court

for the Eastern District of New York for vehicle fraud he committed in New York. He

made his FOIA request to FBI headquarters asking for all documents related to his case

Case 1:05-cv-01094 (RBW)

number, and the FBI refused to search its New York field office where most relevant files were located.

The court ultimately concluded that the FBI was not obligated to search the field office because the initial FOIA inquiry had not specifically requested it, *and* because no documents uncovered in the FBI's search of Headquarters indicated more responsive documents existed in the New York field office. In reaching its decision, the Kowalczyk court relied heavily on the fact that the plaintiff had not cited any "specific document" indicating such a lead or referencing his case number. Id. at 388-89. Thus, the basis of the court's decision was that the circumstances did not "enable the FBI to determine that the New York field office had responsive records." Id. at 389.

The court in Kowalczyk was clear that the FBI must search field offices when "an agency record contains a lead so apparent that the Bureau cannot in good faith fail to pursue it." Id. The court gave as an example a FOIA requester who "clearly states that he wants *all* agency records on a subject, i.e., regardless of their location." Id. In such a situation, as here, the FBI cannot ignore a lead pointing to additional responsive records located at a field office where the lead "is both clear and certain." Id. (emphasis added).

Here, the Bureau could not possibly have believed that a search of its CRS would be sufficient to uncover "*all* records" concerning Ahmed Abu Ali. This is evidenced by the Bureau's method of searching for records at FBIHQ, which involved contacting the case officer for Ahmed Abu Ali in the Washington field office for a list of individuals at Headquarters who might have records. Fourth Hardy Decl. ¶ 22. If the case officer for Ahmed Abu Ali is an agent at the Washington Field Office, it is obvious that responsive records will be found there as well. So obvious, in fact, that Defendants state that, "most

Case 1:05-cv-01094 (RBW)

of the FBI's documents regarding Mr. Abu Ali are likely to be located at its Washington

Field Office." See Defs. Statement at 10 n. 5.

Even if the Bureau reasonably believed that a CRS search would uncover all

responsive documents – which they clearly did not - the Bureau's search of FBIHQ

uncovered proof of the existence of responsive records located in the Washington Field

Office. In a letter from Gary M. Bald to Congressman Tom Davis, released by the FBI to

the plaintiff, Mr. Bald refers to an "email" from a "high-ranking FBI official in

Washington" and states, "I have been advised by our Washington Field Office that the

communications referenced … were limited to responding to specific questions

concerning the FBI's interest in the continued detention of their son [Ahmed Abu Ali] by

the Kingdom of Saudi Arabia." See Ex. G to Pl.'s Opp. to Defs. Mot. for Summ. J.

This email, sent by Michael A. Mason, Assistant Director in Charge, Washington

Field Office is clearly falls within the scope of Plaintiff's request for "*all* records

concerning *Ahmed Abu Ali*, the Falls Church Virginia resident *currently detained in*

*Saudi Arabia*." This "lead" unequivocally points to additional responsive records located

at the Washington Field Office. The FBI is required to search for responsive records in

the Washington Field Office. Because the Bureau has explicitly refused, they have no

conducted a search reasonably calculated to uncover all relevant documents, and

summary judgment for the Defendants is improper.

**D. The FBI has not conducted a search the ELSUR index.**

Finally, the FBI has not conducted a reasonable search, because it did not search

its electronic surveillance (ELSUR) index. The FBI, through ELSUR, "'maintains

information on all subjects whose electronic and/or voice communications have been

Case 1:05-cv-01094 (RBW)

intercepted by the FBI since January 1, 1960.' … ELSUR can be searched by name, 'date

of birth, place of birth and social security number.'" See Davis v. Dep't of Justice, 2006

U.S. App. LEXIS 21399 (D.C. Cir. 2006) quoting Wheeler v. Dep't of Justice, 403 F.

Supp. 2d 1, 4 (D.D.C. 2005).

     During his detention in Saudi Arabia, Ahmed Abu Ali's telephone calls to his

family were monitored and recorded by the FBI pursuant to a FISA warrant. See Ex. A to

Pl.'s Opp. to Defs. Mot. for Summ. J. at 4-5. Therefore, a search of the FBI's ELSUR

index will undoubtedly uncover responsive records.

     For all of the foregoing reasons, the scope and method of FBI's search is

inadequate to sustain their burden under the FOIA. . The Court should award summary

judgment to the Plaintiff and require the FBI to conduct a search using variants of Ahmed

Abu Ali's name, and a search of the Washington Field Office and the FBI's ELSUR

index for responsive records.

## III. The FBI cannot properly withhold responsive records in their entirety pursuant to exemption 7(A)

### A. Exemption 7(A) Generally

     To be properly withheld under Exemption 7(A), "[a]n investigatory record must

meet two criteria … first, it must be 'compiled for law enforcement purposes,' and

second, its release must 'interfere with enforcement proceedings.'" Bevis v. Department

of State, 255 U.S. App. D.C. 347, 801 F.2d 1386, 1388 (D.C. Cir. 1986); Jefferson v.

Reno, 1997 U.S. Dist. LEXIS 3064 (D.D.C. 1997) (an agency must "show that disclosure

of the particular kinds of records a requester seeks 'could reasonably be expected

Case 1:05-cv-01094 (RBW)

perceptibly to interfere with an enforcement proceeding.'") (quoting North v. Walsh, 279

U.S. App. D.C. 373, 881 F.2d 1088, 1097 (D.C. Cir. 1989)).

"Exemption 7(A) does not authorize automatic or wholesale withholding of

records or information simply because the material is related to an enforcement

proceeding." Campbell v. Department of Health and Human Servs., 221 U.S. App. D.C.

1, 682 F.2d 256, 259 (D.C. Cir. 1982). To the contrary, to sustain their burden, an agency

"must be 'specific as to what information is being withheld and the distinct harm that

could result from its disclosure…The agency may not be 'conclusory or vague.'" Scheer

v. United States Dep't of Justice, 35 F. Supp. 2d 9, 12 (D.D.C. 1999) (quoting Kuffel v.

Bureau of Prisons, 882 F. Supp. 1116, 1126 (D.D.C. 1995)).

An agency must, "demonstrate the potential interference by grouping documents

into relevant categories that are 'sufficiently distinct to allow a court to grasp how each

category of documents, if disclosed, would interfere with the investigation.' Newry Ltd.

v. United States Customs & Border Prot. Bureau, 2005 U.S. Dist. LEXIS 36222, 18

(D.D.C. 2005) (citing Bevis, 801 F.2d at 1389 and quoting Campbell, 682 F.2d at 265).

Specifically, an agency must, " (1) define the categories by function, (2) conduct a

document-by-document review of responsive documents in order to assign documents to

their proper category, and (3) explain how the release of each category could interfere

with enforcement proceedings." Id.

Defendants have not met their burden of showing that the disclosure of the

requested records to the Plaintiff will interfere with enforcement proceedings in Ahmed

Abu Ali's appeal of his criminal conviction.

Case 1:05-cv-01094 (RBW)

**B. The Government has not met its burden because essential elements of its 7(A) Exemption claim are not supported by an affidavit made on personal knowledge.**

The Fourth Hardy affidavit is insufficient to meet the Defendants' burden of showing that the records at issue were compiled for law enforcement purposes and that release of these records to the Plaintiff could reasonably be expected to interfere with an enforcement proceeding (in this case, Ahmed Abu Ali's appeal of his criminal conviction).

Rule 56(e) of the Federal Rules of Civil Procedure requires that supporting affidavits "be made on personal knowledge," and that such affidavits "show affirmatively that the affiant is competent to testify as to the matters stated therein." Fed. R. Civ. P. 56(e). Furthermore, "an affidavit based merely on information and belief is unacceptable.'" Londrigan v. Federal Bureau of Investigation, 216 U.S. App. D.C. 345, 670 F.2d 1164, 1174 (D.C. Cir. 1981).

Here, the Defendants offer the affidavit of David M. Hardy, Section Chief of the FBI's Records/Information Dissemination Section, as the sole evidentiary support for their Motion for Summary Judgment. Mr. Hardy has no firsthand knowledge of the investigation and prosecution of Mr. Abu Ali. Mr. Hardy also lacks personal knowledge of the purpose for which responsive records were compiled. As a Section Chief dealing exclusively with the FOIA, Mr. Hardy had no involvement in the FBI's investigation of Ahmed Abu Ali. Therefore, he has no personal knowledge upon which to aver that "these records were all compiled during the FBI's ongoing investigation of Ahmed Abu Ali." Fourth Hardy Decl. ¶ 26.

Case 1:05-cv-01094 (RBW)

Mr. Hardy has no personal knowledge of the status of the FBI's investigation into Ahmed Abu Ali. Nor does he have personal knowledge of what impact - if any - released records would have on Mr. Abu Ali's appeal. Id. Defendants have not provided an affidavit by the "case agent" who allegedly "advised" that the investigation of Mr. Abu Ali is "still pending," and that release of information to Plaintiff could reasonably be expected to interfere with Mr. Abu Ali's criminal appeal.[2] Id.

Mr. Hardy would not be competent to testify at trial about the compiling of documents, the status of the FBI's investigation, or the impact releasing records to Plaintiff might have on Mr. Abu Ali's appeal. Therefore, Fed. R. Civ. P. 56(e) and the case law of this circuit dictate that he may not testify to them in affidavit form. This affidavit is therefore insufficient to meet the Defendants' burden of proof.

**C. The records at issue are not law enforcement records**

The Defendants argue that the records at issue were compiled for law enforcement purposes. Fourth Hardy Decl. ¶ 26. While records used during Ahmed Abu Ali's criminal trial might fairly be characterized as "re-compiled for law enforcement purposes" (but must be released because they are in the public domain), records not used at trial were never compiled for law enforcement purposes.

In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. Dep't of Justice, 350 U.S. App. D.C. 337, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

---

[2] The Fourth Hardy Declaration is unclear as to whether Mr. Hardy was even the individual "advised" by the case agent of these assertions.

Case 1:05-cv-01094 (RBW)

Congress chose to separately address the intelligence gathering and anti-terrorism function of the FBI in section (c)(3) of the FOIA, specifically treating as distinct from law enforcement records the category of "records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism." 5 USCS § 552 (c)(3). Under subsection (c)(3), the Bureau may only treat records as exempt from the requirements of the FOIA if "the existence of the records is classified information as provided in subsection (b)(1)" and only "as long as the existence of the records remains classified information." Id.

Prior to his criminal trial, Mr. Abu Ali filed a motion to suppress and a motion to dismiss. In his motion to dismiss, Mr. Abu Ali argued that his prosecution, following a two-year detention in Saudi Arabia, violated his Sixth Amendment right to a speedy, public trial. U.S. v. Abu Ali  395 F.Supp.2d 338, 343 (E.D.Va., 2005). In his motion to suppress, he alleged that he was tortured while in Saudi custody and that the statements he made in detention were involuntary and therefore inadmissible under the Due Process Clause of the Fifth Amendment. Mr. Abu Ali also argued that Saudi officials acted as agents of the United States, and his statements were therefore inadmissible because he was not afforded his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Id. Finally, Mr. Abu Ali argued that the Saudi government's search of his Medina, Saudi Arabia dormitory room and the FBI's search of his residence in Falls Church, Virginia, violated his Fourth Amendment rights against unreasonable searches and seizures. Id.

The government successfully avoided a finding that FBI agents had violated Mr. Abu Ali's Fourth, Fifth and Sixth Amendment rights by arguing that the FBI was not acting pursuant to law enforcement purposes. The government stridently asserted a

Case 1:05-cv-01094 (RBW)

distinction between a criminal investigation and "intelligence gathering." FBI agents

involved in the detention of Mr. Abu Ali in Saudi Arabia testified that they were not

seeking information and collecting evidence in support of a potential criminal

prosecution. See Ex. A to Pl.'s Opp. to Defs. Mot. for Summ. J. at 1-2. FBI Special Agent

Barry Cole, Special Agent Maria Joycs and FBI Agent Luke Kuligowski all testified that

actions taken by the FBI during Mr. Abu Ali's detention were not, in any way, related to

the FBI's role in law enforcement:

> **Assistant US Attorney Laufman:** To what extent, if at all, were you seeking to develop information and support of a criminal prosecution?
> **FBI Special Agent Barry Cole**: We were not. We were strictly there for intelligence.
>
> _____
>
> **Assistant US Attorney Laufman**: And after he asked to see an attorney, did it continue to be the case that you were seeking information for intelligence gathering purposes versus information developed for a criminal case?
> **FBI Special Agent Barry Cole**: That is correct.
>
> _____
>
> **Assistant US Attorney Laufman**: Was [the FBI] seeking the information for intelligence purposes or in support of a potential criminal prosecution?
> **FBI Special Agent Maria Joycs**: For intelligence purposes.
>
> _____
>
> **Abu Ali Defense attorney Khurrum Wahid**: Now, you had conducted a search warrant against Mr. Abu Ali, though, for the purpose of collecting information that could be used in prosecution, correct?
> **FBI Special Agent Luke Kuligowski**: Not a prosecution; to gather intelligence to prevent other future acts of terrorism against the U.S.

Id. (names inserted for clarity).

By arguing that their evidence was not created for law enforcement purposes, the

government was able to put many of the records subject to the plaintiff's FOIA request

before the jury that convicted Mr. Abu Ali. In denying Mr. Abu Ali's motion to suppress

Case 1:05-cv-01094 (RBW)

and motion to dismiss, Judge Lee relied on FBI agents' testimony that they were not

acting pursuant to law enforcement purposes in their dealings with Mr. Abu Ali.[3]

　　　Here, the government completely contradicts its earlier assertions, seeking to

withhold the very same records, based on the argument that they were compiled for law

enforcement purposes. See Fourth Hardy Decl., ¶ 26 ("These records were all compiled

during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for

possible violations of the criminal laws of the United States."). Fourth Hardy Decl., ¶ 26.

As Plaintiff has demonstrated, this assertion is contradicted by the sworn statements of

FBI agents directly involved in Mr. Abu Ali's detention in Saudi Arabia. These agents

testified in a pre-trial hearing that the FBI had no law enforcement interest in Mr. Abu

Ali at the time the majority of the records at issue were created.

　　　The records created by the FBI as a part of their intelligence gathering activities

during Ahmed Abu Ali's 20-month detention in Saudi Arabia were not originally

compiled for law enforcement purposes. Even if the records that were re-compiled for the

purposes of prosecuting Mr. Abu Ali are found to be records "compiled for law

enforcement purposes," this is not the case for records that were not re-compiled for trial.

These records, as the government made perfectly clear in Mr. Abu Ali's criminal trial,

---

[3] See e.g. Abu Ali, 395 F. Supp. at 349. ("[FBI Agent Maria Jocys] viewed the [June 15, 2003] interview as an intelligence gathering interview, rather than a criminal investigation..."); Id. ("[W]hen pressed about whether she gave Miranda warnings to Mr. Abu Ali, [FBI Agent Maria Jocys] distinguished between an intelligence interview and a criminal investigation interview."); Id. at 350 ("Agent Posto stated … that this [June 15, 2003 interrogation] was an intelligence interview rather than a criminal interview."); Id. at 356 ("Agent Cole testified that the purpose of his interviews [of Abu Ali in Saudi prison on September 14, 16, 17 and 18, 2003] was to 'gather intelligence.'"). See also Ex. B at 3 to Pls. Mot. for Summ. J. ("[A]gents of the Federal Bureau of Investigation first interviewed Mr. Abu Ali in September 2003 for four days. Because their intention at the time was to gather intelligence rather than build a criminal case, the F.B.I. agents did not read him the Miranda warnings, nor did they stop questioning him once he asked for a lawyer, prosecutors said.").

Case 1:05-cv-01094 (RBW)

were *not* compiled for law enforcement purposes.[4] They cannot be withheld under

Exemption 7(A) and must be released to Plaintiff.

**D. Defendants have failed to demonstrate that the production of the records sought will interfere with enforcement proceedings**

Even if the Court finds that all responsive records at issue are law enforcement

records, Defendants are not entitled to summary judgment because they have failed to

demonstrate that production of the records sought will interfere with enforcement

proceedings.

As discussed *supra* section III.B., Mr. Hardy does not have personal knowledge

upon which to base his assertions about the FBI's investigation of Ahmed Abu Ali and

the impact releasing records to Plaintiff might have on future enforcement proceedings.

To the extent that the court finds otherwise, Plaintiff separately addresses each

subcategory, and the reasons records within each category should be released to Plaintiff.

Defendants have not met their burden of showing that release of these records can

reasonably be expected to interfere with enforcement proceedings for the following

reasons:

**1. Evidentiary/Investigative materials**

**a. Confidential source statements**

Defendants' first category of records withheld under Exemption 7(A) is "confidential

source statements." Fourth Hardy Decl., ¶ 38. Confidential source statements are properly

invoked under Exemption 7(D) of the FOIA, not Exemption 7(A).

---

[4] Documents not relevant to the criminal prosecution of Mr. Abu Ali would not have been re-compiled for the purposes of prosecuting Mr. Abu Ali. Defendants are in the best position to segregate those records that were not re-compiled for Mr. Abu Ali's criminal trial from those that were.

Case 1:05-cv-01094 (RBW)

Defendants' basis for withholding these records is that "potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this investigation." Fourth Hardy Decl., ¶38. In this case, the government's witnesses have already testified in open court, and it would therefore be unreasonable to expect that confirmation of their role in this case would interfere with any subsequent proceedings in Mr. Abu Ali's criminal case.

To meet their burden under Exemption 7(D), the FBI must show either that the source provided information to the Bureau "under an express assurance of confidentiality," or that "the circumstances support an inference of confidentiality." See Antonelli v. BATF, 2006 U.S. Dist. LEXIS 9786, 16-17 (D.D.C. 2006) (citing United States DOJ v. Landano, 508 U.S. 165, 179-81 (1993)).

In order to demonstrate an express assurance of confidentiality, an agency "must present 'probative evidence that the source did in fact receive an express grant of confidentiality.'" Campbell v. U.S. Dep't of Justice, 334 U.S. App. D.C. 20, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting Davin v. U.S. Dept. of Justice, 60 F.3d 1043, 1061 (3rd Cir. 1995)). Defendants have not presented any such evidence.

To determine the existence of an implied assurance of confidentiality, a court must inquire into "whether the particular source spoke with an understanding that the communication would remain confidential." Landano, 508 U.S. at 172. Defendants have likewise provided no evidence showing the existence of an implied assurance of confidentiality.

Defendants have not demonstrated an express or implied assurance of confidentiality under Exemption 7(D), and that analysis does not belong in their Motion for Summary

Case 1:05-cv-01094 (RBW)

Judgment, as it is restricted to Exemption 7(A). See Order of July 6, 2006. Defendants

have also failed to demonstrate that disclosure of records in this category could

reasonably be expected to interfere with future proceedings in Abu Ali's criminal case.

Summary judgment as to this category of records is therefore inappropriate.

**b. Exchanges of information between various local, state, federal and foreign agencies**

Mr. Hardy avers that to release information in this category, "would identify the

investigative interest in particular individuals." Fourth Hardy Decl., ¶ 39. This potential

harm cannot form the basis for Defendants' withholding of records under 7(A), however,

because the individuals who are subjects of the FBI investigation of Mr. Abu Ali have

already been publicly identified. See Ex. A to Pls. Opp. to Defs. Mot. for Summ. J. at 3

(letter in court records identifying the names and aliases of all "unindicted co-

conspirators" of Mr. Abu Ali); Id. at 6 (describing memorandum in court records from

the Saudi Mabahith to the FBI with "summary of the interrogation with every member in

Al-Faqassi's cell associated with Abu Ali."); see also United States v. Abu Ali, 2006 U.S.

Dist. LEXIS 29461 (E.D. Va., Apr. 17, 2006), Ex. F to Pls. Opp. to Defs. Mot. for Summ.

J. at 4, 7 (United States District Judge Gerald Bruce Lee, who presided over Ahmed Abu

Ali's criminal case, states that, "[t]here was no evidence offered at the trial that Mr. Abu

Ali had accomplices in the United States" and that "there is no evidence that there were

other co-conspirators in the United States."). The identities of all "potential targets" are in

the public domain, and therefore, re-release of this information to Plaintiff is unlikely to

interfere with any future proceedings. There is no basis for Mr. Hardy's claim that release

of the records to Plaintiff could "subject witnesses and confidential sources to potential

harassment, intimidation and physical or mental harm." Fourth Hardy Decl., ¶ 39.

Case 1:05-cv-01094 (RBW)

Defendants have provided no support for their argument that records may be withheld pursuant to Exemption 7(A) because "various agencies that have cooperated with and provided information and records to the FBI." Fourth Hardy Decl., ¶ 39. Federal agencies frequently cooperate and exchange information with agencies in other countries – many of which do not embrace freedom of information at all, let alone in the same way as the United States. It would entirely defeat the purpose of the Freedom of Information Act to allow an agency to withhold its own records based upon the whims of another nation – especially a nation implicated in the kind of wrongdoing alleged by Ahmed Abu Ali. Such a broad application of Exemption 7(A) would enable an agency to withhold investigatory records in almost all cases.

Furthermore, as discussed *infra* pp. 29-30 information concerning Ahmed Abu Ali obtained by the FBI from foreign agencies – including the Saudi Mabahith - is already in the public domain, thus mooting Defendants' argument that release of this information would be in any way "premature." Fourth Hardy Decl., ¶ 39. These records should be released to Plaintiff.

**c. Information concerning documentary and physical evidence**

Mr. Hardy identifies the types of documents in this category as "items that cannot be further described in this public declaration." Fourth Hardy Decl., ¶ 40. This description is too vague for the Court to trace a rational link from the document type to the alleged likely interference in Mr. Abu Ali's criminal appeal.

Mr. Hardy avers that, "[t]o fully describe these records could reasonably lead to the identification of evidentiary records and, ultimately, the source of these records," which

Case 1:05-cv-01094 (RBW)

in turn, "could be detrimental to the success of pending and prospective prosecutions by permitting subjects to formulate a strategy as to how the evidence could be contradicted in Court." Id. However, as discussed *infra* pp. 29-30, Mr. Abu Ali's criminal trial is over, and all evidentiary records and the source of these records are in the public domain. See Ex A, C and D to Pls. Opp. to Defs. Mot. for Summ. J. Release of these records could not reasonably be expected to interfere with enforcement proceedings, and therefore, these records should be released to Plaintiff.

## 2. Administrative materials

### a. Reporting communications

Mr. Hardy does not specify how release of records in this category might result in interference with Ahmed Abu Ali's appeal of his criminal conviction, or any other enforcement proceeding. Fourth Hardy Decl., ¶ 42. Therefore, records in this category cannot be withheld under Exemption 7(A). Furthermore, as discussed *infra* pp. 29-30, records falling within this category are in the public domain, and therefore cannot be withheld under any exemption. See Ex A, C and D to Pls. Opp. to Defs. Mot. for Summ. J.

### b. Miscellaneous administrative documents

Mr. Hardy does not specify how release of records in this category might result in interference with Ahmed Abu Ali's appeal of his criminal conviction, or any other enforcement proceeding. Fourth Hardy Decl., ¶ 43-4. Therefore Defendants have not met their burden for withholding records in this category pursuant to Exemption 7(A).

Mr. Hardy gives as an example of records falling into this category "the envelope used to store records obtained from a confidential source." Id., ¶ 43. As Plaintiff

Case 1:05-cv-01094 (RBW)

discussed *supra* in subsection III.D.1.a., information pertaining to confidential sources

can only be withheld under Exemption 7(D). Defendants have not demonstrated an

express or implied assurance of confidentiality under Exemption 7(D).

Furthermore, as Plaintiff discussed *supra* in subsection III.C., records not used at

trial were not compiled for law enforcement purposes and thus cannot properly be

withheld under Exemption 7(A). For these reasons, Defendants must release records in

this category to the plaintiff.

**c. Administrative instructions**

Mr. Hardy does not specify how release of records in this category might result in

interference with Ahmed Abu Ali's appeal of his criminal conviction. Fourth Hardy

Decl., ¶ 45-46. Therefore Defendants have not met their burden for withholding records

in this category pursuant to Exemption 7(A).

Furthermore, as discussed *infra* pp. 29-30, records falling within this category are

in the public domain, and therefore cannot be withheld under any exemption. See Ex A,

C and D to Pls. Opp. to Defs. Mot. for Summ. J.

**E. Exemption 7(A) is inapplicable to responsive records already in the public domain**

The FBI is improperly withholding records that were made public by the

government during Ahmed Abu Ali's criminal trial. Exemption 7(A) does not apply to

records that are in the public domain.

The D.C. Court of Appeals has held that "the government cannot rely on an

otherwise valid exemption claim to justify withholding information that has been

'officially acknowledged' or is in the 'public domain.'" Davis v. U.S. Department of

Justice, 296 U.S. App. D.C. 405, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting Afshar

Case 1:05-cv-01094 (RBW)

v. Department of State, 226 U.S. App. D.C. 388, 702 F.2d 1125 (D.C. Cir. 1983) and

Fitzgibbon v. CIA, 286 U.S. App. D.C. 13, 911 F.2d 755, 765 - 66 (D.C. Cir. 1990)).

Under the public-domain doctrine, "materials normally immunized from disclosure under

FOIA lose their protective cloak once disclosed and preserved in a permanent public

record." Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). The doctrine holds that "a

showing of public availability renders the FOIA exemptions inapplicable." Davis, 968

F.2d at 1280. The rationale behind the public domain doctrine is that "an exemption can

serve no purpose once information--including sensitive law-enforcement intelligence--

becomes public." Cottone, 193 F.3d at 555.

     The FOIA requestor, in asserting a claim of prior disclosure, bears the burden of

production. This burden is satisfied when the requestor "point[s] to specific information

in the public domain that appears to duplicate that being withheld." Cottone, 193 F.3d at

554. However, "[t]he ultimate burden of persuasion, to be sure, remains with the

government." Davis, 968 F.2d at 1279 (quoting Afshar, 702 F.2d at 1130). Thus, "once

the FOIA requester has carried h[er] burden of production, it is up to the government…to

rebut the plaintiff's proof," by demonstrating that the specific records at issue, "have

since been destroyed, placed under seal, or otherwise removed from the public domain."

Cottone, 193 F.3d at 556.

     Plaintiff has attached, as Exhibits C and D, certified copies of the government's

exhibit lists for the suppression hearing and trial of Ahmed Abu Ali. These documents

show that many records responsive to Plaintiff's FOIA request were made public during

Mr. Abu Ali's trial. See also Pl.'s Statement of Genuine Issues in Opposition to Defs.

Mot. for Summ. J. (Pl.'s Statement) ¶¶ 2-128, 130 and 133. Because these records are in

Case 1:05-cv-01094 (RBW)

the public domain, they cannot be withheld under Exemption 7(A) and must be released

to the plaintiff.

### V. The FBI must release reasonably segregable portions of withheld records

The FOIA's focus "is information, not documents, and an agency cannot justify

withholding an entire document simply by showing that it contains some exempt

material." Kimberlin v. U.S. Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998)

(quoting Mead Data Cent. Inc. v. U.S. Dep't of the Air Force, 184 U.S. App. D.C. 350,

566 F.2d 242, 260 (D.C. Cir. 1977)).  The "segregability requirement limits claims of

exemption to discrete units of information; to withhold an entire document, all units of

information in that document must fall within a statutory exemption." Billington v. U.S.

Dep't of Justice, 344 U.S. App. D.C. 53, 233 F.3d 581, 586 (D.C. Cir. 2000). The FOIA

requires an agency to release "[a]ny reasonably segregable portion of a record … after

deletion of the portions which are exempt." 5 USCS § 552(b). See Judicial Watch, Inc. v.

United States Dep't of Commerce, 337 F. Supp. 2d 146, 161-162 (D.D.C. 2004) ("Any

reasonably segregable portions of requested records must be disclosed once the exempt

portions have been redacted.") (citing Oglesby v. United States Dep't of the Army, 316

U.S. App. D.C. 372, 79 F.3d 1172, 1176 (D.C. Cir.1996)).

The FBI has not made a good faith effort to provide Plaintiff with the reasonably

segregable portions of each withheld document. With such a vast amount of information

already in the public domain and the numerous records that have been withheld, the FBI

cannot in good faith argue that, "[w]ith the exception of information already released to

plaintiff, there is no additional reasonably segregable portion of any document or

evidentiary material which can be released at this time." Fourth Hardy Decl. ¶ 80.

Case 1:05-cv-01094 (RBW)

Defendants make no attempt at a segregability analysis for *any* document. Instead, defendants entirely ignore this requirement – dismissing it with a few conclusory sentences. Fourth Hardy Decl., ¶¶ 50, 80. This is agency bad faith, and for this reason, Defendant's Motion for Summary Judgment should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied and that Plaintiff's Motion for Summary Judgment be granted.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on September 27, 2006 in Charlottesville, Virginia.

Elisabeth Kidder
2587 Hydraulic Road Apt C
Charlottesville, VA 22901

Case 1:05-cv-01094 (RBW)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Elisabeth Kidder
2587 Hydraulic Road Apt C
Charlottesville, Va 22901
(434) 409-0131

CIVIL ACTION NO. 1:05-cv-1094 (RBW)

Federal Bureau of Investigation
9th And Pennsylvania Avenue, N.W.
Washington, D.C. 20535

Department of Justice
950 Pennsylvania Avenue, N.W.
Washington Dc 20530

## STATEMENT OF GENUINE ISSUES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to LCvR 7.1(h), Plaintiff hereby submits this Statement of Genuine

Issues in Opposition to Defendants' Motion for Summary Judgment and in response to

Defendants' Statement of Material Facts as to Which There is No Genuine Issue

Submitted in Support of Defendants' Motion for Summary Judgment ("Statement of

Facts" or "Defs. Facts"). Plaintiff responds to each of the numbered paragraphs of

Defendants' Statement of Facts as follows:

1. Admitted, except that Plaintiff requested, "all records concerning Ahmed Abu

Ali, the Falls Church Virginia resident currently detained in Saudi Arabia." See Pl.'s

Mot. for Summ. J. Ex. A.

2. Admitted that the request did not specifically request records located at FBI

field offices. The rest of this paragraph sets forth conclusions of law to which no response

Case 1:05-cv-01094 (RBW)

is required. To the extent a response is required, plaintiff denies that the request did not

clearly state that Plaintiff sought records regardless of their location.

     3. Plaintiff lacks sufficient knowledge to admit or deny.

     4. Plaintiff lacks sufficient knowledge to admit or deny.

     5. Plaintiff lacks sufficient knowledge to admit or deny.

     6. Plaintiff lacks sufficient knowledge to admit or deny.

     7. Plaintiff lacks sufficient knowledge to admit or deny.

     8. Plaintiff lacks sufficient knowledge to admit or deny.

     9. Plaintiff lacks sufficient knowledge to admit or deny.

     10. Plaintiff lacks sufficient knowledge to admit or deny.

     11. Denied to the extent that the FBI sent this letter to the wrong address and did

not release these records to Plaintiff by mailing them to her correct address until after she

contacted Defendants' counsel on June 15, 2006.

     12. This paragraph sets forth conclusions of law to which no response is required.

     13. This paragraph sets forth conclusions of law to which no response is required.

To the extent a response is required, plaintiff denies that the FBI's withholding of records

pursuant to Exemption 7(A) is proper.

     14. Denied to the extent that the FBI sent this letter to the wrong address and did

not release these records to Plaintiff by mailing them to her correct address until after she

contacted Defendants' counsel on June 15, 2006.

     15. This paragraph sets forth conclusions of law to which no response is required.

     16. This paragraph sets forth conclusions of law to which no response is required.

     17. Admitted.

Case 1:05-cv-01094 (RBW)

18. This paragraph sets forth conclusions of law to which no response is required. To the extent a response is required, plaintiff denies that the FBI's investigation is ongoing, and that denies that the records from the Laboratory file and the Legat Riyadh file were compiled during an investigation of "possible violations of the criminal laws of the United States."

19. Admitted.

20. This paragraph sets forth conclusions of law to which no response is required. To the extent a response is required, plaintiff denies that the FBI's investigation is ongoing.

21. This paragraph sets forth conclusions of law to which no response is required.

22. Plaintiff lacks sufficient knowledge to admit or deny whether the records have been reviewed, document-by-document. Plaintiff denies that the records have been categorized in terms of the information contained therein.

23. Plaintiff lacks sufficient knowledge to admit or deny.

24. Plaintiff admits that there are redactions to the records provided to her, but lacks sufficient knowledge to admit or deny the rest of the paragraph.

25. This paragraph sets forth conclusions of law to which no response is required.

26. Plaintiff admits that there are redactions to the records provided to her, but lacks sufficient knowledge to admit or deny the rest of the paragraph.

27. This paragraph sets forth conclusions of law to which no response is required.

28. Plaintiff lacks sufficient knowledge to admit or deny.

29. This paragraph sets forth conclusions of law to which no response is required.

Case 1:05-cv-01094 (RBW)

30. Plaintiff admits that there are redactions to the records provided to her, but lacks sufficient knowledge to admit or deny the rest of the paragraph.

31. This paragraph sets forth conclusions of law to which no response is required.

32. Plaintiff lacks sufficient knowledge to admit or deny.

33. Plaintiff lacks sufficient knowledge to admit or deny.

34. This paragraph sets forth conclusions of law to which no response is required.

35. Plaintiff lacks sufficient knowledge to admit or deny.

36. Plaintiff lacks sufficient knowledge to admit or deny.

37. Plaintiff lacks sufficient knowledge to admit or deny.

38. Plaintiff admits that there are redactions to the records provided to her, but lacks sufficient knowledge to admit or deny the rest of the paragraph.

39. This paragraph sets forth conclusions of law to which no response is required. To the extent a response is required, plaintiff denies that all of the records at issue constitute records or information compiled for law enforcement purposes.

40. This paragraph sets forth conclusions of law to which no response is required. To the extent a response is required, plaintiff denies that the public interest in disclosure is nonexistent and that the privacy interest of the individual whose name is at issue outweighs it.

41. This paragraph sets forth conclusions of law to which no response is required. To the extent a response is required, plaintiff denies that no additional reasonably segregable portion of any document or evidentiary material which can be released at this time, because many of the records or portions of the records are in the public domain.

Case 1:05-cv-01094 (RBW)

In addition to the above, Plaintiff sets forth the additional material facts demonstrating that Defendants' motion should be denied:

1. In sworn statements made during Ahmed Abu Ali's criminal case, FBI agents distinguished between intelligence gathering purposes and information developed for a criminal case, and testified that their actions were not in support of a potential criminal prosecution. Ex. A to Pls. Opp. to Defs. Mot for Summ. J. ("Ex. A") at 1-2.

2. A photograph of Ahmed Abu Ali taken following his admission to prison in Riyadh, Saudi Arabia on June 10, 2003 was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D to Pls. Opp. to Defs. Mot for Summ. J. ("Ex. D") at 1.

3. The photograph is a record maintained by the FBI. Id.

4. The photograph is in the public domain. Id.

5. Ahmed Abu Ali's United States passport was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

6. The passport is a record maintained by the FBI. Id.

7. The passport is in the public domain. Id.

8. An English translation of Arabic-language stamps in Ahmed Abu Ali's United States passport was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

9. The English translation is a record maintained by the FBI. Id.

10. The English translation is in the public domain. Id.

11. Ahmed Abu Ali's Jordanian passport was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

Case 1:05-cv-01094 (RBW)

12. The passport is a record maintained by the FBI. <u>Id.</u>

13. The passport is in the public domain. <u>Id.</u>

14. An English translation of Arabic-language stamps in Ahmed Abu Ali's Jordanian passport was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

15. The English translation is a record maintained by the FBI. <u>Id.</u>

16. The English translation is in the public domain. <u>Id.</u>

17. A green address book seized on June 8, 2003 in Ahmed Abu Ali's dormitory room in Medina Saudi Arabia, an excerpt from this address book and an English translation of the excerpt were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 2.

18. The address book, excerpt and translation are records maintained by the FBI. <u>Id.</u>

19. The address book, excerpt and translation are in the public domain. <u>Id.</u>

20. Fake U.S. currency parodying George W. Bush, seized on June 8, 2003, was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

21. The fake currency is a record maintained by the FBI. <u>Id.</u>

22. The fake currency is in the public domain. <u>Id.</u>

23. A video recording of Ahmed Abu Ali reading his confession aloud in Arabic was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

24. The video is a record maintained by the FBI. <u>Id.</u>

Case 1:05-cv-01094 (RBW)

25. The video is in the public domain. <u>Id.</u>

26. An English translation of the video was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

27. The English translation is a record maintained by the FBI. <u>Id.</u>

28. The English translation is in the public domain. <u>Id.</u>

29. A video recording of Ahmed Abu Ali reading his written confession aloud, with English subtitles, was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

30. The video recording is a record maintained by the FBI. <u>Id.</u>

31. The video recording is in the public domain. <u>Id.</u>

32. A photograph of alleged al-Qaeda cell member Nasser al-Fahd with handwritten note in Arabic by Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 3.

33. The photograph and note are records maintained by the FBI. <u>Id.</u>

34. The photograph and note are in the public domain. <u>Id.</u>

35. An English translation of the note written by Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

36. The English translation is a record maintained by the FBI. <u>Id.</u>

37. The English translation is in the public domain. <u>Id.</u>

38. A photograph of alleged Moeith al-Qahtani with handwritten note in Arabic by Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

39. The photograph and note are records maintained by the FBI. <u>Id.</u>

Case 1:05-cv-01094 (RBW)

40. The photograph and note are in the public domain. Id.

41. An English translation of the note written by Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

42. The English translation is a record maintained by the FBI. Id.

43. The English translation is in the public domain. Id.

44. A videotape of a May 27, 2003 raid and search of an al-Qaeda safehouse in Media, Saudi Arabia was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

45. The videotape is a record maintained by the FBI. Id.

46. The videotape is in the public domain. Id.

47. An Arabic-language sales receipt and for a laptop computer allegedly purchased by Ahmed Abu Ali in Medina, Saudi Arabia and an English translation of the receipt were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 4.

48. The receipt and translation are records maintained by the FBI. Id.

49. The receipt and translation are in the public domain. Id.

50. An FBI report of the June 15, 2003 interrogation of Ahmed Abu Ali by Saudi Mabahith was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

51. The FBI report is a record maintained by the FBI. Id.

52. The FBI report is in the public domain. Id.

Case 1:05-cv-01094 (RBW)

53. A September 18, 2003 letter from Ahmed Abu Ali to his parents was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 5.

54. The letter is a record maintained by the FBI. Id.

55. The letter is in the public domain. Id.

56. An excerpt from FBI Special Agent Luke Kuligowski's notes from the September 2003 interrogation of Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

57. Agent Kuligowski's notes are a record maintained by the FBI. Id.

58. Agent Kuligowski's notes are in the public domain. Id.

59. Arabic language minutes of interrogation from Saudi Mabahith interrogations of Ahmed Abu Ali in June and July 2003 and the English translation of the minutes were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

60. The minutes of interrogation and translation are records maintained by the FBI. Id.

61. The minutes of interrogation and translation are in the public domain. Id.

62. An Arabic-language handwritten summary confession by Ahmed Abu Ali and a translation of the summary confession were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

63. The summary confession and translation are records maintained by the FBI. Id.

64. The summary confession and translation are in the public domain. Id.

Case 1:05-cv-01094 (RBW)

65. Ahmed Abu Ali's Arabic-language medical records from Riyadh prison and an English translation of the records were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

66. The medical records and English translation are records maintained by the FBI. Id.

67. The medical records and English translation are in the public domain. Id.

68. The February 21, 2005 report of medical examination of Ahmed Abu Ali by Dr. Richard Schwartz was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 6.

69. The report is a record maintained by the FBI. Id.

70. The report is in the public domain. Id.

71. CDs of 7/17/2004, 7/31/2004, 8/14/2004, 8/28/2004, 9/11/2004, 9/25/2004, 10/9/2004, 10/23/2004, 11/6/2004, 11/13/2004, 11/20/2004 and 2/12/2005 FISA calls, and English translations of these calls were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 6-7.

72. The CDs and English translations are records maintained by the FBI. Id.

73. The CDs and English translations are in the public domain. Id.

74. An Arabic-language record of Ahmed Abu Ali's June 8, 2003 arrest in Medina, Saudi Arabia and an English translation of the record was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 7-8.

75. The record and translation are a records maintained by the FBI. Id.

76. The record and translation are in the public domain. Id.

Case 1:05-cv-01094 (RBW)

77. Ahmed Abu Ali's MSN Hotmail Buddy List containing the e-mail address for Moeith al-Qahtani was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 8.

78. The Buddy List is a record maintained by the FBI. Id.

79. The Buddy List is in the public domain. Id.

80. An FBI Fingerprint Report dated 06/15/05 was offered by the Government at Ahmed Abu Ali's criminal trial. Ex. D at 10.

81. The report is a record maintained by the FBI. Id.

82. The report is in the public domain. Id.

83. Cryptanalysis dated 10/12/05 by FBI cryptanalyst Daniel Olson was offered by the Government at Ahmed Abu Ali's criminal trial. Id.

84. The cryptanalysis is a record maintained by the FBI. Id.

85. The cryptanalysis is in the public domain. Id.

86. An Arabic language communication dated 5/27/2003 and the English translation of the communication were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

87. The communication and translation are records maintained by the FBI. Id.

88. The communication and translation are in the public domain. Id.

89. Arabic language communication dated 6/6/2003 and the English translation of the communication were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

90. The communication and translation are records maintained by the FBI. Id.

91. The communication and translation are in the public domain. Id.

Case 1:05-cv-01094 (RBW)

92. Ahmed Abu Ali's Jordanian ID card was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

93. The ID card is a record maintained by the FBI. <u>Id.</u>

94. The ID card is in the public domain. <u>Id.</u>

95. A list of items seized during the search of Rio Drive on 6/16/03 was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

96. The list is a record maintained by the FBI. <u>Id.</u>

97. The list is in the public domain. <u>Id.</u>

98. An excerpt of Luke Kiligoski's notes on 9/17/03 was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

99. The notes are a record maintained by the FBI. <u>Id.</u>

100. The notes are in the public domain. <u>Id.</u>

101. A complete inventory of items seized during the search of Rio Drive was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. <u>Id.</u>

102. The inventory is a record maintained by the FBI. <u>Id.</u>

103. The inventory is in the public domain. <u>Id.</u>

104. A file recovered from Ahmed Abu Ali's laptop computer concerning translation of a document translated for an alleged al-Qaeda cell leader was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 10.

105. The file is a record maintained by the FBI. <u>Id.</u>

106. The file is in the public domain. <u>Id.</u>

Case 1:05-cv-01094 (RBW)

107. An FBI Summary Report of documents from Medina searches was offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Id.

108. The report is a record maintained by the FBI. Id.

109. The report is in the public domain. Id.

110. Photographs of Ahmed Abu Al's body were offered by the Government and admitted into evidence at Ahmed Abu Ali's criminal trial. Ex. D at 11.

111. The photographs are records maintained by the FBI. Id.

112. The photographs are in the public domain. Id.

113. A memo from the Saudi Mabahith to the FBI dated 6/9/03 and the English translation of the memo was offered by the Government and admitted into evidence at Ahmed Abu Ali's suppression hearing of October 11 to October 20, 2005 ("suppression hearing"). Ex. C to Pls. Opp. to Defs. Mot. for Summ. J. ("Ex. C") at 1.

114. The memo and English translation are records maintained by the FBI. Id.

115. The memo and English translation are in the public domain. Id.

116. Emails from Special Agent Maria Joycs, dated 6/10/03, 6/11/03, 6/12/03, 6/15/03 and 7/2/03 were offered by the Government and admitted into evidence at Ahmed Abu Ali's suppression hearing. Id.

117. These emails are records maintained by the FBI. Id.

118. These emails are in the public domain. Id.

119. Questions for Ahmed Abu Ali submitted to the Mabahith by the FBI were offered by the Government and admitted into evidence at Ahmed Abu Ali's suppression hearing. Id.

120. These questions are a record maintained by the FBI. Id.

Case 1:05-cv-01094 (RBW)

121. These questions are in the public domain. Id.

122. An FBI request dated June 10, 2003 for access to interview Ahmed Abu Ali was offered by the Government and admitted into evidence at Ahmed Abu Ali's suppression hearing. Ex. C at 4.

123. The request is a record maintained by the FBI. Id.

124. The request is in the public domain. Id.

125. The report of FBI Language Analyst Aisha A. Abdelhamid was attached to the government's Expert Report on Translation Challenges to the Transcript of Deposition Testimony submitted to the court in Ahmed Abu Ali's criminal case on October 11, 2005. Ex. A to Pls. Mot. for Summ. J. ("Ex. A") at 4.

126. The report is a record maintained by the FBI. Id.

127. The report is in the public domain. Id.

128. There are additional responsive records not listed *supra* ¶¶ 2-127 that are in the public domain.  ("Ex. A") at 4-6.

129. United States District Judge Gerald Bruce Lee, who presided over Ahmed Abu Ali's criminal case, stated that, "[t]here was no evidence offered at the trial that Mr. Abu Ali had accomplices in the United States…." Ex. F to Pls. Opp. to Defs. Mot. for Summ. J. ("Ex. F") at 7. See also Id. at 4 ("[T]here is no evidence that there were other co-conspirators in the United States.").

130. A letter containing the names and aliases of all unindicted Saudi co-conspirators of Ahmed Abu Ali was attached to the Government's Omnibus Response to Defendant's Non-Dispositive Pre-Trial Motions filed in Ahmed Abu Ali's criminal case on June 3, 2005. Ex. A at 3.

Case 1:05-cv-01094 (RBW)

131. The names of all unindicted co-conspirators of Ahmed Abu Ali are in the public domain. Id.

132. The names of all subjects of the FBI investigation of Ahmed Abu Ali are in the public domain. Id. and Ex. F at 4, 7.

133. A memorandum from the Saudi Mabahith to the FBI containing a summary of the interrogation with "every member in Al-Faqassi's cell associated with Abu Ali" was attached as Exhibit B to the Government's Position on Sentencing, submitted to the court in Ahmed Abu Ali's criminal trial on Feb. 10, 2006. Ex. A at 6.

134. The memorandum is a record maintained by the FBI. Id.

135. The memorandum is in the public domain.

136. An email from Michael A. Mason, Assistant Director in Charge, Washington Field Office, to Janine Ali, dated May 12, 2004, with the subject, "Ahmed Abu Ali follow up," in which Mr. Mason states, "this office has no further interest in Mr. Abu Ali's detention" was attached to Ahmed Abu Ali's Motion for Release on Bond and Revocation of Magistrate Pretrial Detention Order submitted to the court in Ahmed Abu Ali's criminal case on Sept. 14, 2005. Ex. A at 4.

137. This email is the same email "from a high-ranking FBI official" referenced in the letter from Gary M. Bald to Congressman Tom Davis, released to plaintiff by the FBI. Ex. G to Pls. Opp. to Defs. Mot. for Summ. J., at 1.

138. During his detention in Saudi Arabia, Ahmed Abu Ali was the target of electronic surveillance by the FBI, in that his phone calls to his family were monitored and recorded by the FBI.

Case 1:05-cv-01094 (RBW)

139. The FBI's maintains information on all subjects whose electronic and/or voice communications have been intercepted by the FBI.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on September 27, 2006 in Charlottesville, Virginia.

Respectfully Submitted,

Elisabeth Kidder
2587 Hydraulic Road Apt C
Charlottesville, VA 22901