1:05cv1094 (rbw)                    Exhibit B to Pls. Opp. to Defs. Mot. for Summ. J.

# EXHIBIT B

Copyright 2005 The New York Times Company
The New York Times

November 23, 2005 Wednesday
Late Edition - Final

SECTION: Section A; Column 1; National Desk; THREATS AND RESPONSES: THE VIRGINIA CASE; Pg. 20

LENGTH: 825 words

HEADLINE: Student From Virginia Is Convicted of Plotting With Al Qaeda to Assassinate Bush

BYLINE: By DAVID STOUT; Eric Lichtblau contributed reporting for this article.

DATELINE: WASHINGTON, Nov. 22

BODY:

An Arab-American student from Virginia was convicted Tuesday of plotting with operatives of Al Qaeda to assassinate President Bush and hijack airplanes.

The Justice Department has seen the trial as an important test of its ability to use foreign intelligence sources for a criminal case in an American court.

The student, Ahmed Omar Abu Ali, was convicted on numerous charges of conspiracy to commit acts of terrorism. The federal jury, in Alexandria, Va., rejected Mr. Abu Ali's account that after he was arrested in Saudi Arabia in 2003, his captors beat and tortured him into confessing.

Mr. Abu Ali, 24, an American citizen who was born to a Jordanian father and grew up in Northern Virginia, faces the possibility of life in prison when he is sentenced by Judge Gerald Bruce Lee of Federal District Court on Feb. 17.

The Justice Department described Mr. Abu Ali before the trial as ''one of the most dangerous terrorist threats that America faces in the perilous world after Sept. 11, 2001: an Al Qaeda operative born and raised in the United States, trained and committed to carry out deadly attacks on American soil.''

Paul J. McNulty, the United States attorney for the Eastern District of Virginia, said after the verdict that Mr. Abu Ali had posed ''a grave threat to our national security.'' Mr. McNulty said that the defendant had scouted nuclear plants in the United States at the behest of his Qaeda confederates, and that the hijacking plot he engaged in was ''substantially similar to the Sept. 11, 2001, attacks.''

But no evidence was presented to show that any plot had reached an operational stage. The defense said Mr. Abu Ali was just an American student who had gone to Saudi Arabia to pursue his religious studies.

Case 1:05-cv-01094-RBW    Document 29-4    Filed 09/27/2006    Page 2 of 3

1:05cv1094 (rbw)                                    Exhibit B to Pls. Opp. to Defs. Mot. for Summ. J.

''If he's the most dangerous guy they have, then we're very lucky,'' the defense lawyer John K. Zwerling said early on, ''because I don't believe he's very dangerous at all.''

Another defense lawyer vowed to appeal. ''Obviously, the jury has spoken, but the fight is not over,'' the lawyer, Khurrum Wahid, told The Associated Press. ''We intend to use the justice system to prove our client's innocence.''

Prosecutors maintained that Mr. Abu Ali went to Saudi Arabia in 2002 with the idea of becoming a terrorist because he saw President Bush as ''the leader of the infidels'' and that he eventually met a high-ranking leader of Al Qaeda. Mr. McNulty said terrorists trained the defendant in weapons, explosives and document forgery.

Mr. Abu Ali was arrested at a university in Medina in June 2003 as the Saudi authorities were investigating a wave of bombings. What happened next is at the heart of the case.

Prosecutors said Mr. Abu Ali willingly confessed to joining Al Qaeda and engaging in various terrorist plots, including one to personally kill the president. Defense lawyers suggested that their client was falsely implicated by terrorists to protect cell members still at large, and that Saudi security forces extracted a confession after brutalizing him for 40 days.

Mr. Abu Ali testified in a pretrial hearing that his captors repeatedly whipped his back, kicked him in the stomach and yanked on his beard to obtain a videotaped confession in which he said he joined Al Qaeda because he hated the Untied States for its support of Israel. (Mr. Abu Ali did not testify at the trial.)

Prosecutors called his account of torture fabrication. They quoted from telephone conversations Mr. Abu Ali had with his parents in Virginia while he was in Saudi custody. ''I am very healthy,'' prosecutors quoted him as saying. The prosecutors also offered accounts from Saudi officers, who said that they had treated the prisoner well and that he had talked voluntarily.

Mr. Abu Ali was held in Saudi Arabia until February, when he was brought to the United States. He was indicted soon afterward.

Judge Lee rejected a defense move to keep the confession out of the trial, although he allowed Mr. Abu Ali's lawyers to bring up the accusations of torture. Two doctors who examined the defendant testified that they believed he had been tortured. But two other doctors, testifying for the prosecution, said they had reached opposite conclusions.

In an unusual arrangement, the judge allowed the jury to hear taped depositions from Saudi officials about the incriminating statements that they say Mr. Abu Ali made. The taped testimony, including questioning by prosecutors and defense lawyers, was necessary because the Saudi government refused to make the officials available for live testimony in Virginia.

The Justice Department said in court papers that agents of the Federal Bureau

1:05cv1094 (rbw)                                    Exhibit B to Pls. Opp. to Defs. Mot. for Summ. J.

of Investigation first interviewed Mr. Abu Ali in September 2003 for four days. ==Because their intention at the time was to gather intelligence rather than build a criminal case, the F.B.I. agents did not read him the Miranda warnings, nor did they stop questioning him once he asked for a lawyer, prosecutors said.==

URL: http://www.nytimes.com

LOAD-DATE: November 23, 2005