**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ELISABETH T. KIDDER,                                )
                                                    )
                          Plaintiff,                )
                                                    )
              v.                                    )       No. 05-CV-01094 (RBW)
                                                    )
FEDERAL BUREAU OF INVESTIGATION, <u>et al.</u>,     )
                                                    )
              Defendants.                           )
_____    )

**DEFENDANTS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

I.      **The FBI Conducted An Adequate Search for Responsive Records**

        A.      **The FBI Has Searched Using All of the Variants Identified By Plaintiff**

        Plaintiff contends that defendants failed to conduct a reasonable search for records

responsive to her FOIA request because they did not search the different variants of Mr. Abu

Ali's name that plaintiff identified by reviewing the record of the criminal case against Mr. Abu

Ali.  Mem. of Points and Auths. in Opp. to Defs' Mot. for Summ. J. ("Pl. Opp.") at 10.  The FBI,

however, has no obligation to review all of its records to identify alternate names or spellings by

which an individual might be known, and plaintiff cites no support for her contention to the

contrary.  Indeed, such an obligation would place an undue burden on the agency, as it would

require it, in every case, to painstakingly review every page of every responsive record in an

effort to determine if that record reveals any alternate spellings or aliases, conduct another search

using any such names, again review every page for additional alternate spellings or aliases, and

so on, until it identified no more alternate spellings or aliases.  But FOIA imposes no such

obligation on an agency.  Instead, the agency is only obligated to conduct a search for records

based on the information provided by a requestor.  5 U.S.C. § 552(a)(3) (request must

"reasonably describe" records being sought); 28 C.F.R. § 16.3(b); <u>Voinche v. FBI</u>, 412 F. Supp.

2d 60, 66 (D.D.C. 2006) ("it was perfectly reasonable for the FBI to conduct a search for all

documents relating to names . . . identified in his request, as this search would arguably uncover

no less than the full amount of information Voinche was seeking").  If plaintiff wished to have

the FBI search for records using such aliases, she could have so requested in her FOIA request.

In any event, the FBI has now searched its CRS index using all of the variants identified

by plaintiff in her opposition.  <u>See</u> Fifth Declaration of David M. Hardy ("Fifth Hardy Decl."),

¶ 5, attached hereto as Exh. A.  Such a search identified no additional responsive records.  <u>Id.</u>

### B.    The FBI Did Not Impermissibly Limit the Scope of Its Hand Search

Plaintiff raises two objections to the hand search conducted by the FBI: (1) that

defendants have not identified the individuals who were asked to conduct the search, and (2) that

defendants limited the scope of the hand search to those records that would "normally be

uploaded or serialized into the Central Records System."  Pl. Opp. at 11.  As an initial matter, it

should be noted that the FBI had no obligation to conduct a hand search at all; it has been

repeatedly recognized that a search of the Bureau's Central Records System ("CRS") constitutes

a reasonable search for responsive records.  <u>See, e.g.</u>, <u>Smith v. FBI</u>,  – F. Supp. 2d –, 2006 WL

2671370 (D.D.C. Sept. 19, 2006) ("The CRS is FBIHQ's typical tool for responding to FOIA

requests"); <u>Voinche</u>, 412 F. Supp. 2d at 66 (search of CRS is reasonable); <u>Piper v. U.S. Dept. of

Justice</u>, 294 F. Supp. 2d 16, 22-23 (D.D.C. 2003) (same).

Nor do any of plaintiffs' complaints have merit.  With respect to the first complaint, there

is no rule requiring the agency to identify by name the individuals who were asked to conduct a

search for responsive documents.[1]  The Fourth Hardy Declaration is entitled to a presumption of

good faith with respect to the scope of the hand search and other issues, and plaintiff has not

"point[ed] to evidence sufficient to put the Agency's good faith into doubt."  Ground Saucer

Watch, Inc. v. C.I.A., 692 F.2d 770, 771 (D.C. Cir. 1981).

    With respect to plaintiff's second complaint, as explained in the attached Fifth Hardy

Declaration, the hand search was intended to identify any responsive documents that had not yet

been serialized and uploaded into the CRS.  It was for this reason that the headquarters personnel

identified as likely to have records responsive to plaintiff's request were asked to search for those

records that would normally be serialized and uploaded.  Fifth Hardy Decl., ¶ 6.  That the hand

search was reasonably calculated to identify responsive records is evident by the fact that it led to

the identification of the bulk of the records responsive to plaintiff's request – the Laboratory file

and the multi-volume Legat Riyadh file.  Because the hand search was not required in the first

instance, the limitation that plaintiff complains about is not a proper basis to find the search

unreasonable.  That is, because, as noted above, a search of the CRS index alone would have

been reasonable, any *additional* search efforts by the FBI cannot undo or detract from the

reasonableness of the search.  A holding to the contrary would serve to dissuade agencies from

taking additional steps to ensure that all responsive documents are identified, for fear that those

additional steps would then be a basis for finding the agency's search unreasonable.

    In any event, the FBI has now gone back to the individuals previously identified as likely

to have responsive records and asked them whether they have any records regarding Mr. Abu Ali,

---

[1] Indeed, these individuals' names themselves would likely be exempt from disclosure under FOIA pursuant to Exemptions 6 and 7(C).  Fifth Hardy Decl., ¶ 8.

regardless of whether such records would normally be serialized or uploaded into CRS.  Id., ¶ 7.

To date, at least one such individual has indicated that he may have additional responsive records

in his possession.  Id.  Once the FBI identifies the scope of any responsive records, defendants

will promptly file a declaration with the Court setting forth the anticipated time frame for

completion of the processing of any such records.  Id.

### C.    The FBI Had No Obligation to Search the Washington Field Office

Plaintiff also contends that defendants had an obligation to search for responsive records

at the FBI's Washington Field Office (WFO), Pl. Opp. at 11-16, notwithstanding the Department

of Justice ("DOJ") regulation expressly stating that "[f]or records held by a field office of the

Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI . . . field office

address," 28 C.F.R. § 16.3(a).  See Statement of Points and Auths. in Support of Defs' Mot. for

Summ. J. ("Defs. SJ Brief") at 10-12.  None of plaintiff's arguments in this regard are persuasive.

### 1.    The DOJ Regulation is Not Unreasonable

Apparently recognizing that the plain language of the DOJ regulation completely

undermines her claim that the FBI had an obligation to search for records at WFO, plaintiff

argues that the "DOJ's FOIA regulations are unreasonable as applied to" her.  Pl. Opp. at 12.

This argument must be rejected for several reasons.

First, this Court lacks jurisdiction to review the reasonableness of the DOJ's regulations

in the context of this FOIA lawsuit.  FOIA is a statute of limited jurisdiction, authorizing the

Court to "enjoin the agency from withholding agency records and . . . order the production of any

agency records improperly withheld. . . ." 5 U.S.C. § 552(a)(4)(B).  "Under 5 U.S.C.

§ 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has

(1) 'improperly' (2) 'withheld' (3) 'agency records.'" Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980). "Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." Id. See also United States Dept. of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989). As plaintiff has not separately challenged the regulation in her Complaint under the APA, or otherwise invoked this Court's jurisdiction to entertain such a challenge, this aspect of plaintiff's argument should be rejected.

In any event, plaintiff's argument is entirely unconvincing. First, her claim that the "language" of the regulation indicates that the regulation "is meant to apply only to those requestors who know that records are held by a particular FBI filed office," Pl. Opp. at 12-13, is entirely unsupported by the actual language of the regulation, which makes no such distinction.

Similarly, her argument that when she made her request she could not know which field office to direct her request to because the FBI's involvement in the case had not been made public, id., ignores the fact that because the FBI's role was not public, she was entitled to *no* records in response to her request, regardless of where it was directed. As explained in the first Declaration of David M. Hardy, dated March 29, 2006,[2] when a FOIA requestor seeks information about a third party for whom no Privacy Act waiver or proof of death is provided, the FBI generally neither confirms nor denies the existence of responsive records, out of a respect for the individual's privacy (and in keeping with the requirements of the law). See [First] Declaration of David M. Hardy, ¶ 12. Indeed, this is the very response that plaintiff initially

---

[2] The first Hardy Declaration was attached most recently as Exhibit 1 to the Fourth Hardy Declaration, which itself was filed in support of Defendants' Motion for Summary Judgment.

received to her FOIA request.  Id.  It was only because Mr. Abu Ali was subsequently indicted,

tried and convicted, and the FBI's role in the investigation was publically acknowledged that,

upon the filing of the instant lawsuit, the FBI initiated a search for responsive records at all.  Id.,

¶ 15.  Plaintiff, of course, was aware of Mr. Abu Ali's public criminal trial in Alexandria,

Virginia, and could have submitted a FOIA request to WFO once Mr. Abu Ali's indictment was

made public.[3]  That the FBI had not confirmed its involvement in the case when plaintiff made

her request, therefore, in no way excuses plaintiff from complying with the DOJ regulation.

Nor does plaintiff's reliance on the FBI's FOIA Website excuse her compliance with the

regulation.  See Pl. Opp. at 13.  First, the mere failure of an agency to include all relevant legal

and regulatory provisions on a Website cannot serve to excuse compliance with the law.  Second,

the very "FOIA Request Form" that plaintiff downloaded from the Website and used to make her

request states in underlined, bold text that "**This form cannot be used for Privacy Act requests

or requests for information about a third party.**"  See Pl. Opp., Exh. E (blank form); Pl. Mot.

for Summ. J. (docket no. 12), Exh. A (plaintiff's FOIA request).  Plaintiff nevertheless went

ahead and used this form to request information about a third party.  Having blatantly disregarded

the instructions on the form she downloaded from the Website, plaintiff should not now be heard

to argue that the absence of additional instructions on that Website somehow excuse her from

complying with the law.  Finally, plaintiff is mistaken that the Website fails to alert users to the

requirement that requests for records held by field offices must be directed to those offices.  Just

---

[3] WFO's geographic area of responsibility includes much of northern Virginia, including Alexandria, Virginia.  See <http://www.fbi.gov/contact/fo/territory.htm> (listing field office jurisdictions).  See also <http://washingtondc.fbi.gov/dojpressrel/pressrel05/wfousa112205.htm> (FBI press release noting WFO involvement in Abu Ali investigation).

two links from the FBI FOIA home page take a user to the "Where to Make a FOIA Request"

section of the DOJ's FOIA Reference Guide, which clearly states that: "In almost all cases, you

should send your FOIA request to a component's central FOIA office. *For records held by a*

*field office of the Federal Bureau of Investigation (FBI), however, you must write directly to that*

*FBI office*." (emphasis added).[4]  Far from excusing her compliance with the regulation, therefore,

the Website actually provided the very information plaintiff now complains about.

### 2.    The FBI Has Not Incurred An Obligation to Search WFO

Relying on <u>Kowalczyk v. Department of Justice</u>, 73 F.3d 386 (D.C. Cir. 1996), plaintiff

argues that because the headquarters documents responsive to her request suggested that

additional records regarding Mr. Abu Ali might be located at WFO, the FBI "incurred th[e]

obligation" to search WFO in response to her request.  Pl. Opp. at 14-16.  As noted in

Defendants' Motion for Summary Judgment, <u>Kowalczyk</u> imposes no such obligation.  <u>See</u> Defs.

SJ Brief at 11-12.  Rather, <u>Kowalczyk</u> held that only if the requestor "*clearly states* that he wants

all agency records on a subject, *i.e., regardless of their location*," is an agency obligated to search

other locations where it knows responsive documents may be found.  <u>Kowalczyk</u>, 73 F.3d at 389

(emphasis added).  Plaintiff's request, of course, does not so clearly state, as it makes no

reference at all to the locations she wishes to have searched.  That plaintiff's request sought "all

records" concerning Mr. Abu Ali, Pl. Opp. at 15, does not change this conclusion.  Indeed, the

---

[4] By clicking on the link for the "DOJ Reference Guide" on the right hand side of the screen at the FBI's FOIA homepage (<http://foia.fbi.gov/>, attached as Exh. H to Pl. Opp.), a user is directed to a table of contents containing, <u>inter alia</u>, a link labeled "Where to Make a FOIA Request."  <u>See</u> <http://www.usdoj.gov/oip/04_3.html>.  Clicking on that link takes the user to a description of where FOIA requests for DOJ components should be directed, containing the language quoted above. <u>See</u> <http://www.usdoj.gov/oip/referenceguidemay99.htm#where>.

request at issue in <u>Kowalczyk</u> similarly sought "all records in agency files," <u>Kowalczyk</u>, 73 F.3d at 388, yet the court held that the FBI had no obligation to search its field offices.

As noted in defendants' opening brief, in so holding the court stated:

> [i]f the agency may reasonably interpret the request to be for records in a specific office or offices only – [such as] the office to which the request was sent . . . – then upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them.

<u>Id.</u> at 389 (<u>quoted</u> in Defs. SJ Brief at 11). Addressing the very situation at hand, the <u>Kowalczyk</u> court noted further that "if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request." <u>Id.</u> For whatever reason, plaintiff has chosen not to follow the Court of Appeals' suggestion. <u>See</u> Pl. Opp. at 11 (recognizing prior suggestions by defendants that plaintiff file another request).

The holding in <u>Kowalczyk</u> (the only case upon which plaintiff relies) was that no field office search was required in that case. The court reached this conclusion without referencing or addressing the applicability of the regulation that specifically requires that field office requests be directed to the field offices, or the concomitant statutory language that limits agency FOIA obligations to those FOIA requests "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed," 5 U.S.C. § 552(a)(3)(A). Other courts have reached the same conclusion – no field office search required – in reliance on the regulation.

Indeed, even where a plaintiff has specifically requested that the FBI search its field offices, this Court has held that no such search is required in light of the DOJ regulation:

> The FBI regulations require FOIA requesters seeking records from field offices to write directly to the respective field office. And, the FBI informed plaintiff of that fact. It had no statutory obligation to proceed with a search of all of its field

offices, and the Court cannot compel such a search where, as here, the record lacks any evidence of agency bad faith.

Maydak v. U.S. Dept. of Justice, 254 F. Supp. 2d 23, 44-45 (D.D.C. 2003).  See also Ray v. FBI, 441 F. Supp. 2d 27, 32 (D.D.C. 2006) (holding "the FBI is not obligated to undertake a search of its field offices' records when a requester submits his request only to its headquarters;" "[i]f plaintiff wants records that may be maintained in FBI's . . . Field Office, he is free to submit a new FOIA request directly to that office") (citing cases); Biberman v. FBI, 528 F. Supp. 1140, 1144 (S.D.N.Y. 1982) (affirming FBI refusal to search field offices); cf. Church of Scientology v. I.R.S., 792 F.2d 146, 150 (D.C. Cir. 1986) (affirming refusing to search IRS regional offices per IRS regulations) (Scalia, J.).  This aspect of plaintiff's challenge, therefore, must also be rejected.

### D.    The FBI Has Now Searched Its ELSUR Index and All Responsive Records Are Exempt from Disclosure Pursuant to Exemption 7(A)

Plaintiff also contends that the FBI's search for records was inadequate because the FBI had not searched its ELSUR (electronic surveillance) index for responsive records.  Pl. Opp. at 16-17.  As set forth in the attached Fifth Declaration of David M. Hardy, the FBI has now searched the ELSUR index for responsive records at FBI headquarters.  Fifth Hardy Decl., ¶ 13.[5] All the responsive records identified from that search are exempt from disclosure pursuant to

---

[5] Defendants do not concede that the FBI had an obligation to search the ELSUR index in response to plaintiff's request.  Plaintiff did not expressly ask for such a search in her request, and she has not identified any information the FBI identified as a result of the CRS search that would have led it to conclude that responsive records might be located through an ELSUR search.  See generally Campbell v. U.S. Dep't. of Justice, 164 F.3d 20, 27-28 (D.C. Cir. 1998) (discussing when ELSUR search is warranted).  The Court need not reach this issue, however, because, as discussed in the text, defendants have now conducted an ELSUR search.

FOIA Exemption 7(A).  Id., ¶¶ 14-24; see also id. ¶¶ 9-12 (describing ELSUR generally).[6]

As set forth in the attached Fifth Hardy Declaration, the ELSUR records responsive to plaintiff's FOIA request were compiled during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States.  Id., ¶¶ 16-17.  As discussed in defendants' opening brief and below, the information was therefore compiled for a law enforcement purpose.

The ELSUR records themselves consist of printouts of electronic versions of the ELSUR "cards" maintained in the ELSUR system.  Id., ¶ 18.  Each printout relates to surveillance of a particular phone number, email address, etc., and identifies, among other things, the name of the subscriber or proprietor of the system subject to the surveillance, the legal authority for the surveillance, the names of the judge who authorized the surveillance and the attorneys involved in requesting such authorization, the dates for which surveillance was initially authorized, and, if applicable, the dates such surveillance was extended and/or reinstated, the type of device used to conduct the surveillance, and a remarks field that allows for entry of remarks, including comments regarding the geographic location of the surveillance.  Id.  All of the ELSUR records at issue are classified at the Secret level.  Id.

Because the investigation pursuant to which these records were compiled is still open, and Mr. Abu Ali's criminal appeal is pending, the release of any information from the ELSUR records could reasonably be expected to interfere with potential criminal law enforcement

---

[6] In addition, these records are likely exempt pursuant to Exemptions 1, 6, and 7(C).  Fifth Hardy Decl., ¶ 13 n.5.  Pursuant to the Court's June 29, 2006 Order (entered on July 6, 2006), defendants reserve the right to assert and support these additional applicable exemptions in the event the Court rejects the applicability of Exemption 7(A).

proceedings against Mr. Abu Ali and/or others.  Id., ¶¶ 19-20.  The  release of the ELSUR

records would reveal the scope, focus, location, target and capabilities of the FBI's intelligence

gathering techniques and allow hostile agents to devise countermeasures to circumvent them and

render them useless in providing intelligence information.  Id., ¶ 21.  This would severely disrupt

the FBI's intelligence gathering capabilities, and could reasonably be expected to cause serious

damage to the national security and severely damage the FBI's efforts to detect and apprehend

violators of the United States' national security and criminal laws.  Id.

       In addition, release of the ELSUR records could reasonably be expected to lead to the

following potential harms: (a) the identification of individuals who possess information relative

to the investigations and possible harm to, or intimidation of, these individuals; (b) the use of

released information to counteract evidence developed by investigators, alter or destroy potential

evidence, or create false evidence; (c) the use of released information by any subject of the

investigation to assess the likelihood that he or she may be prosecuted and/or convicted in

connection with this investigation; and (d) the identification of locations in the United States, as

well as foreign countries, where the FBI is focusing the investigation and collection of

investigative and source material.  Id., ¶ 22.  Because the ELSUR records were compiled for a

law enforcement purpose and their release could reasonably be expected to interfere with

enforcement proceedings, the records are exempt from disclosure.  5 U.S.C. § 552(b)(7)(A).

## II.    The FBI Properly Withheld Records Pursuant to Exemption 7(A)

       Plaintiff asserts various challenges to the applicability of Exemption 7(A) to the other

records withheld in this case.  Each of these challenges is addressed below.

A.      **The Hardy Declaration Is Admissible**

Plaintiff's first argument is that the Declaration of David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS") within the Records Management Division, is insufficient to sustain defendants' motion for summary judgment because Mr. Hardy allegedly lacks the requisite "personal knowledge" to attest to (a) the fact that the withheld records were compiled during the FBI's investigation of Mr. Abu Ali, (b) the current status of that investigation, and (c) the likely harm that would result from release of the records.  Pl. Opp. at 19-20.  This argument should be summarily rejected.

The nature of the FOIA requires certain employees to gather information and documentation from various agency personnel and use that information to respond to FOIA requests and justify exemptions.  It is impracticable, and in most cases impossible, for an agency to proffer testimony from every single individual in that agency who assists in responding to a search or justifying an exemption.  Government agencies would come to a grinding halt if each of these individuals was required to provide testimony regarding his role in the comprehensive FOIA process.  For this reason, courts have routinely permitted submission of declarations by an agency's FOIA coordinator that contain reliable statements derived from personal knowledge and not based on speculation, even though some information may come from other sources.  See, e.g., SafeCard Servcs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991) (individual "in charge of coordinating the SEC's search and recovery efforts [was] most appropriate person to provide a comprehensive affidavit");  Meeropol v. Meese, 790 F.2d 942, 951 (D.C. Cir. 1986) (approving reliance upon affidavit of agency employee responsible for supervising search, although he necessarily relied upon information provided by staff members who actually

performed search); <u>Carney v. U.S. Dept. of Justice</u>, 19 F.3d 807, 814 (2nd Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."); <u>Maynard v. CIA</u>, 986 F.2d 547, 560 (1st Cir. 1993) ("affidavit of an agency employee responsible for supervising the search. . . . although partly second-hand . . . sufficient to satisfy the government's burden"); <u>Spannaus v. United States Dep't of Justice</u>, 813 F.2d 1285, 1289 (4th Cir. 1987) (declarant who "attested to his personal knowledge of the procedures used in handling [the FOIA] request and his familiarity with the documents in question. . . . . demonstrated ample personal knowledge to render him competent to testify regarding the interference posed by disclosure."); <u>Western Center for Journalism v. IRS</u>, 116 F. Supp. 2d 1, 9 (D.D.C. 2000); <u>Kay v. FCC</u>, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), <u>aff'd</u>, 172 F.3d 919 (D.C. Cir. 1998) (table); <u>Cucci v. DEA</u>, 871 F. Supp. 508, 513 (D.D.C. 1994); <u>Laborers' Int'l Union of North Amer. v. DOJ</u>, 578 F. Supp. 52, 56 (D.D.C. 1982).

This long line of authority demonstrates that the Fourth Hardy Declaration meets the requirements of both the statute and Rule 56(e). As the Declaration makes clear, Mr. Hardy's duties as the Section Chief of RIDS include supervision of those employees charged with planning, developing, directing, and managing responses to FOIA requests. Fourth Hardy Decl., ¶ 2. Due to the nature of his duties, Mr. Hardy is familiar both with the FBI's general procedures for processing FOIA requests, and with the processing of plaintiff's request. <u>Id.</u>, ¶ 3. Mr. Hardy's declaration is made on personal knowledge, including information made available to him in his official capacity as the Section Chief of RIDS. <u>Id.</u>, ¶ 2. It also contains the conclusions and determinations he reached on behalf of the FBI as part of his official duties. <u>Id.</u>

13

Plaintiff's assertion that because Mr. Hardy was not involved in the FBI's investigation of Mr. Abu Ali, he cannot attest to the fact that all of the withheld records were compiled "during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others," id., ¶ 26, see Pl. Op. at 19, cannot withstand scrutiny.  Applying plaintiff's logic, the only individual who could attest to the purpose for which a record was compiled is the individual who created or compiled the record, and who would have "firsthand knowledge" about the record.  Id.  In a case such as this, the FBI would be required to submit the declarations of possibly dozens of individuals to establish the rather straightforward proposition that the documents contained in the legal attache's files and the Laboratory file were compiled as part of the FBI's law enforcement duties. See Fourth Hardy Decl., ¶¶ 27-28.  Such a requirement would be unworkable, and is not required by the law.  Rather, it is perfectly acceptable for FOIA declarations to contain "second-hand" information that the declarant learned from other government officials in the course of his duties, see Maynard, 986 F.2d at 560 ("partly second-hand" declarations "are sufficient to satisfy the government's burden"); Public Citizen, Inc. v. Dep't of State, 100 F. Supp. 2d 10, 26 n.11 (D.D.C. 2000) ("declaration is acceptable, even though based, by necessity, upon second-hand information gathered from other employees"), or from his familiarity with the nature of the organization's functions, see Schrecker v. DOJ, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) ("Mr. Hodes in his present capacity is a representative of the FBI and is able to relay information regarding the activities of the FBI. . . .  Mr. Hodes is responsible for the FBI's compliance with FOIA litigation and is therefore not merely speculating about the FBI's activities.").  Just as in the search context "there is no need for the agency to supply affidavits from each individual who participated in the actual search," Carney, 19 F.3d at 814, so too in this context there is no need

14

to supply declarations from each individual who created or compiled each record to attest to the law enforcement purpose underlying the record's creation or compilation.

Plaintiff's argument that Mr. Hardy has no personal knowledge of the status of the FBI's investigation, Pl. Opp. at 20, should be rejected for similar reasons.  As the FBI's representative responsible for the agency's FOIA compliance, Mr. Hardy is competent to "relay information regarding activities of the agency."  Schrecker, 217 F. Supp. 2d at 35.

The same is true with respect to Mr. Hardy's competence to testify as to the likely impact of disclosure of the records.  See Pl. Opp. at 20.  As the FBI official responsible for overseeing the agency's compliance with FOIA, and based on his familiarity with the FBI's operations generally and plaintiff's FOIA request specifically, Mr. Hardy is clearly competent to testify as to the likely harm from disclosure.  Based on his "personal knowledge of the procedures used in handling [plaintiff's] request and his familiarity with the documents in question[,] [h]e has . . . demonstrated ample personal knowledge to render him competent to testify regarding the interference posed by disclosure" for purposes of Exemption 7(A).  Spannaus, 813 at 1289; see also Lion Raisins Inc. v. USDA, 354 F.3d 1072, 1080 (9th Cir. 2004) (declaration regarding harm from disclosure in Exemption 4 context); Berman v. CIA, 378 F. Supp. 2d 1209, 1216 n.7 (E.D. Cal. 2005) (same in Exemption 3 context).  Indeed, not only is Mr. Hardy's declaration admissible, it is entitled to particular deference.  See Defs. SJ Brief at 16.

Plaintiff's contention that unspecified "case law of this circuit" (which she does not cite) renders Mr. Hardy's declaration inadmissible, Pl. Opp. at 20, is simply incorrect.

**B.        The Records At Issue Were Compiled for a Law Enforcement Purpose**

Plaintiff asserts that because FBI agents testified at Mr. Abu Ali's criminal trial that when they questioned Mr. Abu Ali in Saudi Arabia they were seeking information for intelligence gathering purposes as opposed to seeking to develop information for a criminal prosecution, the information gathered by the FBI that was not ultimately used at trial was not gathered for a law enforcement purpose.  Pl. Opp. at 20-24.  Plaintiff's argument in this regard conflates two different concepts – a criminal investigation for purposes of <u>Miranda</u> warnings and a "law enforcement purpose" under the FOIA.  Treating these two different concepts as one and the same, plaintiff argues that because at least some of the information in the FBI's possession was initially gathered for intelligence, as opposed to criminal, purposes, that information was not gathered for a "law enforcement purpose."

The flaw in plaintiff's reasoning, however, is that the FBI's intelligence gathering functions qualify as "law enforcement" activities.  The D.C. Circuit has recently made clear that information gathered as part of the FBI's counter-terrorism investigations satisfies the requirement of Exemption 7(A) that the material be compiled for a law enforcement purpose:

> Because the DOJ is an agency specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference.  To establish a law enforcement purpose, DOJ's declarations must establish (1) a rational nexus between the investigation and one of the agency's law enforcement duties; and (2) a connection between an individual or incident and *a possible security risk or* violation of federal law.  The government's proffer easily meets this standard. The terrorism investigation is one of DOJ's chief "law enforcement duties" at this time, see Reynolds Decl. ¶ 2, and the investigation concerns a heinous violation of federal law as well as *a breach of this nation's security.*   Moreover, the names of the detainees and their connection to the investigation came to the government's attention as a result of that law enforcement investigation. Reynolds Decl. ¶ ¶ 2-5.

<u>Center for Nat'l Sec. Studies v. DOJ</u> ("CNSS"), 331 F.3d 918, 926 (D.C. Cir. 2003) (emphasis

added) (internal quotations and citations omitted).  See also Fourth Hardy Decl., ¶ 27 (FBI's law

enforcement duties include preventing and deterring terrorist attacks against the United States). [7]

### C.    Defendants Have Met Their Burden to Justify Withholding the Records

The Fourth Hardy Declaration sets forth the various functional categories of information

contained in the responsive records and the basis for the FBI's conclusion that release of such

information could reasonably be expected to interfere with enforcement proceedings.  Fourth

Hardy Decl., ¶¶ 35-46; see also id., ¶¶ 28, 31-34.  Courts have upheld the applicability of

Exemption 7(A) to the very types of records at issue here, based on the same harms asserted here.

See, e.g., Cucci, 871 F. Supp. at 511-12; see also Curran v. Dep't of Justice, 813 F.2d 473, 476

(1st Cir. 1987).  Plaintiff nevertheless challenges the sufficiency of defendants' showing in this

regard.  Pl. Opp. at 24- 29.  As discussed below, plaintiff's challenge should be rejected.[8]

Plaintiff first challenges defendants' assertion that the release of confidential source

statements is likely to interfere with any future proceedings in Mr. Abu Ali's criminal case or

other law enforcement proceedings arising out of the investigation.  Fourth Decl., ¶ 38; Pl. Opp.

---

[7] Plaintiff's argument also conflates the different parts of Exemption 7(A).  Thus, she appears to focus on whether or not a law enforcement *proceeding* was contemplated or likely at the time the information was collected.  See, e.g., Pl. Opp. at 22.  The question of the pendency or likelihood of an enforcement *proceeding*, however, is only relevant to the second part of the 7(A) analysis (i.e., whether disclosure could reasonably be expected to interfere with such a proceeding); the first part of the analysis focuses solely on whether the information was compiled for a law enforcement *purpose* (i.e., regardless of whether a proceeding was contemplated at the time).  The only case cited by plaintiff supports this distinction, as it speaks of the circumstances under which the files "were compiled" (in the past tense) and whether the files "relate" (in the present tense) to an enforcement proceeding.  See Jefferson v. Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (cited in Pl. Opp. at 20).

[8] Many of plaintiff's arguments rely, in part, on her erroneous assertion that the information at issue is part of the public record.  That argument is addressed separately below.

at 24-26.  In this regard, plaintiff erroneously asserts that confidential source statements can only

be withheld pursuant to Exemption 7(D), and not Exemption 7(A), and bases her argument on

Exemption 7(D).  Id. at 24-25.  Plaintiff cites no support for this proposition, and nothing in

either the statute of the caselaw that precludes the applicability of Exemption 7(A) to such

information in appropriate circumstances.  Indeed, it is common for more than one FOIA

exemption to apply to the same information.  Plaintiff's challenge must therefore be rejected.

Next, plaintiff asserts that the identification of individuals as being of potential

investigative interest is not a proper basis for withholding information contained in exchanges of

information between various domestic and foreign government agencies, see Fourth Hardy Decl.,

¶ 39, because, she claims, Mr. Abu Ali's unindicted co-conspirators and the other members of

the terrorist cell associated with Mr. Abu Ali have been identified in the criminal case.  Pl. Opp.

at 26.  Making an unsubstantiated inferential leap, plaintiff equates these identified individuals

with all potential persons of investigative interest whose identities might be contained in the

records at issue.  Id.  But there is no basis for plaintiff to reach such a conclusion or the

concomitant conclusion that the "identities of all 'potential targets' are in the public domain"  Pl.

Opp. at 27.  In addition, the Hardy Declaration also speaks of the potential harm that would arise

from the identification of witnesses and confidential sources whose identities are disclosed in the

records, Fourth Hardy Decl., ¶ 39; plaintiff's conclusory assertion that there is no basis for this

statement, Pl. Opp. at 27, is insufficient to undermine Mr. Hardy's declaration.

Plaintiff also challenges Mr. Hardy's assertion that he cannot describe the information

concerning documentary and physical evidence in detail because to do so would lead to the

identification of the evidentiary records and their sources.  Fourth Hardy Decl., ¶ 40; Pl. Opp. at

27.  Courts, however, have recognized the appropriateness of such discretion when the
"[p]rovision of . . . detail . . . would itself breach the dike" or the where "[t]he harm which the
exemption was crafted to prevent would be brought about in the course of obtaining [its] shelter."
Curran, 813 F.2d at 475.  In such circumstances, and when the entire declaration read as a whole
provides a basis for the invocation of the Exemption, it is entirely appropriate for the FBI to not
provide further detail about the material at issue.  Id. at 476.  The Fourth Hardy Declaration
makes clear that the material at issue consists of information concerning documentary and
physical evidence that "is pertinent and integral to" the ongoing investigation, and the release  of
which would likely be "detrimental to success of the pending and prospective prosecutions by
permitting subjects to formulate a strategy as to how the evidence could be contradicted."  Fourth
Hardy Decl., ¶ 40.  In the context of the remainder of the declaration, this assertion satisfies
defendants' burden under Exemption 7(A).

   Plaintiff also challenges the withholding of administrative materials by the FBI, arguing,
with respect to each subcategory of administrative materials, that Mr. Hardy has not specified
how release of the information could interfere with an enforcement proceeding.  Pl. Opp. at 28-
29.  She is mistaken.  See Fourth Hardy Decl., ¶ 41-46.  Mr. Hardy explains, with respect to the
entire category of "administrative materials" that their release would "reveal the investigative
interests of the FBI and could enable suspects to discern a 'road map' of the investigation."
Fourth Hardy Decl., ¶ 41.  He also explains with respect to "reporting communications"
specifically that their release would reveal investigative steps taken to obtain interviews,
investigative methods used to compile and solicit information, the perceived weaknesses in the
investigation, and the nature and scope of the investigation.  Id., ¶ 42.  Similarly, he describes

how the disclosure of "miscellaneous administrative documents" could provide information useful in identifying witnesses, investigative strategies and items of evidence, and how the release of "administrative instructions" would disclose specific investigative procedures and permit an individual to alter or negate incriminating evidence, id., ¶¶ 44-46.

Courts have routinely recognized these as precisely the types of harm that Exemption 7(A) is intended to prevent.  See, e.g., Solar Sources, Inc. v. United States, 142 F.3d 1033, 1039 (7th Cir. 1998) (records properly exempt under 7(A) where disclosure could have resulted in "revelation of the scope and nature of the Government's investigation"); Kay, 976 F. Supp. at 39 (7(A) applies because disclosure could reveal evidence and focus of investigation); Willard v. IRS, 776 F.2d 100, 103 (4th Cir. 1985) (affirming withholding of records that would reveal "the nature and scope of the investigation"); Moorefield v. Secret Service, 611 F.2d 1021, 1026 (5th Cir. 1980) (Exemption 7(A) properly invoked when release could "generally . . . inform targets of Service investigations of the means the Service employs to keep abreast of them"); Cucci, 871 F. Supp. at 511 (affirming withholding of administrative material similar to that at issue here).

**D.    Plaintiff Has Not Met Her Burden of Production to Demonstrate That Any Responsive Records Are in the Public Record**

Plaintiff argues that the FBI is improperly withholding records that were made public during Mr. Abu Ali's criminal trial.  Pl. Opp. at 29-31.  The burden is on plaintiff, however, to demonstrate that *specific* materials responsive to her request are in the public record.  Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999).  "To satisfy [her] burden, [plaintiff] must 'point[] to specific information in the public domain that appears to duplicate that being withheld.'"  Id.,

20

quoting Ashfar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983).[9]

In establishing that specific information has been disclosed, it is not enough for a plaintiff

to rely upon a list of evidence that the government intends to or might introduce at trial, for such

a list does no more than demonstrate that some of the material listed *might* have been publically

disclosed.  Thus, in Davis v. U.S Dep't of Justice, 968 F.2d 1276 (D.C. Cir. 1992), the D.C.

Circuit held that the requester's reliance on a "play list" of 163 excerpts of recordings that the

prosecutors had prepared for possible introduction into evidence was not sufficient to

demonstrate "exactly which tapes are transcribed in public documents."  Id. at 1278-80.  See also

Cottone, 193 F.3d at 554-55 (discussing and distinguishing Davis).[10]  Rather, a requester such as

plaintiff must "demonstrate precisely which" materials were admitted into evidence "in open

court."  Cottone, 193 F.3d at 555.  This can be accomplished by identifying those portions of the

trial transcript indicating that a particular record was in fact admitted into evidence (and not

sealed).  Id. (distinguishing the "play list" at issue in Davis and relying on trial transcript as basis

to conclude that certain specific recorded conversations were admitted into evidence).

Plaintiff fails to meet this demanding standard.  In an effort to establish that certain

records possibly responsive to her request are part of the public record, plaintiff relies exclusively

upon two government exhibit lists from the criminal trial of Mr. Abu Ali.  Pl. Opp. at 30 & Exhs.

C-D.  Yet these exhibit lists do not establish that any of the exhibits listed therein were actually

---

[9] It should be noted that the FBI did release to plaintiff all public source materials it
located as responsive to her request.  See Fourth Hardy Decl., ¶¶ 47-49.

[10] The Davis court also noted that "the government is in no better position than [a
requester] to establish exactly" what is part of the public record.  Davis, 968 F.2d at 1280.

proffered and admitted into evidence, and thereby made a part of the public record.[11]  Just as the

requester's reliance on the "play list" in Davis was deemed insufficient to establish that any

specific recordings listed on the play list were part of the public record, so too plaintiff's reliance

on the exhibit lists is insufficient to meet plaintiff's burden of demonstrating that specific

information she seeks has in fact been made part of the public record.[12]

### E.    No Reasonably Segregable Portions of Records Have Been Withheld

Plaintiff's final argument is that the FBI has not made a good faith effort to provide her

with reasonably segregable portions of the records at issue, arguing that defendants allegedly

"ma[d]e no attempt at a segregability analysis for any document."  Pl. Opp. at 31-32.  Plaintiff's

contention should be rejected for two separate reasons.

---

[11] Indeed, handwritten notations on one of the exhibit lists suggest that at least some of the exhibits were objected to and not admitted.  See Pl. Opp. Exh. C at 4.

[12] Even if plaintiff had produced a copy of the trial transcript identifying which exhibits were in fact admitted into evidence, she still would not have met her burden of production, as there is simply no basis to conclude that any of the exhibits listed on the exhibit lists are records maintained at FBI headquarters (as opposed to WFO or another government agency).  Rather than requiring defendants to search through the voluminous records identified as responsive to plaintiff's request in an effort to locate specific trial exhibits, it would be simpler for plaintiff to simply obtain copies of the materials at issue from the public record (i.e., the court file in the criminal case).  See Davis, 968 F.2d at 1279-80 (noting that Supreme Court "strongly suggested that a public domain rule such as ours is of little significance, because if a requester can establish that the information he seeks is '"freely available" there would be no reason to invoke the FOIA to obtain access to the information.'") (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 764 (1989)).  The Davis court did not address the continued validity of the public domain rule in light of Reporters Committee, because the government did not ask it to do so.  Davis, 968 F.2d at 1280.  In Davis and Cottone there was added value in the production of the FBI tapes at issue because those tapes had "the added value of voice inflection" missing from the transcripts of the recordings found in the public record.  Id.  Here, there would be no added value in the FBI providing plaintiff with a copy of the very same pieces of paper admitted at trial even if she met her burden of production and demonstrated that FBI headquarters records were in fact admitted into evidence at the criminal trial.

First, the Fourth Hardy Declaration expressly addresses the question of segregability:

The FBI has carefully examined the records at issue in this case and has determined that all of the information withheld regarding this pending investigation is exempt from disclosure *in its entirety* pursuant to FOIA Exemption 7(A). No additional releases are possible at this time without hindering the pending investigation.

Fourth Hardy Decl., ¶ 50 (emphasis added). See also id., ¶ 24 ("All records . . . were reviewed, document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA."). In addition, Mr. Hardy expressly concludes that "there is no additional reasonably segregable portion of any document or evidentiary material which can be released at this time." Id. As discussed above, Mr. Hardy's declaration is entitled to a presumption of good faith. Although plaintiff conclusorily asserts that defendants' segregability analysis demonstrates "bad faith," she provides no support for this conclusion.

In addition, plaintiff's focus on a document-by-document segregability analysis is misplaced in the Exemption 7(A) context. As discussed in defendants' opening brief, Defs. SJ Brief at 15-16, when invoking Exemption 7(A), an agency is not required to make a page-by-page or document-by-document showing that release of the document in question will result in particularized harm to a specific law enforcement proceeding. An agency may instead sustain an Exemption 7(A) claim by making "certain generic determinations," showing that "with respect to particular *kinds* of enforcement proceedings, disclosure of particular *kinds* of investigatory records while a case is pending would *generally* 'interfere with enforcement proceedings.'" National Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 224, 236 (1978) (emphasis added). Thus, all that is required is that responsive records be placed in distinct, generic categories, and that the harm that could result from release of such categories of

documents be identified. See, e.g., Spannaus, 813 F.2d at 1288; Solar Sources, 142 F.3d at 1037.

In light of the categorical nature of Exemption 7(A), a document-by document segregability analysis makes no sense. The basis for withholding records under Exemption 7(A) is that "disclosure of particular *kinds* of investigatory records" would "*generally*" interfere with "*particular kinds*" of enforcement proceedings. Robbins Tire, 437 U.S. at 224, 236 (emphasis added). There is thus no logical manner in which to review a particular document to determine whether any particular information contained therein could be released without causing harm, as the harm analysis is not focused on the release of any *specific* document. Courts have thus recognized that in those instances in which the FOIA allows for categorical withholding of certain kinds of records, no segregability anaylsis is required. Thus, for example, the D.C. Circuit has held that where a document is withheld as attorney work product pursuant to Exemption 5, no segregability analysis is required. Judicial Watch, Inc. v. Department of Justice, 432 F.3d 366 (D.C. Cir. 2005). Noting that pursuant to the work product doctrine, the entirety of any document prepared in anticipation of litigation is protected from disclosure under Exemption 5, the court held that "[i]f a document is fully protected . . . , then segregability is not required." Id. at 371. The very same logic applies here, where the records at issue are categorically exempt from disclosure based on the nature of the records, without regard to the specific information contained in the records. See also Church of Scientology, 792 F.2d at 152 ("If the IRS claims that a particular document is exempt from disclosure because it contains information . . . protected by Section 6103 . . . a Vaughn index may be required in order to show that the document does not contain segregable portions that could be disclosed without revealing such information. When, however, a claimed FOIA exemption consists of a generic exclusion,

24

dependent upon the category of records rather than the subject matter which each individual record contains, resort to a Vaughn index is futile."); Parker/Hunter, Inc. v. S.E.C., No. 80-3034, 1981 WL 1675, at *5 (D.D.C. April 29, 1981) (rejecting segregability challenge in Exemption 7(A) context in light of categorical nature of exemption).

### III.    Plaintiff Has Not Challenged the Redactions to the Documents Released to Her

Finally, plaintiff has not challenged any of the redactions made to the documents that were released to her.  Accordingly, defendants are entitled to summary judgment insofar as those redactions are concerned.  See Defs. SJ Brief at 24-34.

### CONCLUSION

For the reasons set forth above and in defendants' opening brief, defendants' motion for summary judgment should be granted.

Dated: October 20, 2006.                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

_____/s/_____
ORI LEV  (D.C. Bar No. 452565)
Senior Trial Counsel
U.S. Department of Justice
Civil Division/Federal Programs Branch
P.O. Box 883, Washington, D.C.  20044
P: (202) 514-2395; Fax: (202) 318-7589
Email: ori.lev@usdoj.gov

*Attorneys for Defendants*