IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELISABETH T. KIDDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil. Action No. 05-CV-01094 |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, et al.,) | |
| ) | |
| Defendants. ) | |

### FIFTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

1. I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 214 employees who staff a total of ten (10) units and a field operational service unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specially, I am aware of the treatment which has been afforded the FOIA request of Elisabeth T. Kidder for information pertaining to Ahmed Abu Ali.

4. The purpose of this declaration is to provide the Court and plaintiff with additional information regarding the search for FBIHQ records responsive to plaintiff's FOIA request, and provide justification for the withholding of records identified as a result of a search

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

of the agency's "ELSUR" index. Specifically, this declaration addresses the following issues raised by plaintiff in her opposition to defendants' motion for summary judgment: (a) the variants used to conduct a search for responsive records in the Central Records System (CRS); (b) the scope of the manual search conducted to identify responsive records; and (c) the absence of a previous search of the ELSUR index.

## VARIANTS AND ALIASES USED IN CRS SEARCH

5. Upon receipt of plaintiff's opposition to defendants' motion for summary judgment, the FBI conducted additional searches of the Central Records System (CRS),[3] using the variants of, and aliases for, "Ahmed Abu Ali" cited by the plaintiff at page 10 of her opposition. Specifically, the FBI searched the CRS for records relating to individuals with the following names or aliases: Ahmed Omer Abu Ali; Ahmad Abu Ali; Ahmad Umar Abu Ali;[4] Ahmed Abu Omar Abu Ali; Ahmed Omar Mohammed Abu Ali; Ali, Ahmed Abu; Souri, Ashraf; Ashraf, Souri; Al Abu Ali; and Ahmed Omar. These searches did not idenfity any additional records responsive to plaintiff's FOIA request.

## SCOPE OF MANUAL SEARCH

6. Plaintiff objects that the manual search conducted for responsive records was limited to documents normally uploaded or serialized into CRS. See Fourth Hardy Declaration, ¶ 22. As noted in my prior declaration, the manual search was conducted because the CRS

---

[3] See First Declaration of David M. Hardy, ¶¶ 16-20.

[4] Plaintiff lists these last two variants as "Ahmad Abu-'Ali" and "Ahmad 'Umar Abu-Ali;" the CRS search conducted would have picked up records using these precise variants of the name.

3

search identified fewer responsive records than anticipated. Id. Recognizing that this case was so recent that not all relevant documents were necessarily uploaded and indexed into the automated indices of the CRS at the time the automated search was conducted, and in an effort to identify any such documents that had not yet been indexed, the FBI took the extra step of requesting those headquarters personnel likely to have responsive records to conduct a manual search for records.

7. In light of plaintiff's opposition to defendants' motion for summary judgment, the FBI has sent a follow up email to those headquarters individuals identified as likely to have records responsive to plaintiff's FOIA request, asking them to identify any records (including e-mails) regarding Ahmed Abu Ali that were not provided in response to the initial manual search request, specifically to include any records that would not normally be serialized or uploaded into the CRS. Although all individuals were asked to respond to this follow-up email by today, not all have done so. To date, at least one such individual has indicated that he may have additional responsive records in his possession. Once the FBI identifies the scope of any responsive records, we will be able to estimate the time needed to promptly review any such records to determine if Exemption 7(A) applies to them, process them further if that Exemption does not apply, and release any non-exempt records to plaintiff. Defendants will file a declaration with the Court setting forth the anticipated time frame for completion of such processing as soon as any additional responsive records are identified.

8. Plaintiff also complains that the FBI has not identified the names of the individuals asked to conduct the manual search for additional responsive records. The FBI has

chosen not to identify these individuals by name as their identities are normally exempt from disclosure pursuant to FOIA Exemptions(b)(6) and (b)(7)(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).

## **ELECTRONIC SURVEILLANCE ("ELSUR") INDICES**

### **ELSUR Generally**

9. The Electronic Surveillance ("ELSUR") indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records created since October 9, 1991 utilizing this automated system.

10. The ELSUR indices are a separate system of records from CRS which, prior to automation, consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance.

11. The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992). When the FBI receives a FOIA request,

it does not typically search its ELSUR indeces for responsive records absent an express request to do so by the FOIA requester.

12. The FBI field offices that have conducted electronic surveillance at any time from 1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices– and reporting to FBIHQ for inclusion in its index–the names of all persons whose voices have been monitored through a FBI microphone installation or a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

## Search for Responsive "ELSUR" Records

13. In response to plaintiff's opposition to defendants' motion for summary judgment, the FBI conducted a search of the headquarters ELSUR index for records on Ahmed Abu Ali, to include the variants and aliases provided by plaintiff on page 10 of her opposition. This search identified potentially responsive ELSUR records. All such records are exempt from disclosure pursuant to FOIA exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A).[5]

## Justification for Withholding "ELSUR" Records In Their Entirety

14. The ELSUR records responsive to plaintiff's FOIA request were reviewed, document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA. Exemption (b)(7)(A) of the FOIA is asserted for withholding the ELSUR records. The following paragraphs explain the FBI's rationale for withholding these documents in their entirety

---

[5] These records are also likely exempt from disclosure pursuant to FOIA Exemptions (b)(1), (b)(6) and (b)(7)(C), 5 U.S.C. § 552(b)(1), (6), (7)(C).

pursuant to FOIA Exemption (b)(7)(A).

### FOIA Exemption (b)(7)(A)

15.     5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings.

In order to justify withholding pursuant to this Exemption, the FBI must demonstrate that the records or information at issue were compiled for a law enforcement purpose, and that their disclosure could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably anticipated. See Mapother v. Dep't of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993). Each of these requirements is addressed in the paragraphs below.

### Compiled for Law Enforcement Purposes

16.     The ELSUR records responsive to plaintiff's FOIA request were compiled during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States, including conspiring to provide and providing material support and resources to a designated terrorist organization and to terrorists, as well as conspiring to assassinate the President and to commit air piracy. [See U.S. v. Abu Ali, No. 05-CR-0053-GBL (E.D. Va.)].

17.     The investigation pursuant to which these records were compiled is ongoing and is clearly within the law enforcement duties of the FBI – which include both the investigation of possible violations of federal criminal laws and preventing and deterring terrorist attacks within the United States and around the world, and reducing the vulnerability of the United States to

terrorism. Moreover, in light of Mr. Abu Ali's conviction there is clearly established connection between Mr. Abu Ali and a possible violation of federal law.

### Description of Records

18. The ELSUR records at issue consist of printouts of electronic versions of the ELSUR "cards" maintained in the ELSUR system. Each printout relates to surveillance of a particular phone number, email address, etc., and identifies, among other things, the name of the subscriber or proprietor of the system subject to the surveillance, the legal authority for the surveillance, the Field Office file number associated with the surveillance, the names of the judge who authorized the surveillance and the attorneys involved in requesting such authorization, the dates for which surveillance was initially authorized, and, if applicable, the dates such surveillance was extended and/or reinstated, the type of device used to conduct the surveillance, and a remarks field that allows for entry of remarks, including comments regarding the geographic location of the surveillance. All of the ELSUR records at issue are classified at the Secret level.

### Reasonable Expectation of Interference

19. This investigation is still pending and the release of any information from the ELSUR records could reasonably be expected to interfere with potential criminal law enforcement proceedings against Abu Ali and/or others. Specifically, in light of the pending appeal of Mr. Abu Ali's criminal conviction, the release of any information from these records could reasonably be expected to interfere with further possible proceedings in the criminal case.

20. Once documents are released and are in the public domain, information

concerning this ongoing investigation could reach the individuals being investigated, thus allowing such individuals to critically analyze these documents concerning the investigation. Such individuals possess the unique advantage of knowing the details surrounding the criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities. These individuals could therefore use the released information to their advantage to destroy evidence or intimidate potential witnesses.

21. The release of the ELSUR records would reveal the scope, focus, location, target and capabilities of the FBI's intelligence gathering techniques and allow hostile agents to devise countermeasures to circumvent them and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence gathering capabilities. The disclosure of this information could reasonably be expected to cause serious damage to the national security and severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

22. In addition, the following potential harms from the release of information contained in the ELSUR records exists:

(a) The identification of individuals and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of, these individuals;

(b) The use of released information to counteract evidence developed by investigators, alter or destroy potential evidence, or create false evidence;

(c) The use of released information by any subject of the investigation to assess

the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation; and

(d) The identification of locations in the United States, as well as foreign countries, where the FBI is focusing the investigation and collection of investigative and source material.

23. Furthermore, the release of this information to third parties not directly involved in this matter could allow these third parties to interfere with the pending law enforcement proceeding by harassment, intimidation, and creation of false evidence. Once a release is made to plaintiff under the FOIA, her use and dissemination of the information to third parties is unrestricted.

24. The FBI has carefully examined the ELSUR records at issue and has determined that all of the information withheld regarding this pending investigation is exempt from disclosure in its entirety pursuant to FOIA Exemption (b)(7)(A). There is no additional reasonably segregable portion of any document which can be released at this time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of October, 2006

DAVID M. HARDY
Section Chief
Records/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.