IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELISABETH T. KIDDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil. Action No. 05-CV-01094 |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, et al.,) | |
| ) | |
| Defendants. ) | |

### SIXTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 200 employees who staff a total of ten (10) units and a field operational service unit whose collective

1

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specially, I am aware of the treatment which has been afforded the FOIA request of Elisabeth T. Kidder for information pertaining to Ahmed Abu Ali.

(4)     The purpose of this declaration is to update the Court and plaintiff with the FBI's efforts to identify and collect additional records responsive to plaintiff's FOIA request, and to provide an anticipated time frame for processing and release to plaintiff of such records.

## PROGRESS OF SECOND SEARCH

(5)     As noted in paragraph 7 of my fifth declaration, dated October 20, 2006, in response to plaintiff's opposition to defendant's motion for summary judgment, the FBI sent a follow up e-mail to headquarters individuals likely to have records responsive to plaintiff's FOIA request, asking them to provide any records (including e-mails) regarding Ahmed Abu Ali that were not provided in response to the initial manual search. Recipients of the e-mail were specifically asked to provide records that

would not be normally serialized or uploaded into the Central Records System (CRS). The FBI continued this search until December 14, 2006, when all recipients of the e-mail had either responded negatively or provided all relevant documents in their possession.[1] In this manner, a total of approximately 5,709 additional pages of documents were collected. Upon receipt, FBIHQ personnel promptly reviewed these documents to ascertain if Exemption 7(A) applied. It was determined that Exemption 7(A) applied to some, but not all documents, requiring more detailed review and processing of documents for possible release.

## FBI PROCESSING OF FOIA REQUESTS

(6)    In fiscal year 2006, the FBI received 15,370 FOIA requests – an average of approximately 1,280 requests per month. To ensure fairness to all requesters and to equitably administer the large numbers of FOIA/Privacy Act requests received by the FBI, and in accordance with Department of Justice regulations, the FBI utilizes a multitrack processing system to process FOIA requests.[2] Each request is assigned to one of three tracks or "queues," based on the amount of time and work involved in handling a particular request. Within each queue, requests are assigned and processed on a "first-in/first-out" basis based on the date of receipt of the request. The placement of a request in one of the three queues depends on the total amount of material responsive to that request – 500 pages or less ("small queue"), 501 to 2,500 pages ("medium queue"), or more than 2,500 pages

---

[1] The delay in compiling all responsive documents was caused in part by the extended absence from the office of several of the individuals with responsive records.

[2] See 5 U.S.C. § 552(a)(6)(D)(i); 28 C.F.R. § 16.5(a) (2003).

("large queue"). This standard operating procedure, coupled with the FBI's "first-in/first-out" policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate to only a small number of documents.

(7) The volume of additional records responsive to plaintiff's request places it in the "large queue," as described above. Her request has been placed in the front of the "large queue" line.[3]

(8) The FBI currently anticipates that it will take approximately 180 days to process the nearly 6,000 pages of additional records responsive to plaintiff's request. As processing commenced on January 8, 2007, shortly after the search for additional responsive records was completed, the FBI currently anticipates that processing of these additional responsive records should be concluded by July 16, 2007. The basis for this estimate is set forth in grater detail below.

## STRAINS ON THE FBI'S FOIA RESOURCES

(9) Two significant factors impact on the FBI's ability to process these recently located records: (a) a physical relocation of a portion of the Division's personnel and resources from FBIHQ to an off-site location in Winchester, Virginia; and (b) several urgent and competing litigation deadlines, both of which will be discussed in further detail below.

## RMD Relocation to Frederick County, Virginia

(10) RMD has been exploring for some time -- and has now begun the process of --building a new, state-of-the art Central Records Complex ("CRC") in Frederick County, Virginia. This long-term initiative will ultimately consolidate all FBI records from more than 265 different storage locations

---

[3] Currently it is the oldest large queue case awaiting processing.

to one central site and will greatly facilitate timely access to all closed FBI records. The location of the permanent CRC site in Frederick County, Virginia, is currently pending a decision by OPM. RMD's short-term plan is the temporary relocation of RMD sections to interim sites in Frederick County, Virginia, and a full relocation of its workforce once the permanent CRC is built and ready for occupancy sometime around the year 2010. The build-out of the first interim RMD location, the Administrative and Training Center known as Site 1, located in downtown Winchester, Virginia, has been completed and is being used for RMD administrative purposes and to conduct new hire and polygraph interviews, drug testing, and job-specific training. In addition, RMD has acquired space for and has built-out an interim Off-Site Operations Center known as Site 2, located approximately eight miles south of Site 1 in Stephens City, Virginia; Site 2 is slated to house a number employees from all RMD sections, including RIDS. Both Site 1 and Site 2 are approximately 90 miles away and about a 1½-hour drive from FBIHQ.

(11)    RIDS began relocation of its operations to Site 1 in February 2006 by establishing an advance team to prepare for the eventual relocation of RIDS in two major incremental stages. When Site 2 became available for occupancy in the summer of 2006, RIDS began the first phase of its relocation by reassigning five and one half of its ten unit functions to Site 2, namely half of the Service Request Unit and all of Work Process Unit One, Work Process Unit Two, FOIPA Unit One, FOIPA Unit Two, and Classification Unit Two.

(12)    To ensure continuing RIDS operations during the move, half of the Service Request Unit function and the functions of FOIPA Unit Three, Classification Unit One, Classification Unit Three,

and the Litigation Support Unit remain at FBIHQ. These FBIHQ units, with a total of 85 employees currently on board, consist of some of the most senior and experienced RIDS employees, who will be the last ones to face the choice of relocating or retiring in light of the relocation. When that happens, RIDS expects most, if not all, of these knowledgeable employees to retire rather than relocate.

(13) Although RMD is making every effort to minimize disruption of RMD operations during this transition period, many employees have opted not to transfer with their unit function. Unfortunately, many of these employees are among the most senior and experienced in their area of expertise. RIDS in particular has been significantly affected because many employees have opted to either retire or find other jobs rather than relocate to Frederick County, Virginia. Since RMD announced its off-site relocation plans, a total of 58 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D.C. Metropolitan area, rather than relocate with their unit. To date, a total of 64 RIDS employees from FBIHQ relocated with their unit to Frederick County, Virginia and are assigned to Site 2.

(14) Although the FBI is engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area, the results are not as positive as RIDS would hope, and thus there exists an obvious strain on FOIPA resources. In response to several recent postings for new hires, RIDS selected 333 individuals for interviews in June and November of 2005 and in January, February, March, August, October, and December of 2006, collectively. Of the 333 selected for interview, 82 candidates advised they were no longer interested prior to interview; of the remaining 251 candidates interviewed, 94 either declined the initial offer of conditional employment following their interview or

were disqualified during their background investigation, 35 are currently on board, and 122 are still pending in the background process. As past experience has shown that approximately 33% of those in FBI background investigations successfully complete the process, we can logically predict that only about 40 of these 122 pending applicants may actually be offered employment. With 184 employees currently on the rolls, RIDS is 108 positions under its funded staffing level of 292 employees. In addition, in light of the continuing resolution pursuant to which much of the federal government is operating, and which has resulted in a hiring freeze until further notice, RMD may not be able to hire any new support employees in the immediate future. The aforementioned 35 new RIDS employees who have less than one year of experience are in various stages of professional development, but none are yet operating as experienced employees; it takes an average of three years to adequately train a new employee in the FOIA/PA process to be able to work independently in a productive, efficient, and effective manner. Accordingly, RIDS has only 149 experienced employees processing FOIA/PA requests at this time.

### Pending FOIA Litigations

(15)     Simultaneous with this resource drain, RIDS has experienced a significant increase in its FOIA litigation workload, and is currently facing several urgent and competing federal district court litigation deadlines, several of which are described in further detail below.

(16)     In Gerstein v. CIA, et al., Civ. A. No. 06-4643 (N.D. Cal.), plaintiff seeks, inter alia, access to all documents related to criminal referrals submitted to the U.S. Department of Justice or the FBI since January 1, 2001 regarding unauthorized disclosures of classified information to the press or

public. The Court has ordered the FBI to expedite plaintiff's request, which has resulted in the FBI's intense search and identification of over 2,500 pages of potentially responsive records, with the search still ongoing. Although the FBI has sought temporary relief from the court's order that all responsive material be processed and produced to plaintiff within 30 days (or by January 5, 2007), it is unclear whether that request will be granted. As a result, RIDS has realigned its personnel resources and assigned six (three processors/ three classifiers) FOIPA Legal Administrative Specialists to work on this case full-time. The FBI requires an additional 120 days to complete its review and processing of this material.

(17) In the FBI's largest FOIA litigation its history, Rosenfeld v. U.S. Department of Justice, et al., Civ. A. Nos. 90-3576 MHP, 85-1709 MHP and 85-2247 (N.D. Cal.), the FBI has been ordered to conduct hand searches of its COINTELPRO files for numerous subjects and to open 13 new FOIA/PA requests on requested individual subjects. In order to comply with these demands, the FBI has again had to realign its personnel resources and has made a substantial commitment of resources to address these court-ordered issues.

(18) In Hidalgo v. FBI, Civ. A. No. 06-CV-1513 (D.D.C.), the FBI is required to process over 3,000 pages of documents responsive to plaintiff's request for documents related to an acknowledged FBI informant by March 16, 2007.

(19) In Vampire Nation v. Dep't of Justice, et al., Civ. A. No. 06-CV-01950 (D.D.C.), and Electronic Frontier Foundation v. Dep't of Justice, Civ. A. No. 06-CV-1708 (D.D.C.), we will be requesting Open America stays of several months from each of the courts in the next several weeks. If these requests are either denied by the courts or substantially reduced, additional shifting of already

8

strained employee resources will become necessary.

## PROCESSING THE REMAINING RESPONSIVE RECORDS

(20)    The FBI takes its responsibilities with regard to the administration of the FOIA/Privacy Act program very seriously, and all reasonable efforts are being made to comply with its statutory and court-imposed deadlines. However, the unanticipated impact of the foregoing competing litigation deadlines, coupled with numerous other pending FOIA requests both at the administrative stage and in litigation, and the RMD's gradual off-site relocation efforts to Winchester, Virginia, have placed an unprecedented additional strain on the FBI's FOIA resources. As a result, the FBI estimates that it will take a total of approximately 180 days to complete the review, processing and release of the additional pages of responsive records it has identified in this case.

(21)    As noted in my prior declarations, the first step in the processing of responsive records is the classification review, to determine whether the records at issue are properly classified. Classification Unit 1 has assigned three Legal Administrative Specialists to the case, and will continue this level of staffing support to the extent possible, depending on future competing workload, in order to expedite the classification review of the 5,709 pages. The 5,709 pages have been divided into 32 volumes to facilitate transport of individual volumes to FOIPA Unit 3 as the classification review is completed.

(22)    To date, Classification Unit 1 has completed its review of three volumes and has forwarded the volumes to FOIPA Unit 3 for processing.

(23)    As noted in my prior declarations, the next step in the processing of responsive records is the line-by-line and page-by-page review of the records for exempt information, and the redaction

9

and coding of those records. FOIPA Unit 3 has designated up to eight Legal Administrative Specialists to process the volumes on a full-time basis, depending on the flow of volumes into the unit from Classification Unit 1. As the processing of the volumes is completed, release of individual volumes to the plaintiff will be made on a rolling basis.

(24)   The FBI notes that these documents consist of strings of e-mails and e-mail attachments. Experience has proven that these types of documents require meticulous and careful processing, which is more time-consuming than processing typical records found in FBI investigative files, and this has been factored into the time estimate set forth above.

(25)   The proposed release package must also be reviewed by the division which has substantive equities in the material--in this case, the Office of the General Counsel--to ensure that no processing errors have been made and that no improper disclosures are made which may impact upon pending or future investigations.

(26)   Once processing is complete, the FBI will prepare a sample Vaughn declaration to support its claimed exemptions. The FBI can most accurately estimate how long it will take to complete a sample Vaughn declaration after processing is completed, and will provide a follow-up status declaration to the Court and plaintiff at that time.

## FEE WAVIER

(27)   Plaintiff has requested a fee waiver in connection with her FOIA request, and has requested that she be advised if the fees for processing responsive records exceed $20.00 in the event that the fee waiver is denied. The FBI notified plaintiff by letter dated January 19, 2007 that her request for a waiver of all applicable fees has been denied in accordance with the provisions of 5

U.S.C. § 552 (a)(4)(A) and 28 C.F.R. § 16.11 (k).  <u>See</u> Attachment A hereto (January 19, 2007 letter from David M. Hardy to plaintiff).  The fees for processing the 5,709 pages could total up to $560.90 if all additional responsive pages are released.  (There is no charge for the first 100 pages; the remaining 5,609 pages cost 10 cents each for copying).  In the event that it becomes evident that there will be more than 300 pages of releasable records (at which point copying costs would exceed the $20.00 plaintiff has agreed to pay), the FBI will so notify plaintiff to determine if she is willing to incur the additional duplication expenses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this 19th day of January, 2007.

_____
DAVID M. HARDY
Section Chief
Records/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.



A



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535

January 19, 2007

MS ELISABETH KIDDER
APARTMENT C
2587 HYDRAULIC ROAD
CHARLOTTESVILLE, VA 22901

Request No.: 1015542- 003
Subject: AHMED ABU ALI

Dear Ms. Kidder:

Your request for a waiver of fees has been considered in accordance with the provisions of Title 5, United States Code, Section 552 (a) (4) (A) and Title 28, Code of Federal Regulations, § 16.11 (k), which permits an agency to waive or reduce fees in the public interest "because furnishing the information can be considered as primarily benefiting the general public." The principal question is whether release of the particular information you have requested will benefit the general public. We have concluded that it will not and, therefore, your request for a waiver of fees is being denied. In reaching this decision, a number of factors were considered, including the public interest in the subject matter of the records requested; the nature of the information contained in the FBI files and whether the releasable portions of the records will meaningfully contribute to the public's understanding of the subject matter; whether any of the information in our files is already in the public domain; your qualifications, ability and intentions to disseminate the information to the general public; and whether the material is personal in nature or serves only your private interests. We will reconsider our decision on your fee waiver request if, upon processing the records, it is evident that we have understated the potential public benefit of the released information.

We have located approximately 5,709 additional pages of records responsive to your request, which are currently being processed. You have previously advised that you are willing to pay $20 in fees. In the event that it becomes evident that there are more than 300 pages of releasable records (at which point copying costs would exceed $20), we will so notify you to determine whether you are willing to incur the additional expense.

If you disagree with the decision regarding fee waiver, or from any other denial contained herein, you may appeal in writing to the Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division