# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ELISABETH T. KIDDER,    :
           :
     Plaintiff,   :
           :
  v.        :     Civil Action No.  05-1094 (RBW)
           :
FEDERAL BUREAU OF   :
INVESTIGATION, *et al.*,   :
           :
    Defendants.  :

## MEMORANDUM  OPINION

This matter is before the Court on plaintiff's and defendant's motions for summary judgment.[1]  The Court will grant plaintiff's motion in part, and grant summary judgment for defendant with respect to materials withheld under Exemption 7(A).

## I.  BACKGROUND

Plaintiff submitted a request pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2002), to the United States Department of Justice ("DOJ"), Federal Bureau of

_____

[1] Plaintiff names both the United States Department of Justice ("DOJ") and one of its components, the Federal Bureau of Investigation ("FBI"), as parties to this action.  The parties dispute whether the FBI is a proper party defendant.  *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 12-14; Defendants' Opposition to Plaintiff's Motion for Summary Judgment at 5-6.  Under the Freedom of Information Act ("FOIA"), the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . ., or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  The DOJ is an executive agency to which the FOIA applies.  However, in *Peralta v. United States Attorney's Office*, 136 F.3d 169, 173 (D.C. Cir. 1998), the District of Columbia Circuit notes its suspicion, at least, "that the FBI is subject to the FOIA in its own name."  *Id.*; *see McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1108 (D.C. Cir. 1983) (noting that the FBI "clearly [is] covered by the [Freedom of Information] Act").  The Court concludes that the DOJ is the proper party defendant, and that the FBI therefore should be dismissed as a party.

Investigation ("FBI"), on January 8, 2005.  Compl. ¶ 5.  She requested the following information:

> [All] records concerning Ahmed Abu Ali, the Falls Church, Virginia
> resident currently detained in Saudi Arabia.  This request includes,
> but is not limited to: minutes of meetings, notes, correspondence,
> submissions, reports, memoranda, electronic mail, and staff calendars
> and appointment books.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment

("Pl.'s Mot."), Exhibit ("Ex.") A (FOIA Request Form).  Because plaintiff sought information

about another person, FBI staff returned the request because plaintiff had not included a privacy

waiver from Mr. Abu Ali.  *Id.*, Ex. B (January 25, 2005 letter from D.M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division).  If any responsive

records existed, the FBI asserted that they would be exempt from disclosure under FOIA

Exemptions 6 and 7(C).  *Id.*  Plaintiff challenged the FBI's response by filing an administrative

appeal with the DOJ's Office of Information and Privacy ("OIP").  Compl. ¶ 7 & Ex. C (February

2, 2005 Freedom of Information Appeal).  The OIP failed to advise plaintiff of its decision on her

appeal (assigned Appeal No. 05-1008) within the time period specified in 5 U.S.C.

§ 552(a)(6)(A)(ii).  *Id.* ¶¶ 8-9.

Plaintiff filed her complaint in this action on May 10, 2005.[2]  *See* Compl. at 1.  By that

time, Mr. Abu Ali had been indicted, publicly tried, and convicted.  Defendants' Opposition to

---

[2]      Plaintiff submitted with her complaint an application to proceed *in forma
pauperis*, and both documents were stamped "received" by the Clerk of Court on May 10, 2005.
*See* Dkt. # 1-2.  The Court approved the application on May 25, 2005, and the papers were
entered on the Court's electronic docket on June 2, 2005.  *See id.*  For unknown reasons,
summonses were not issued until January 9, 2006.  *See* Dkt. Entry dated 1/9/2006.  Service of
process was completed by January 20, 2006.  *See* Dkt. # 5-6.

Plaintiff's Motion for Summary Judgment ("Defs.' Opp'n"), Ex. A ("Hardy Decl. I") ¶ 15.[3]

Thus, "the FBI's role in investigating Mr. Abu Ali's case has been publicly acknowledged," and,

for this reason, FBI staff concluded that "it was no longer necessary to neither confirm nor deny

the existence of records relating to Mr. Abu Ali." *Id.* Accordingly, the FBI conducted a search

for responsive records at its Washington, D.C. headquarters ("FBIHQ"). *Id.*

Searches conducted by the FBI yielded three sets of responsive records: two cross-

references on Mr. Abu Ali, one Laboratory file, and one multi-volume file maintained by the

FBI's Legal Attache in Riyadh, Saudi Arabia ("Legat Riyadh"). Defendants' Unopposed Motion

for Extension of Time, Ex. A ("Hardy Decl. II") ¶ 7. On May 26, 2006, the FBI released 25

pages of these records "consisting of the two cross reference documents and the public source

documents contained within the Laboratory file." Defendants' Status Report, Ex. A ("Hardy

Decl. III") ¶ 6. The remaining documents in the Laboratory file were withheld in full under

Exemption 7(A).[4] *Id.* Of the records contained in the Legat Riyadh file, the FBI released eight

pages of public source documents on June 12, 2006, and withheld the remaining documents

under Exemption 7(A).[5] *Id.* ¶ 7.

In this action, plaintiff demands the release of all the requested records in their entirety.

---

[3]     Defendant submits five declarations of David M. Hardy: Hardy Decl. I (executed
March 29, 2006), Hardy Decl. II (executed May 9, 2006), Hardy Decl. III (executed June 14,
2006), Hardy Decl. IV (executed August 11, 2006 ), and Hardy Decl. V (executed October 20,
2006).

[4]     The FBI also asserted Exemptions 1, 2, 6, 7(C), and 7(E) in withholding all or
portions of the remaining records in the Laboratory file. Hardy Decl. III ¶ 6.

[5]     According to the FBI, "[o]ther FOIA exemptions also likely apply to these
records." Hardy Decl. III ¶ 7.

*See* Compl. at 2-3 (Requested Relief).

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)).  The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith."[6] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such

affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by

'purely speculative claims about the existence and discoverability of other documents.'"

*SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting

*Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Plaintiff's Summary Judgment Motion

Defendant concedes plaintiff's two principal arguments – that she exhausted her

administrative remedies prior to filing the instant civil action and that defendant maintains

records or portions of records responsive to her FOIA request.  *See* Pl.'s Mot. at 5-7, 14-15

(addressing exhaustion of administrative remedies); Hardy Decl. I ¶¶ 21-22 (describing initial

search results and intention to conduct manual search); Hardy Decl. II ¶ 7 (describing records

located).  If the Court's analysis stopped here, plaintiff's motion for summary judgment would be

granted.  However, plaintiff has not established that defendant wrongfully withheld responsive

records.  The Court therefore will address the appropriateness of FBIHQ's decision to withhold

information in the context of defendant's motion for summary judgment.

### C.  Adequacy of Search

In determining the adequacy of a FOIA search, the Court is guided by principles of

---

[6]    In support of its motion, defendant has submitted five declarations of David M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division, at FBIHQ.  Hardy Decl. I ¶ 1.  In this capacity, Mr. Hardy reviews FBI information for classification purposes and is designated by the Attorney General "as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3, 3.1."  *Id.* ¶ 2.  He is familiar with the FBI's policies for responding to FOIA requests, and is "aware of the treatment which has been afforded to the FOIA request of plaintiff Elisabeth Kidder which seeks access to records pertaining to Ahmed Abu Ali."  *Id.* ¶ 3.

reasonableness.  *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that

its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v.*

*United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*,

897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d

20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably

expected to produce requested information).  The agency bears the burden of showing that its

search was calculated to uncover all relevant documents.  *Steinberg*, 23 F.3d at 551.  To meet its

burden, the agency may submit affidavits or declarations that explain in reasonable detail the

scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In

the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an

agency's compliance with the FOIA.  *Id.* at 127.  If the record "leaves substantial doubt as to the

sufficiency of the search, summary judgment for the agency is not proper."  *Truitt,* 897 F.2d at

542.

### 1.  FBIHQ's Searches for Responsive Records

In the Central Records System ("CRS"), the FBI maintains its "administrative, applicant,

criminal, personnel, and other files compiled for law enforcement purposes."  Hardy Decl. I ¶ 16.

The records are organized by subject matter, and a file's subject matter may relate to an

individual, organization, company, publication, activity, or foreign intelligence matter.  *Id.*

General indices, which consist of index cards arranged in alphabetical order, are the means by

which CRS records are retrieved.  *Id.* ¶ 17.  Entries in the general indices are either "main"

entries or "reference" entries.  *Id.* ¶ 18.  The former "carr[y] the name corresponding with a

subject of a file contained in the CRS;" the latter "are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another 'main' file." *Id.* The decision to index names other than subjects, suspects, and victims is left to the discretion of the assigned Special Agent, the Supervisory Special Agent at the field office conducting the investigation, and the Supervisory Special Agent at FBIHQ. *Id.* ¶ 19. Without an index, "information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI." *Id.* ¶ 20. Thus, general indices to the CRS files "are the means by which the FBI can determine what retrievable information, if any," its files may contain on a particular subject. *Id.*

FBIHQ staff used Mr. Abu Ali's name, date of birth, and Social Security number as search terms. Hardy Decl. I ¶ 21. Although this search of the CRS records yielded no "main investigatory files responsive to plaintiff's request," it did yield "two cross references." *Id.* Because the search yielded fewer records than expected, *id.* ¶ 22, Litigation Support Unit ("LSU") staff "contacted the Washington Field Office case agent for the Ahmed Abu Ali investigation and obtained a list of individuals at FBIHQ who would likely have records responsive to plaintiff's request."[7] Statement of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mot."), Ex. A ("Hardy Decl. IV") ¶ 22. By electronic mail message on March 22, 2006, "each of these individuals was asked to conduct a

---

[7]    The Litigation Support Unit "is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel and the Chief Division Counsels and Assistant Division Counsels in the FBI's field offices in all FOIA/Privacy Act requests that result in federal litigation." Hardy Decl. III ¶ 16. Among other things, LSU staff "reviews the processed records and justifies the deletions of all processed material." *Id.*

manual search of their records for all records on Ahmed Abu Ali that would normally be up-

loaded or serialized into the [CRS] and submit all responsive records to the [LSU]." *Id.* These

manual searches yielded one Laboratory file and one multi-volume file maintained by the Legat

Riyadh. *Id.*; Hardy Decl. II ¶ 7. Because plaintiff directed her FOIA request to FBIHQ, neither

the CRS search nor the manual searches encompassed FBI field office files. Hardy Decl. II, ¶ 7

n.3; Hardy Decl. IV ¶ 23.

### 2. Plaintiff's Challenges to the Adequacy of the FBIHQ's Searches

#### a. Ahmed Abu Ali's Aliases

Plaintiff argues that the FBIHQ's use of "Ahmed Abu Ali" as a search term is

unreasonable under the circumstances, because the FBI has referred to Mr. Abu Ali as Ahmed

Omer Abu Ali, Ahmad Abu-Ali, Ahmad Umar Abu-Ali, Ahmad Abu Omar Abu Ali, Ahmed

Omer Mohammed Abu Ali, "Ali, Ahmed Abu," Souri, Ashraf, Al Abu Ali, and Ahmed Omer.

Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary

Judgment and in Further Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Opp'n") at

10. Because FBIHQ failed to search its records using these aliases, plaintiff argues that the

search was inadequate. *Id.*

Under the FOIA, an agency is obliged to make available to the public records that are

reasonably described in a written request, if not exempt from disclosure. 5 U.S.C.

§§ 552(a)(3)(A), (b). "A request reasonably describes records if the agency is able to determine

precisely what records are being requested." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d

607, 610 (D.C. Cir. 1997) (internal quotation marks and citation omitted). Here, plaintiff's

request is quite clear – she seeks solely records pertaining to "Ahmed Abu Ali." Pl.'s Mot., Ex.

A. Her request does not reference any of Mr. Abu Ali's aliases under which the agency may maintain records. Thus, based on plaintiff's clear request, the FBI is under no obligation to search its records for information regarding any names other than "Ahmed Abu Ali." *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (agency is not obliged "to search anew based upon a subsequent clarification"); *Landmark Legal Found. v. Envtl. Prot. Agency*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (agency "is not required to divine a requester's intent").

In any event, in response to plaintiff's assertions, FBIHQ staff conducted searches using the aliases plaintiff provided. Defendants' Reply in Further Support of their Motion for Summary Judgment, Ex. A ("Hardy Decl. V") ¶ 5. These searches yielded no additional responsive records. *Id.*

### b. Scope of Manual Searches

Plaintiff argues that FBIHQ improperly limited the manual searches to records which normally would be up-loaded or serialized into the CRS, notwithstanding plaintiff's request for <u>all</u> records pertaining to Mr. Abu Ali.[8] Pl.'s Opp'n at 11.

Plaintiff does not argue that FBIHQ's decision to search CRS was unreasonable. Rather, she contends that limiting the manual searches to records that eventually will, but are not yet included in the CRS, was unreasonable. Her argument is not persuasive. Appreciating that Mr.

---

[8]    The Court rejects plaintiff's argument that the searches are inadequate for FBIHQ's failure to identify the individuals who were asked to conduct the manual searches. The FOIA does not require the disclosure of the names of or information about agency staff involved in processing FOIA requests. *Cf. Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (approving redaction of law enforcement agents' names under Exemption 7(C) where disclosure could subject them to annoyance or harassment in either their official or private lives).

Abu Ali's case "was so recent that not all relevant documents were necessarily uploaded and indexed into the automated indices of the CRS at the time the automated search was conducted, and in an effort to identify any such documents that had not yet been indexed, the FBI took the extra step" of requesting manual searches.  Hardy Decl. V ¶ 6.

It is plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search.  *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).  Plaintiff appears to assert, without support, that responsive records may exist and might be found if the FBI broadened the scope of any manual searches.  Such speculation alone is not sufficient to overcome FBIHQ's showing that its manual search was reasonable and conducted in good faith.

### c.  Washington Field Office Records

Plaintiff argues that defendant should have searched not only FBIHQ records, but also the records of its Washington Field Office.  Pl.'s Opp'n at 11-12.  Specifically, plaintiff contends that because defendant's searches "uncovered proof of the existence of responsive records located at the Washington Field Office[,] the FBI must follow this lead."  *Id.* at 12.

A FOIA request must comply with an agency's "published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  A person makes "a request for records of the Department of Justice by writing directly to the Department component that maintains those records."  28 C.F.R. § 16.3(a) (2006).  "For records held by a field office of the [FBI], however, [the requester] must write directly to that FBI . . . field office address."  *Id.* Generally, the FBI is not obligated to undertake a search of its field office's records where a

plaintiff's request is submitted directly to FBIHQ.  *See, e.g.*, *Marks v. United States Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (no duty for FBI to search field offices when FOIA request directed only to headquarters); *Ray v. Fed. Bureau of Investigation*, 441 F. Supp. 2d 27, 32 (D.D.C. 2006) (same).  Here, plaintiff addressed her request to the "FOIPA Section, Federal Bureau of Investigation, Dept. of Justice," and mailed it to FBI's headquarters at "935 Pennsylvania Ave. N.W., Washington, D.C. 20535."  Pl.'s Opp'n, Ex. A.  Thus, notwithstanding contact FBIHQ staff had with the Washington Field Office special agent in charge of the investigation of Mr. Abu Ali, *see* Hardy Decl. IV ¶ 22, the FBIHQ was not obligated to conduct a search of Washington Field Office records.  Thus, the failure to conduct such a search did not offend the FOIA, considering the scope of the request made by the plaintiff.

d.  Search of Electronic Surveillance Indices

Plaintiff argues that defendant's search is inadequate because no one conducted a search of the FBI's electronic surveillance indices.  Pl.'s Opp'n at 16-17.  Electronic surveillance indices ("ELSUR") "are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered electronic surveillance conducted by the FBI."  Hardy Decl. V ¶ 9.  ELSUR indices created since October 9, 1991, are automated and are organized by the name of the subject of microphone or telephone surveillance.  *Id.* ¶¶ 9-10.  "[N]ot all names contained in the ELSUR index can be retrieved through the General Index and CRS."  *Id.* ¶ 11.  FBI staff typically do not search ELSUR indices in response to a FOIA request "absent an express request to do so by the FOIA requester."  *Id.*

Although defendant does not concede an obligation to search the ELSUR indices, staff

nonetheless "conducted a search of the headquarters ELSUR index . . . to include the variants and aliases provided by plaintiff." Hardy Decl. V ¶ 13. The search yielded potentially responsive records, and FBIHQ asserts that these records are exempt from disclosure under FOIA Exemption 7(A). *Id.* ¶¶ 13-14.

In sum, the Court concludes that FBIHQ's search for records responsive to plaintiff's FOIA request was adequate and reasonable under the circumstances.

### D. Exemption 7(A)

#### 1. Law Enforcement Records

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted). In this case, defendant's "declarations must establish . . . 'a rational nexus between the investigation and one of the [FBI's] law enforcement duties; and' . . . a 'connection between an individual or incident and a possible security risk or violation of federal law.'" *Ctr. for Nat'l Sec. Studies v. United States Dep't of Justice,* 331 F.3d

918, 926 (D.C. Cir. 2003) (quoting *Campbell*, 164 F.3d at 32), *cert. denied*, 540 U.S. 1104 (2004).

Defendant asserts that the responsive records "were all compiled during the course of the FBI's ongoing investigation of Ahmed Abu Ali and others for possible violations of the criminal laws of the United States and possible terrorist activity against the United States, including conspiring to provide and providing material support and resources to a designated terrorist organization and to terrorists, as well as conspiring to assassinate the President and to commit air piracy." Hardy Decl. IV ¶ 26.[9] The investigation into Mr. Abu Ali's criminal activities and the criminal activities of other individuals is ongoing, and such an investigation falls within the FBI's law enforcement duties. *Id.* ¶ 27. Thus, defendant has established that the records at issue were compiled for law enforcement purposes. *See Owens v. United States Dep't of Justice*, No. 04-1701 (JDB), 2006 WL 3490790, at *5 (D.D.C. Dec. 1, 2006) (records generated during investigation into terrorist attacks against United States by federal agencies, including the FBI, authorized to investigate such activities qualify as law enforcement records under Exemption 7).

Plaintiff argues that the records at issue are not law enforcement records. *See* Pl.'s Opp'n at 20-24. First, she asserts that the records initially were compiled in the course of the FBI's performance of its "intelligence gathering and antiterrorism function," and that 5 U.S.C. § 552(c)(3), not Exemption 7, applies. *Id.* at 21. Under 5 U.S.C. § 552(c)(3), "as long as the

---

[9]    Plaintiff argues that Mr. Hardy's declarations are inadmissible because he has no personal knowledge of the ongoing criminal investigation into Mr. Abu Ali's criminal activities. *See* Pl.'s Opp'n at 19-20; Pl.'s Surreply at 4.  The Court rejects this argument.  It is sufficient that the declarant has personal knowledge of and familiarity with the handing of plaintiff's FOIA request and the responsive records at issue.  *See Spannaus v. United States Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Schrecker v. United States Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).

existence of the records remains classified information," the FBI may "treat the records as not subject to the requirements" of the FOIA. 5 U.S.C. § 552(c)(3). Nothing in defendant's motion suggests that the existence of responsive records is classified information or conflicts with an argument the records are exempt from the FOIA. Rather, defendant asserts that, although the FOIA applies, the FBI properly withheld the records under Exemption 7(A).[10]

Second, plaintiff argues that any responsive records that were "not used at [plaintiff's criminal] trial were never compiled for law enforcement purposes." Pl.'s Opp'n at 20. She asserts that FBI agents involved in Mr. Abu Ali's detention in Saudi Arabia "stridently asserted a distinction between a criminal investigation and 'intelligence gathering,'" *id.* at 21-22, which the government advanced successfully as the basis for "avoiding a finding that the FBI agents had violated Mr. Abu Ali's Fourth, Fifth, and Sixth Amendment rights." *Id.* at 21. Therefore, because the agents sought only to develop intelligence, and not gather evidence against Mr. Abu Ali for criminal prosecution, plaintiff asserts that "the government was able to put many of the records subject to the plaintiff's FOIA request before the jury that convicted Mr. Abu Ali." *Id.* at 22.

Based upon the position the government took during Mr. Abu Ali's criminal prosecution, plaintiff suggests that intelligence gathering cannot be considered a law enforcement activity. *See* Pl.'s Opp'n at 23-24. The Court does not agree. The FBI is an agency "specializ[ing] in law

---

[10]       As indicated, however, the multi-volume Legat Riyadh and Laboratory files contain classified material and, for this reason, initially underwent review by the FBI's Classification Unit to ensure compliance with "Executive Order 12,958, as amended." Hardy Decl. II ¶¶ 7-8; Hardy Decl. III ¶¶ 13-14. Nonetheless, defendant is not withholding the records because the information contained therein remains classified. Accordingly, for purposes of the pending motion, the only applicable legal authority is Exemption 7.

enforcement," and its claim of a law enforcement purpose is entitled to deference. *See Campbell*, 164 F.3d at 32; *Quiñon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *Pratt*, 673 F.2d at 419. Investigating terrorism is "one of DOJ's chief 'law enforcement duties' at this time." *Ctr. for Nat'l Sec. Studies,* 331 F.3d at 926. Furthermore, the relevance of what occurred during Mr. Abu Ali's criminal trial in this FOIA matter is unclear. The FOIA is designed to foster public access to government documents. *See, e.g., John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). A defendant complies with the FOIA where it proves that the withheld information falls within the scope of the exemption invoked, *see* 5 U.S.C. § 552(a)(4)(B) (placing "burden [] on the agency to sustain its action"), and defendant has satisfied its burden here.

### 2. Interference with Enforcement Proceedings

Exemption 7(A) protects law enforcement records "to the extent that production of such law enforcement records or information [] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. United States Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) (citing *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241-42 (1978)), *cert. denied*, 533 U.S. 950 (2001).

### a. Pending or Prospective Law Enforcement Proceedings

The record shows that Mr. Abu Ali was convicted on November 22, 2005, in the United

States District Court for the Eastern District of Virginia of various criminal offenses, and was sentenced on March 29, 2006, to a 30-year prison term followed by a 30-year term of supervised release. Hardy Decl. IV ¶ 29. His appeal to the United States Court of Appeals for the Fourth Circuit is pending resolution. *Id.* ¶ 30.

A pending appeal of a criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A). *Kansi v. United States Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998). Moreover, the investigation is ongoing, and it involves not only Mr. Abu Ali, but also other suspects. Hardy Decl. IV ¶ 31. Thus, the possibility of future law enforcement proceedings, for example upon Mr. Abu Ali's success on appeal or on charges brought against him or other suspects, is not foreclosed. *See Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (notwithstanding conviction on two criminal charges, because defendants were suspects in other disappearances and killings under active investigation, government demonstrated existence of prospective law enforcement proceedings to support withholding under Exemption 7(A)).

b. Reasonable Expectation of Interference

Exemption 7(A) "does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). Defendant "must show, by more than [a] conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding." *Campbell v. Dep't of Health and Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982). "[T]he government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document."

16

*Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

Accordingly, defendant must define its categories functionally, determine, document-by-

document, the category into which each document falls, and explain "how the release of each

category would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1389-90.

Defendant designates three categories, two which are discussed here – evidentiary or

investigatory materials, and administrative materials. The third category of records – public

source and cross-reference documents released to plaintiff in redacted form – is not addressed

here, as defendant's motion addresses only the law enforcement records withheld under

Exemption 7(A). The records at issue fall into one or more of these three categories. Hardy

Decl. IV ¶ 36.

### i. Evidentiary or Investigative Materials

The evidentiary or investigative materials include "copies of records or evidence, and

derivative communications discussing or incorporating evidence." Hardy Decl. IV ¶ 37. A

derivative communication "describes, verbatim or in summary, the contents of the original

record, how it was obtained, and how it relates to this investigation." *Id.* It may be reported to

another FBI Field Office or to another law enforcement agency to advise that office or agency of

the investigation's progress, or to elicit assistance in following investigative leads. *Id.*

### Confidential Source Statements

Among the materials in this category are confidential source statements containing

"information obtained from confidential informants, records custodians and other third party

individuals who have knowledge of potential criminal activities in this criminal investigation."

Hardy Decl. IV ¶ 38. These statements "are one of the principal tools used in providing the facts

which form the basis for a prosecution." *Id.*  Disclosure of such statements could subject these informants "to retaliation, intimidation, or physical or mental harm," and thus "have a chilling effect on any future proceedings in this case inasmuch as potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this investigation." *Id.* Confidentiality is presumed when FBI agents conduct interviews in an investigation of this nature, and disclosure "would disrupt and harm potential investigative and/or prosecutive actions." *Id.*

Plaintiff contends that confidential source statements "are properly invoked under Exemption 7(D) of the FOIA, not Exemption 7(A)." Pl.'s Opp'n at 24.  She asserts that "the government's witnesses have already testified in open court, and it would therefore be unreasonable to expect that confirmation of their role in this case would interfere with any subsequent proceedings in Mr. Abu Ali's criminal case." *Id.* at 25.  Because defendant has not demonstrated an express or implied assurance of confidentiality, plaintiff argues that summary judgment must be denied.  *Id.* at 25-26.

The government's ability to withhold information pertaining to or originating from confidential sources is not limited to Exemption 7(D).[11]  *See Cucci v. Drug Enforcement Admin.*,

---

[11]    Exemption 7(D) allows a government agency to withhold law enforcement records where release "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred.'" *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *United States Dep't of Justice v. Landano*, 508 U.S. 165, 170-74 (1993)).

871 F. Supp. 508, 510-11 (D.D.C. 1994) (concluding that witness statements were properly withheld under 7(A) given the "threat to the continued safety and cooperation of witnesses and confidential sources that could be disclosed to subjects of continuing FBI investigations if the documents are provided to [the requester]"). Defendant's obligation here is to describe the harm that reasonably could be expected to occur if this category of documents were disclosed, and defendant adequately satisfies this burden. Although information might be protected under more than one FOIA exemption, where that information is protected under one exemption, the Court need not address the applicability of another exemption. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992).

Exchange of Information Between Agencies

Defendant asserts that disclosure of information exchanged between various local, state, federal and foreign agencies would have a negative impact on cooperative efforts between the FBI and other law enforcement agencies. Hardy Decl. IV ¶ 39. According to defendant, these agencies "have cooperated with and provided information and records to the FBI," and "[i]nherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released." *Id.* Defendant further contends that release of this information "would identify the investigative interest in particular individuals as well as subject witnesses and confidential sources to potential harassment, intimidation, and physical or mental harm." *Id.* Plaintiff counters that "because the individuals who are subjects of the FBI investigation of Mr. Abu Ali have already been publicly identified," defendant has failed to show that release of this information would identify the investigative interest in particular individuals. Pl.'s Opp'n at 26. In support of this assertion, plaintiff has produced

documents showing that the names and aliases of Mr. Abu Ali's unindicted co-conspirators have been identified publicly, and that Mr. Abu Ali evidently had no accomplices or co-conspirators in the United States. *Id.*, Exs. A, F.

Notwithstanding any such disclosures at Mr. Abu Ali's criminal trial, plaintiff merely speculates that the known co-conspirators are the only subjects, suspects, or individuals of potential investigative interest to the FBI or other law enforcement agencies. On the other hand, defendant has demonstrated that release of information developed by the various agencies which have cooperated with the FBI is reasonably likely to subject witnesses or confidential sources to potential harassment, intimidation, or other harm.

Information Concerning Documentary and Physical Evidence

Information about the documentary and physical evidence itself is not included in defendant's supporting declaration. However, defendant represents that "[t]o fully describe these records could reasonably lead to the identification of the evidentiary records and, ultimately, the sources of these records," which in turn "could result in the possible harm or intimidation of those witnesses and confidential sources who provided these records." Hardy Decl. IV ¶ 40. Plaintiff counters that the declarant's description is "too vague for the Court to trace a rational link from the document type to the alleged likely interference in Mr. Abu Ali's criminal appeal." Pl.'s Opp'n at 27. The Court disagrees.

The declarant states that the evidence at issue "is pertinent and integral to this ongoing investigation," and that its disclosure "could be detrimental to success of the pending and prospective prosecutions by permitting subjects to formulate a strategy as to how the evidence could be contradicted in Court." Hardy Decl. IV ¶ 40. The Court agrees with defendant's

position that this evidence may be relevant not only to proceedings in Mr. Abu Ali's pending appeal, but also to other matters being investigated by defendant and any future proceedings that may be brought against other individuals.

*ii*. Administrative Materials

Administrative materials pertaining to the investigation include "case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines." Hardy Decl. IV ¶ 41.

Reporting Communications

Reporting communications used to monitor the progress of an investigation "are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed." Hardy Decl. IV ¶ 42. In addition, these documents contain background information about third parties, the origin of information connecting them to the investigation, their connection to the subject of the investigation, and their relationship to the investigation. *Id.* The Court agrees that release of this information "would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources and the perceived weaknesses in the investigation." *Id.*

Miscellaneous Administrative Documents

Other documents, including envelopes and transmittal forms, "were adapted or used in such a manner as to contain information of investigative value." Hardy Decl. IV ¶ 43. The Court concurs that release of such documents "when viewed in conjunction with knowledge possessed

21

by the subject, could provide information useful in identifying witnesses, investigative strategies and items of evidence." *Id.* ¶ 44.

Administrative Instructions

The Court also agrees that release of administrative instructions, which originated within the Justice Department or other law enforcement agencies "to a knowledgeable person, would disclose specific investigative procedures employed in this investigation," thus permitting the subjects of the investigation "to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions of himself or other subjects." Hardy Decl. IV ¶ 45.

With respect to all the administrative materials withheld, plaintiff argues that the declarant does not specify how release of records in this category might result in interference with Ahmed Abu Ali's appeal of his criminal conviction, or any other enforcement proceeding. *See* Pl.'s Opp'n at 28-29. Her argument is not persuasive. Taken in context, defendant explains that "to release details with respect to [administrative materials] would also reveal the investigative interests of the FBI and could enable suspects to discern a 'road map' of the investigation." Hardy Decl. IV ¶ 41. And disclosure of information to plaintiff is no different than disclosure of this information to the general public, including the targets of the investigation. The FBI's reliance on Exemption 7(A) in this instance is therefore proper in order to protect information that would reveal the nature and scope of the ongoing investigation. *See Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1039 (7th Cir. 1998).

3. <u>Public Domain</u>

Throughout this litigation, plaintiff has asserted that Exemption 7(A) does not apply to any records "that were made public by the government during Ahmed Abu Ali's criminal trial."

22

Pl.'s Opp'n at 29-31.  In support of her argument, plaintiff submits copies of the government's

exhibit lists for the suppression hearing and for Mr. Abu Ali's criminal trial.  *See id.*, Ex. C-D.

These records are now in the public domain and, plaintiff asserts, must be released.

      Under the public domain doctrine, records which otherwise may be exempt from

disclosure under FOIA "lose their protective cloak once disclosed and preserved in a permanent

public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  "[W]here information

requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes.'"  *Id.*

(quoting *Niagara Mohawk Power Corp. v. United States Dep't of Energy*, 169 F.3d 16, 19 (D.C.

Cir. 1999)).  A plaintiff who seeks disclosure of such records bears "the initial burden of pointing

to specific information in the public domain that appears to duplicate that being withheld."

*Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *see Davis v. United States Dep't

of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (plaintiff  must "point to specific information

identical to that being withheld").  Plaintiff's argument fails, however, because she does not point

to any specific record, document or information that is identical to that withheld under the

claimed exemption.  Nor is it clear that any of the exhibits on the lists actually were introduced as

evidence in open court.  Accordingly, plaintiff has made no showing from which the Court can

conclude with any degree of confidence that the information sought from the FBI truly is in the

public domain.  *See Cottone*, 193 F.3d at 555.

*E.  Segregability*

      If a record contains information that is exempt from disclosure, any reasonably segregable

information must be released after deleting the exempt portions, unless the non-exempt portions

are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *Trans-Pacific Policing*

23

*Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999).  However,

the Court errs if it "simply approve[s] the withholding of an entire document without entering a

finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927

F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611

F.2d 738, 744 (9th Cir. 1979)).

Defendant declares that, after careful examination of the records, "all of the information

withheld regarding this pending investigation is exempt from disclosure in its entirety pursuant to

FOIA Exemption (b)(7)(A).  According to defendant, no additional releases are possible at this

time without hindering the pending investigation."  Hardy Decl. IV ¶ 50.  Plaintiff responds that

this statement is not made in good faith, and, for this reason, argues that summary judgment

should be denied.  Pl.'s Opp'n at 31-32.

Plaintiff's unsupported assertion of bad faith alone is insufficient.  Agency declarations

"are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims

about the existence and discoverability of other documents."  *SafeCard Servs., Inc.*, 926 F.2d at

1200 (internal quotation marks and citation omitted).  Furthermore, defendant is obliged merely

to establish that categories of documents, not individual documents, are exempt from disclosure.

*See Solar Sources, Inc.*, 142 F.3d at 1038.  Defendant has satisfied its burden, and its failure to

make a document-by-document segregability determination is of no moment.  *See*

*Parker/Hunter, Inc. v. Sec. & Exch. Comm'n*, No. 80-3034, 1981 WL 1675, at *4 (D.D.C. Apr.

29, 1981).

## III.  CONCLUSION

The Court concludes that defendant properly has withheld responsive records in their

entirety under Exemption 7(A).  Because plaintiff has not yet responded to the defendant's

summary judgment motion with respect to the portions of records withheld under Exemptions 1,

2, 6 and 7(C), the Court will order her to do so.  An Order consistent with this Memorandum

Opinion will be issued separately.


                                                    _____/s/_____
                                                    REGGIE B. WALTON
Date:  March 29, 2007                               United States District Judge